UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BRETT MILAU,

                              Plaintiff,                  17-cv-06061(ADS)(SIL)

         -against-

SUFFOLK COUNTY, New York, Commissioner
TIMOTHY SINI, Individually, Sgt. WILLIAM
WALSH, Individually, Police Officer "John"
MOLINARI of the Pistol Licensing Bureau,
Individually, Captain WILLIAM SCRIMA,
Individually, and "JOHN DOE", Commanding
Officer of the Suffolk County Property Section,
Individually,

                             Defendants.

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION PURSUANT TO RULE 56**

DATED:      Hauppauge, New York
             April 23, 2020

                           Respectfully submitted,

                           Suffolk County Attorney's Office
                           Suffolk County Department of Law
                           Attorney for Suffolk County Defendants
                           H. Lee Dennison Building
                           100 Veterans Memorial Highway
                           P. O. Box 6100
                           Hauppauge, New York 11788

                           By:  Arlene S. Zwilling
                           Assistant County Attorney

TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................................ii

PRELIMINARY STATEMENT ..........................................................................................................1

SUMMARY JUDGMENT STANDARD ............................................................................................4

POINT I
MILAU'S CLAIMS REGARDING THE SUSPENSION OF HIS LICENSE
AND SUPPOSED SEIZURE OF HIS PISTOLS ARE BARRED
BY THE STATUTE OF LIMITATIONS............................................................................................6

POINT II
THE DECISION NOT TO RENEW MILAU'S LICENSE
IS NOT UNCONSTITUTIONAL........................................................................................................7

   A.  The Second Amendment Affords No Right to a Pistol License in New York......................7

   B.  The Due Process Clause Is Not Offended by a Licensing Authority's
      Decision Not to Grant a Pistol License.............................................................................10

   C.  Milau's Inability to Possess Handguns is Not a Constitutional Violation .........................11

   D.  Milau Lacks the Evidence to Establish That the Decision
      Not to Give Him a Pistol License Transgressed His Right to Association
      Under the First Amendment .............................................................................................12

   E.  The Fourth Amendment Is Inapplicable to a Decision Not
      to Grant a Pistol License .................................................................................................12

   F.  The Correct Vehicle for Challenging the Denial of a Pistol License is an
      Article 78 Proceeding in State Court................................................................................13

POINT III
THE CANCELLATION OF HIS PISTOL LICENSE AND ITS CONSEQUENCES
ARE NOT VIOLATIONS OF MILAU'S CIVIL RIGHTS ...............................................................14

POINT IV
INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY..................................15

POINT V
NO COUNTY POLICY CAUSED A VIOLATION OF MILAU'S
CONSTITUTIONAL RIGHTS ..........................................................................................................18

CONCLUSION .................................................................................................................................20

i

TABLE OF AUTHORITIES

*Amore v. Novarro,*
   624 F.2d 522 (2d Cir. 2010) ........................................................................................ 15

*Aron v. Becker,*
   48 F.Supp.3d 347 (N.DN.Y. 2014) .............................................................................. 14

*Ashcroft v. Al-Kidd,*
   131 S. Ct. 2074, 179 L.Ed. 2d 1149 (2011) ................................................................ 15

*Board of Regents of State Colleges v. Roth,*
   408 U.S. 564 92 S.Ct. 2701 33 L.Ed.2d 548 (1992) .................................................... 10

*Boyler v. City of Lackawanna,*
   287 F.Supp.3d 308 (W.D.N.Y. 2018) ............................................................................ 1

*City of Los Angeles v. Heller,*
   475 U.S. 796, 106 S.Ct. 157, 189 L.Ed.2d 806 (1986) ................................................ 18

*Corbett v. City of New York,*
   2019 WL 2502056 (S.D.N.Y. June 17, 2019) .............................................................. 10

*Dean v. Blumenthal,*
   577 F.3d 60 (2d Cir. 2009) .......................................................................................... 17

*District of Columbia v. Heller,*
   554 U.S. 570 (2008) ...................................................................................................... 9

*Fabrikant v. French,*
   691 F.3d 193 (2d Cir. 2012) ........................................................................................ 17

*Fox v. v. Vam Ooesterum,*
   *166 F.3d 342 (6th Cir. 1999)* ...................................................................................... 13

*Garcia v. Does,*
   779 F.3d 84 (2d Cir. 2015) .......................................................................................... 16

*Gorman v. Rensselaer County,*
   910 F.3d 40 (2d Cir. 2018) .......................................................................................... 12

*Grice v. McVeigh,*
   873 F.3d 162 (2d Cir. 2017) .................................................................................. 15, 17

*Harlen Assocs. v. Inc. Village of Mineola,*
   273 F.3d 494 (2d Cir. 2001) ........................................................................................ 11

*Harlow v. Fitzgerald,*
   457 U.S. 800, 102 S. Ct. 2727 (1982) ................................................................. 15

*Harrington v. County of Suffolk*,
   2009 WL 2567959 (E.D.N.Y. Aug. 17, 2009) .................................................... 18

*Henry v. County of Nassau*,
   2020 WL 1185283 (E.D.N.Y. March 12, 2020 ) ................................................. 8

*Johnson v. Deprospo,*
   2019 WL 6311882 (N.D.N.Y. November 22, 2019) ...................................... 11, 13

*Kachalsky v. County of Westchester*,
   701 F.3d 81 (2 Cir. 2012) ................................................................... passim

*Klenosky v. N.Y City Police Dep't,*
   75 A.D.2d 793, 428 N.Y.S.2d 256 (1st Dep't 1980)........................................... 9

*Leogrande v. Suffolk County*,
   2016 WL 889737 (E.D.N.Y. 2016)........................................................................ 16

*Mallard v. Potenza*,
   2007 WL 4198246 (E.D.N.Y. Nov. 21, 2007)................................................. 6, 13

*Malley v. Briggs,*
   475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) .................................... 16

*Martino v. Nassau  County*,
   66 A.D. 3d 781, 887 N.Y.S.2d 204 (2d Dept. 2009)........................................ 13

*McClellan v. Smith,*
   439 F.3d 137 (2d Cir. 2006) ............................................................................... 16

*Messerschmidt v. Millender*,
   132 S. Ct. 1235, 182 L. Ed. 2d 47 (2012*)* ......................................................... 15

*Mishtaku v. City of New York,*
   2015 WL 13002182 (S.D.N.Y. May 4, 2015)................................................. 8, 14

*Mitchell v. Fishbein*,
   377 F.3d 157 (2d Cir. 2004) ............................................................................... 14

*Mitchell v. Forsyth,*
   472 U.S. 511 (1985) ............................................................................................ 16

*Moore v. Andreno,*
   505 F.3d 203 (2d Cir.2007) ................................................................................ 16

iii

*Mullenix v. Luna,*
    136 S.Ct. 305, 193 L.Ed.2d 255 (2015) .......................................................... 17

*Napolitano v. Ryder,*
    2019 WL 365710 (E.D.N.Y. Jan. 20, 2019)..................................................... 8

*Nash v. Nassau County,*
    150 A.D.3d 1120, 52 N.Y.S. 3d 670 (2nd Dept. 2017) ................................. 10

*New York State Rifle & Pistol Association, Inc. v. Beach,*
    354 F.Supp.3d 143 (N.D.N.Y. Dec. 17, 2018)..........................................8, 10

*New York State Rifle & Pistol Association, Inc. v. City of New York,*
    883 F.3d 45  (2d Cir. 2018) ......................................................................... 8, 9

*O'Connor v. Scapino,*
    83 N.Y.2d, 615 N.Y.S.2d 305, 638 N.E.2d 950 ............................................ 9

*Owens v. Okure,*
    488 U.S. 235, 109 S. Ct. 573, 102 L. Ed. 2d 594 (1989) .............................. 6

*Papaioannou v. Kelly,*
    14 A.D. 3d 459, 788 N.Y.S.3d 378 (1st Dept. 2005) .................................... 7

*Pearson v. Callahan,*
    555 U.S. 223, 129 S. Ct. 808, 172 L.Ed. 2d 565 (2009) .............................. 16

*Perros v. County of Nassau,*
    238 F.Supp.3d 395 (E.D.N.Y. 2017) .............................................................. 7

*Rothman v. City of New York,*
    2019 WL 3571051 (S.D.N.Y. August 8, 2019)............................................. 13

*Russo v. City of Bridgeport,*
    479 F.3d 196 (2d Cir.2007) .......................................................................... 16

*Salahuddin v. Goord,*
    467 F.3d 263 (2d Cir.2006) .......................................................................... 15

*Sanitiation & Recycling Indust., Inc v. City of New York,*
    107 F.3d 985 (2d Cir. 1997) ........................................................................ 11

*Saucier v. Katz,*
    533 U.S., 121 S.Ct. 2151............................................................................... 17

*Scalpi v. Town of East Fishkill*,
    2016 WL 858916 ......................................................................................................... 19

*Segal v. City of N.Y.*,
    459 F.3d 207 (2d Cir. 2006) ...................................................................................... 18

*Shen v. City of New York*,
    725 Fed. App'x. 7 (2d. Cir 2018) ............................................................................. 18

*Spanos v. City of New York*,
    2016 WL 3448624 (LTS) ............................................................................................ 11

*Spinelli v. City of New York*,
    579 F.3d 160 (2d Cir. 2009) ...................................................................................... 11

*Thomas v. Roach*,
    165 F.3d 137 (2d Cir.1999) ...................................................................................... 16

*Toussaint v. City of New York*, ............................................................................................8
    2018 WL 4288637, at *4 (E.D.N.Y. Sept. 7, 2018)

*Tyk v. Police Officer Eric Surat*,
    675 Fed. App'x. 40 (2d Cir. 2017) ........................................................................... 18

*U.S. v. Jacobsen*,
    466 U.S. 109, (1984) .................................................................................................. 13

*Vives v. City of N.Y.*,
    524 F.3d 346 (2d Cir. 2008) ...................................................................................... 18

*Weinstein v. Krumpter*,
    386 F.Supp.3d 220 (E.D.N.Y. 2019) ................................................................. passim

*White v. Pauly*,
    ___U.S. ___, 137 S.Ct. 548, 196 L.Ed.2d 463 (2017) ............................................. 17

*Zalaski v. City of Hartford*,
    723 F.3d 382 (2d Cir 2013) ...................................................................................... 17

*Zellner v. Summerlin*,
    494 F.3d 344 (2d Cir. 2007) ...................................................................................... 15

**PRELIMINARY STATEMENT**

Suffolk County, (former) Suffolk County Police Commissioner Timothy Sini[1], Sgt. William Walsh, Police Officer Louis Molinari and Captain William Scrima, defendants in this civil rights action pursuant to 42 U.S.C. §1983 brought by plaintiff Brett Milau submit this memorandum of law in support of their motion pursuant to Fed.R.Civ.P. Rule 56 for summary judgment dismissing the complaint.

On or about January 18, 1986, pursuant to New York Penal Law §400.2(f), plaintiff Brett Milau ("Milau") was issued a pistol license, commonly referred to as a "sportsman's" or "proper cause" license," by the Pistol Licensing Bureau of the Suffolk County Police Department ("the Police Department") (see ¶1, Defendants' Statement of Additional Material Facts"; exhibit D).[2]

On January 22, 2013,  Milau's son, Gregory Milau ("Gregory"), then 28 years old, contacted the Police Department and requested police assistance concerning an incident involving him and his father, with whom Gregory resided (see ¶2, exhibit B).  Suffolk County Police Officers went to the Milau residence at 439 Southport Street, Ronkonkoma, New York in response to Gregory's call.  Gregory informed the officers that Milau had become enraged during a verbal dispute the two were having and pushed Gregory to the

---

[1] Timothy Sini is currently the Suffolk County District Attorney.  He served as Suffolk County Police Commissioner from November 25, 2015 to December 31, 2017. He is sued only in his official capacity.  Accordingly, the claim against him stands against the County only. *Boyler v. City of Lackawanna*, 287 F.Supp.3d 308 (W.D.N.Y. 2018).

[2] Defendants' Statement of Additional Material facts is the latter part of Defendants' Revised Counterstatement in Response to Plaintiff's Statement Pursuant to Local Rule 56.1 and Statement of Additional Material Facts (docket entry no. 30-2). Paragraphs and exhibits referred to are those of said document.

ground, and that he didn't know if Milau would become more violent.  Gregory declined to press charge against his father (see ¶3; exhibit B).

On January 24, 2013, nonparty Capt. William Reed of the Police Department's Pistol Licensing Bureau sent Milau a letter notifying him that as a result of the domestic situation with Gregory, his Suffolk County pistol license had been suspended (see ¶4; exhibit E).  On January 25, 2013, Milau surrendered the five handguns that were registered to him with the Police Department for safeguarding (see ¶5; exhibits F and G).

On March 11, 2013, Milau submitted a Pistol License Renewal Application to Police Department (see ¶6; exhibit H). At the time, his license remained in suspension.  Non-party Investigator Nicholas Lorusso was assigned to conduct the investigation for the application.

On May 23, 2014, Gregory, who was then still residing in Milau's home, pleaded guilty to criminal possession of a controlled substance in the seventh degree, in violation of New York Penal Law §220.03 (see ¶7; exhibit I)

On January 22, 2015, Investigator LoRusso sent an Internal Correspondence to defendant Captain William Scrima of the Pistol Licensing Bureau to report on his investigation in connection with Milau's pistol license application.  The report indicated that there had been numerous domestic incidents involving Gregory and Milau (see ¶8; exhibit C).  The correspondence also indicated that Gregory had a multitude of arrests, including arrests for burglary and possession of a hypodermic instrument; and that as a result of his conviction for criminal possession of a controlled substance, he was ineligible to possess a firearm within the State of New York (see ¶9; exhibits C and I).  The correspondence further stated that Investigator Lorusso and Milau spoke on the phone on January 21, 2015.  At that time, Milau reported that he and his wife live in constant fear of

Gregory; that they sleep with a dead bolt on their bedroom door, that Gregory had made numerous threats to harm them with physical violence while they slept; that Gregory was constantly stealing from the family to support his drug habit; and that everything in their home had to be under lock and key.  Milau further told Investigator LoRusso that he did not want to obtain an Order of Protection against Gregory because his son had nowhere else to go and would wind up on the street and be dead in no time (see ¶10; exhibit C).  The correspondence also reflected that during their phone conversation Investigator Lorusso informed Milau that in light of the information Milau had conveyed about Gregory, it would probably be in his best interest to cancel his pistol license until Gregory no longer resided in the home. Milau agreed with Investigator Lorusso and requested that his pistol license be cancelled (see ¶11; Exhibit C).

On January 22, 2015, Captain Scrima sent Milau a Pistol License Notice of Cancellation.  This notice expressly stated that the cancellation was made only in view of Milau's request to cancel the license (see ¶12; exhibit J).

On March 22, 2016, Milau completed and submitted to the Pistol Licensing Bureau a Pistol License Applicant Questionnaire whereby he applied for a "sportsman's" pistol license pursuant to Penal Law §400.2(f). On May 19, 2017, after being assigned to investigate Milau's reapplication for a pistol license.  Defendant Officer Molinari phoned Milau.  During the conversation, Milau withdrew his application for a pistol license due to residing with Gregory who was barred from having a pistol license as a result of his conviction for criminal possession of a controlled substance in the seventh degree.  Milau stated that he would reapply for a pistol license when Gregory no longer lived in the Milau residence (see ¶ 13; exhibit K).

By his Complaint, Milau claims that by not issuing him a pistol license, defendants violated his rights a) under the Second Amendment (¶49); b) to freedom of association under the First Amendment (¶51)[3]; c) to possess the "seized" handguns under the Fourth Amendment (¶52); and d) to due process under the Fourteenth Amendment (¶53). He further asserts that by not issuing him a pistol license, defendants are unlawfully possessing and retaining his handguns (¶50) which he claims were "seized" from him (¶56).  Although his license was cancelled at his request, Milau alleges that the "revocation" of his license violated his First, Fourth and Fourteenth Amendment rights (¶57).  Milau also asserts that the County is liable to him because its policies required that he not be granted a pistol license and that his weapons, which he surrendered to the Police Department on January 25, 2013, not be returned to him  (¶54, 55).

### SUMMARY JUDGMENT STANDARD

It is well settled that summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c); See also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2551, 91 L. Ed. 2d 265, 265 (1986).

The trial court's task at the summary judgment stage is limited to discerning whether there are genuine issues of material fact to be tried, not deciding them.  Its duty is confined at this point to issue-finding.  It does not extend to issue resolution.  *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).  Only disputes

---

[3] Milau's complaint does not identify the person(s) who he claims to be restricted from associating with.  Presumably, it is Gregory.

over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986).

The moving party bears the initial burden of informing the district court of the basis for its motion and identifying the matter that it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323. Once the moving party has met this burden, the non-moving party must come forward with "specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) quoting Fed. R. Civ. P. 56(e). The non-movant must surpass an evidentiary threshold and "cannot survive summary judgment by casting mere 'metaphysical doubt' upon the evidence produced by the moving party." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586. The non-moving party must produce evidence in the record "and may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir. 1993). See *Gottlieb v. Cty. of Orange,* 84 F.3d 511, 518 (2d Cir. 1996). Affidavits submitted in support of, or opposition to, a summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show "that the affiant is competent to testify to the matters stated therein." *Patterson v. Cty. of Oneida, N.Y.,* 375 F.3d 206, 219 (2d Cir. 2004) .

Clearly, Milau can point to no evidence articulating a material issue of fact, and therefore no issue requiring resolution by a jury. Accordingly, summary judgment to defendants is warranted.

## POINT I

### MILAU'S CLAIMS REGARDING THE SUSPENSION OF HIS LICENSE AND SUPPOSED SEIZURE OF HIS PISTOLS ARE BARRED BY THE STATUTE OF LIMITATIONS

Despite his concession that he surrendered his firearms upon the suspension of his license on January 25, 2013 (see plaintiff's response to ¶5, Defendants' Statement of Additional Material Facts), Milau appears to allege that the weapons were unlawfully seized when he gave them to the SCPD.  Plainly, Milau's handguns were not seized since he volitionally gave them to the Police Department in conjunction with the suspension of his license. *Weinstein v. Krumpter*, 386 F.Supp.3d 220 (E.D.N.Y. 2019) (Fourth Amendment not violated where plaintiff "consented to the seizure" of license and handguns when he gave them to police at officer's request).

In any event, Milau's claim regarding the transfer of his handguns to the Police Department accrued on the date of the transfer, January 25, 2013.  *Mallard v. Potenza*, No.94-CV-223 (CBA), 2007 WL 4198246, at *4-5 (E.D.N.Y. Nov. 21, 2007) aff'd 376 Fed. App'x. 132 (2010) (Fourth Amendment claim accrues upon taking of property "because that is when the plaintiff's right have been intruded upon and the time at which he has a complete and present cause of action.").  In New York, the statute of limitations applicable to a §1983 claim is three years. *Owens v. Okure*, 488 U.S. 235, 109 S. Ct. 573, 102 L. Ed. 2d 594 (1989).  This action was commenced on October 17, 2017.  Because more that three years elapsed between the transfer of possession and the institution of this litigation, Milau's claim conerning the surrender of the firearms is barred by the statute of limitations.

## POINT II

## THE DECISION NOT TO RENEW MILAU'S LICENSE IS
## NOT UNCONSTITUTIONAL

The focus of the complaint is not the suspension of Milau's license.  Rather, it is the Pistol Licensing Unit's decision not to grant his application for renewal of his license pursuant to Penal Law. [4]  To clarify, Milau's pistol license application was not denied. Instead, as he admits, he withdrew the application, although he states that defendant Molinari had requested the withdrawal (see response to ¶13).  He challenges the decision not to renew as allegedly infringing his rights under the Second Amendment and due process clause.  He also asserts that the determination violated his right to freedom of association guaranteed by the First Amendment.  Under established law however, it is inarguable that a licensing authority's decision not to grant a pistol license does not implicate the Second Amendment or due process clause.  The Fourth Amendment is wholly inapplicable to such a decision.  As for Milau's First Amendment claim, he lacks the necessary evidence to support it.  He cannot possess handguns in New York State without a pistol license.

**A.     The Second Amendment Affords No Right to a Pistol License in New York.**

New York maintains a general prohibtion on the possession of firearms absent a license. *Kachalsky v. County of Westchester*, 701 F.3d 81, 85 (2 Cir. 2012).  It is well settled that in this state, "the possession of a handgun is a privilege, not a right." *Perros v. County of Nassau*, 238 F.Supp.3d 395 (E.D.N.Y. 2017) quoting *Papaioannou v. Kelly*, 14 A.D. 3d 459,

---

[4] Nor could Milau challenge the suspension of his license, as it occurred on January 24, 2013, well beyond the applicable statute of limitations.  See Point I, *supra*.

788 N.Y.S.2d 378 (1st Dept. 2005)(citing cases).  Accordingly, an applicant has no specific constitutional right to a pistol license.  See *Napolitano v. Ryder*, CV 18-3607 (SJF)(AKT), 2019 WL 365710, *8 (E.D.N.Y. Jan. 20, 2019)(citing cases).  Indeed, this Court recently noted the Court of Appeals for the Second Circuit has rejected the theory that there is a constitutional right to a handgun license in this state.  *Weinstein v. Krumpter*, 386 F.Supp.3d 220, 231-32 (E.D.N.Y. 2019) citing *Boss v. Kelly*, 306 Fed. App'x. 649 (2d Cir. 2009). Licenses are limited to those who meet the designated requirements including being of good moral character and someone for whom "no good cause exists for the denial of the license." *Toussaint v. City of New York*, 17-cv-5576 (NGG) (VMS), 2018 WL 4288637, at *4 (E.D.N.Y. Sept. 7, 2018)

Section 400 of the Penal Law is the "exclusive statutory mechanism of the licensing of firearms" in the state of New York. *Henry v. County of Nassau*, 2020 WL 1185283, at * 5 (E.D.N.Y. March 12, 2020 ) quoting *Kachalsky,* 701 F.3d 81, 85-86 (2d Cir. 2012); *Mishtaku v. City of New York*, 2015 WL 13002182,  at *4 (S.D.N.Y. May 4, 2015).  To obtain a license pursuant to § 400, an applicant must apply to their local licensing officer. *Toussaint, id*. citing *N.Y. Penal Law §§ 400.00(2)(a), (f), New York State Rifle & Pistol Association, Inc. v. City of New York*, 883 F.3d 45, 52-53  (2d Cir. 2018) cert granted. Courts in the Second Circuit have "repeatedly upheld" New York's firearm licensing regime under § 400 generally against Second Amendment challenges.  *Napolitano* at *8 citing cases.

Pursuant to Subsection 2(f), there are two primary types of handgun licenses: "carry licenses" and "premises licenses." *N.Y. Penal Law § 400.00(2)(a), (f), New York State Rifle & Pistol Association, Inc. v. City of New York*, 883 at 52-53  (2d Cir. 2018) cert granted.  A carry license allows an individual to "have and carry [a] concealed" handgun "without regard to

employment or place of possession … when proper cause exists" for the license to be issued. *Id.* "Carry licenses" are also called "sportsman's licenses" or "proper cause licenses," derived from the phrase "proper cause" in subsection 2(f).

It is a "proper cause" license that Milau applied for.  "Proper cause" is not defined by the Penal Law, but New York State courts have defined the term to include carrying a handgun for target practice, hunting, or self-defense. To establish proper cause to obtain a carry license without any restrictions "an applicant must 'demonstrate a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession.'" *Kachalsky*, at 86-87 (2d Cir. 2012) quoting *Klenosky v. N.Y City Police Dep't*, 75 A.D.2d 793, 793, 428 N.Y.S.2d 256 (1st Dep't 1980), aff'd on op. below, 53 N.Y.2d 685, 439 N.Y.S.2d 108, 421 N.E.2d 503 (1981).  A generalized desire to carry a firearm does not suffice.  When an applicant demonstrates proper cause to carry a handgun for target practice or hunting, the licensing officer may restrict a carry license "to the purposes that justified the issuance." *New York State Rifle & Pistol Association, Inc. v. City of New York*, 883 F.3d 45, 53  (2d Cir. 2018) quoting *Kachalsky*, 701 F.3d at 86) quoting *O'Connor v. Scapino,*  83 N.Y.2d at 921, 615 N.Y.S.2d 305, 638 N.E.2d 950.))  There can be no doubt that a licensing authority's decision not to issue a "proper cause license" does not trigger the Second Amendment since the Court of Appeals for the Second Circuit has already held that it does not.  Because the "proper cause" requirement concerns the carrying of weapons in public, as distinct from possessing weapons inside the home, it has already been held to fall outside of the "core Second Amendment protections" identified by the United States Supreme Court in  *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). *Kachalsky*, 701 F.3d at 94.  "[W]hile the state's ability to regulate firearms is circumscribed

in the home, 'outside the homes, firearm rights have always been more limited, because public safety interests often outweigh individual interests in self-defense.'" *Kachalsky*, 701 F.3d at 95.  Thus, subsection 2(f)'s requirement that an applicant demonstrate "proper cause" to be given a license has directly been held to comport with the Second Amendment. *New York State Rifle & Pistol Association, Inc. v. Beach*, 354 F.Supp.3d 143, 148 (N.D.N.Y. Dec. 17, 2018) citing *Kachalsky, supra*.  See *Corbett v. City of New York*, 18 Civ. 7022 (KPF), 2019 WL 2502056, at *8 (S.D.N.Y. June 17, 2019)(Courts of Second Circuit are bound by *Kachalsky*'s rejection of Second Amendment challenges to the proper cause requirement despite rulings of other Circuits).  See also *Weinstein*, 386 F.Supp.3d at 230-232 (confiscation of firearms does not violate Second Amendment because there is no constitutional right to possess handguns).

Accordingly, Milau has no right under the Second Amendment to challenge the decision not to approve his application for a license.

**B.      The Due Process Clause Is Not Offended by a Licensing Authority's Decision Not to Grant a Pistol License**.

Likewise, Milau cannot challenge the decision not to grant him a pistol license under the due process clause.

It is fundamental that the "requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 92 S.Ct. 2701, 2705 33 L.Ed.2d 548 (1992). Licensing officers however, are "vested with broad discretion on determining whether to issue or revoke a license." *Weinstein v. Krumpter*, 386 F.Supp. 3d at  (E.D.N.Y. July 8, 2019) quoting *Nash v. Nassau County*, 150 A.D.3d 1120, 1121,

52 N.Y.S. 3d 670 (2nd Dept. 2017).  That "broad significant discretion" entrusted to the licensing officer "precludes any legitimate claim of entitlement." *Toussaint*, at *7 quoting *Spanos v. City of New York*, No. 15-CV-6422, 2016 WL 3448624 (LTS) at *2 (S.D.N.Y. June 20, 2016) (quoting *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 503 (2d Cir. 2001)). See *Johnson ex rel Johnson v. Deprospo*, 1:19-CV-8426 (CM), 2019 WL 6311882, *4 (N.D.N.Y. November 22, 2019) (noting that courts within this circuit have held that because issuance of a pistol permit is discretionary, an individual has no property interest in holding such a permit). C.f., *Napolitano v. Ryder*, at *9 (reporting and recommending denial of preliminary injunction that sought post-deprivation hearing for reinstatement of Nassau County pistol license as not required by due process clause). [5] For this reason, an applicant has no protected liberty or property interest in a possible future handgun license. *Toussaint* at *8 quoting *Spinelli v. City of New York*, 579 F.3d 160, 169 (2d Cir. 2009) (quoting *Sanitiation & Recycling Indust., Inc v. City of New York*, 107 F.3d 985, 986 (2d Cir. 1997)).

### C.   Milau's Inability to Possess Handguns is Not a Constitutional Violation

That Milau cannot lawfully possess handguns after his license was suspended, resulting in the Police Department retaining his weapons, likewise provides no basis for a §1983 claim against defendants.  The retention of the weapons does not implicate the Fourth Amendment.  See Point II.E. *supra*.  His inability to possess handguns is due not to defendants, but to New York State's prohibition against unlicensed possession of handguns, a prohibition that unquestionably comports with the Constitution. *Weinstein v. Krumpter*, 386 F.Supp.3d at 230-232 (E.D.N.Y. 2019)(§400.00.11(c), which requires that  license

---

[5] To date, Judge Feuerstein has not yet ruled on whether to accept Magistrate Tomlinson's Report and Recommendation in *Napolitano*.

holder must surrender all guns in their possession to the licensing authority on suspension or revocation of license, does not violate Second Amendment). See also *Kachalsky v. County of Westchester*, 701 F.3d 81 (2 Cir. 2012)(§ 400.00 licensing regime not contrary to  Second Amendment).

### D.     Milau Lacks the Evidence to Establish That the Decision Not to Give Him a Pistol License Transgressed His Right to Association Under the First Amendment.

To  the  extent  that  Milau  appears  to  claim  that  he  has  been  restricted  from associating with Gregory, it is obvious that he lacks the evidence needed to establish his claim.   Proof of a claim of interference with familial relations requires proof that the infringing  action  was  undertaken  with  the  specific  intent  to  interfere  with  family relationships.  *Gorman v. Rensselaer County*, 910 F.3d 40 (2d Cir. 2018). Although discovery is concluded, Milau is unable to point to any evidence that the reason for the denial was the defendants' desire to harm his relationship with family members.

Indeed, his claim is thoroughly belied by the facts as he asserts them.  He avers in his Rule 56.1 Statement that Gregory has always and continues to reside in his home (¶ 9, 10).

### E.     The Fourth Amendment Is Inapplicable to a Decision Not to Grant a Pistol License.

Milau's complaint does not flesh out precisely what his Fourth Amendment claim is. Clearly, it cannot be premised upon the transfer of his handguns to the Police Department, even if that transaction could be viewed as a seizure, since it occurred outside of the limitations period.  See Point I, *supra*. While he alternatively attempts to found the claim on the continuing prohibition against his legally possessing handguns without a pistol license, that  circumstance  does  not  implicate  the  Fourth  Amendment.   By  its  terms,  the  Fourth

Amendment merely guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The condition of being unable to lawfully hold handguns is neither a search nor seizure.

As for the ongoing retention of Milau's weapons by the Police Department (within the statute of limitations), that likewise is not a seizure. See *Rothman v. City of New York*, NO.19 CV 0225 (CM), 2019 WL 3571051, at *5 (S.D.N.Y. August 8, 2019) citing *U.S. v. Jacobsen*, 466 U.S. 109, 113, (1984) ("A seizure is complete once the property is taking of property is complete, so it is of no moment how long the seized property is retained by the person after he took it."). See also, *Mallard v. Potenza*, supra, at *4 citing *Fox v. Vam Ooesterum*, 166 F.3d 342, 351 (6th Cir. 1999)("The Fourth Amendment protects an individual's interests in retaining possession of property, but not the interest in regaining property.")

**F.    The Correct Vehicle For Challenging the Denial of a Pistol License is an Article 78 Proceeding in State Court.**

Even if Milau has a viable objection to the action of the Pistol Licensing Unit as arbitrary and capricious or otherwise flawed under subsection 2(f), this Court is not the correct forum to adjudicate that challenge. The proper vehicle for such a challenge is a proceeding pursuant to Article 78 of the New York Civil Practice Law and Rules in the state courts. See e.g., *Johnson ex rel Johnson v. Deprospo*, 1:19-CV-8426 (CM), 2019 WL 6311882, *4 (N.D.N.Y. November 22, 2019) (even if a plaintiff had a liberty interest in a permit, they cannot assert their due process right was violated because Article 78 provides an adequate remedy at state law); *Weinstein v. Krumpter*, 386 F.Supp.3d at 231 (E.D.N.Y. July 8, 2019) citing *Martino v. Nassau County*, 66 A.D. 3d 781, 781-82, 887 N.Y.S.2d 204 (2d Dept. 2009);

13

*Mishtaku v. City of New York*, 14-CV-839 (VSB), 2015 WL 13002182,  at *6 (S.D.N.Y. May 4, 2015) quoting *Mitchell v. Fishbein*, 377 F.3d 157, 170 (2d Cir. 2004) (emphasis omitted)(an Article 78 proceeding is "the customary procedural vehicle for review of administrative determinations" in New York.) see also *Aron v. Becker*,  48 F.Supp.3d 347, at 37-71 (N.D.N.Y. 2014) ("an aggrieved pistol permit applicant has well established recourse under N.Y. CPLR Article  78").

**POINT III**
**THE CANCELLATION OF HIS PISTOL LICENSE AND ITS**
**CONSEQUENCES ARE NOT VIOLATIONS OF**
**MILAU'S CIVIL RIGHTS**

Milau contends that the cancellation of his license on January 22, 2015, the consequent prohibition against him possessing handguns, and the retention of his handguns by the Police Department transgressed his rights under the First, Fourth and Fourteenth Amendment (¶57).   Again, because he requested the cancellation of his license, the Police Department did not engage in any conduct against Milau in complying with his request.

That the Police Department retained his weapons because Milau could not lawfully possess handguns after his license was suspended, likewise provides no basis for a §1983 claim against defendants.   The retention of the weapons does not implicate the Fourth Amendment.   See Point II. E, *supra*.   His inability to possess handguns is due not to defendants, but to New York State's prohibition against unlicensed possession of handguns, a prohibition that unquestionably comports with the Constitution. *Weinstein v. Krumpter*, 386 F.Supp.3d at 231-32 (E.D.N.Y. 2019)(§400.00.11( c), which requires that  license holder

must surrender all guns in their possession to the licensing authority on suspension or revocation of license, does not violate Second Amendment).  See also *Kachalsky v. County of Westchester*, 701 F.3d 81 (2 Cir. 2012)(§ 400.00 licensing regime not contrary to  Second Amendment).

**POINT IV**

**INDIVIDUAL DEFENDANTS ARE ENTITLED
TO QUALIFIED IMMUNITY**

Even if strictly speaking, individual defendants crossed a constitutional line in their dealings with MIlau, they nonetheless are insulated from personal liability to Milau by the doctrine of qualified immunity.  Qualified immunity shields public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Salahuddin v. Goord,* 467 F.3d 263, 273 (2d Cir.2006) quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).  Accord, *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007)(quoting *Harlow v. Fitzgeral*d, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).  Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244-1245, 182 L. Ed. 2d 47 (2012*)* quoting *Ashcroft v. Al-Kidd,* 131 S. Ct. 2074, 2085, 179 L.Ed. 2d 1149 (2011).  The qualified immunity standard is forgiving.  *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) quoting *Amore v. Novarro*, 624 F.2d 522, 530 (2d Cir. 2010).  Both the Supreme Court and the Second Circuit have emphasized that "[n]ormally, it is only the 'plainly incompetent or those who knowingly violate the law'—those who are not worthy of the mantle of the

15

office—who are precluded from claiming the protection of qualified immunity." *Moore v. Andreno,* 505 F.3d 203, 214 (2d Cir.2007) quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

The doctrine's purpose has been described as "balanc[ing] two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815, 172 L.Ed. 2d 565 (2009). As the Second Circuit has noted, "[t]his doctrine is said to be justified in part by the risk that the 'fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.' " *Leogrande v. Suffolk County*, No 08-CV-3088 (JFB) (ARL), 2016 WL 889737, *5 (E.D.N.Y. 2016) citing *McClellan v. Smith,* 439 F.3d 137, 147 (2d Cir. 2006) quoting *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir. 1999). Thus, qualified immunity is not merely a defense but rather is also "an entitlement not to stand trial or face the other burdens of litigation." *Leogrande*, *id.* quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985).

Qualified immunity is available in two different sets of circumstances: where MILAU (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (*quoting Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir.2007)). As to whether the right is clearly established, the "dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 92.

It is the Court's duty to determine if the relevant right was sufficiently established at the time of the alleged wrongdoing, for whether a right was clearly established at the pertinent time is a question of law.  *Fabrikant v. French*, 691 F.3d 193, 212 (2d Cir. 2012) citing *Dean v. Blumenthal,* 577 F.3d 60, 67 n. 6 (2d Cir. 2009).  Rights must be clearly established in a "particularized" sense, rather than at a high level of generality; and such rights are only clearly established if a court can "identify a case where an officer acting under similar circumstances" was held to have acted unconstitutionally. *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) quoting *White v. Pauly*, ___U.S. ___, 137 S.Ct. 548, 552, 196 L.Ed.2d 463 (2017).  The law must be so clearly established with respect to the "*particular* conduct" and the "specific context" at issue that "every reasonable official would have understood that his conduct was unlawful." *Mullenix v. Luna*, ––– U.S. ––––, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (emphasis in original) (internal quotation marks omitted). If the illegality of the challenged conduct would not be so apparent, officers are entitled to qualified immunity.  *See Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013). "In short, if at least some reasonable officers in the defendant's position 'could have believed that the challenged conduct was within the bounds of appropriate police responses,' the defendant officer is entitled to qualified immunity." Id. (quoting *Saucier v. Katz*, 533 U.S. at 208, 121 S.Ct. 2151) (alterations omitted).

Because at minimum, it was not clearly established at the time they interacted with Milau that suspending or cancelling a pistol license based upon a license holder's physical confrontation with a member of his home, or the presence of a convicted felon in the home, could violate the license holderr's rights, individual defendants are entitled to qualified immunity. The same would be true even if this Court were now to hold as a matter of first

17

impression that such action by a licensing authority was unconstitutional.  *Harrington v. County of Suffolk*, 2009 WL 2567959 (E.D.N.Y. Aug. 17, 2009) aff'd. 607 F.3d 31 (2d Cir. 2010) (when court pronounces right for the first time, qualified immunity protects defendants from liability for earlier abridgements of the right).

Furthermore, since the actions taken by individual defendants were objectively reasonable, they are protected by the defense of qualified immunity on that basis as well.

### POINT  V

### NO COUNTY POLICY CAUSED A VIOLATION OF MILAU'S CONSTITUTIONAL RIGHTS

It is inarguable that Milau cannot challenge any County policy as the driver of  the initial suspension of his pistol license or surrender of his weapons, as those acts occurred in Janaury, 2013, well beyond the statute of limitations. Instead, he attacks the purported County policies that allegedly resulted in his being denied a pistol license and rendered him unable to continue to possess his handguns.

Fundamentally, however, as explained in Point II, *supra*, Milau's constitutional rights were not violated when the Pistol Licensing Unit declined to issue him a license.  Absent an underlying constitutional violation by one of its employees, there can be no liability on the part of the municipal employer.  *City of Los Angeles v. Heller*, 475 U.S. 796, 106 S.Ct. 157, 189 L.Ed.2d 806 (1986); *Shen v. City of New York*, 725 Fed. App'x. 7, 16 (2d. Cir 2018) citing *Segal v. City of N.Y.* 459 F.3d 207, 219 (2d Cir. 2006)("*Monell* does not create liability absent an independent constitutional violation"); *Tyk v. Police Officer Eric Surat*, 675 Fed. App'x. 40 (2d Cir. 2017) citing *Segal,* at 219 ("Because the district court properly found no underlying

constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.").

As for his inability to now possess the handguns which he surrendered, County policy is clearly not the reason for that circumstance. Rather, it is state law that completely bars him from possessing handguns at this time since he no longer has a pistol license. New York maintains a general prohibtion on the possession of firearms absent a license. *Kachalsky v. County of Westchester*, 701 F.3d 81, 85 (2 Cir. 2012). Indeed, § 400.00.11(c) requires that upon suspension or revocation of a license, the license holder must surrender all guns in their possession to the licensing authority. *N.Y. Penal Law § 400.00.11( c)* ("In any instance in which a person's license is suspended or revoked .....such person shall surrender such license to the appropriate licensing official and any and all firearms, rifles, or shotguns owned or possessed by such person shall be surrendered..."). Critically, §400.00.11 has been held to comply with the Constitution. *Weinstein v. Krumpter*, supra. 9)

In any event, a state statute generally cannot be considered a municipal policy for purposes of *Monell,* even if enforced by municipal employees. *Scalpi v. Town of East Fishkill*, Case No. 14-CV-2126 (KMK), 2016 WL 858916, at *6 citing *Vives v. City of N.Y.*, 524 F.3d 346,353 (2d Cir. 2008) (holding "that a mere municipal directive to enforce all state and municipal laws [does not] constitute [ ] a city policy to enforce a particular unconstitutional statute").

**CONCLUSION**

For the above reasons, defendants' motion pursuant to Fed. R. Civ. P. 56 for summary judgment dismissing the Complaint should be granted.

Dated:   Hauppauge, New York
         April 23, 2020

                                        Suffolk County Attorney's Office
                                        Suffolk County Department of Law
                                        Attorney for Defendants
                                        100 Veterans Memorial Highway
                                        P.O. Box 6100
                                        Hauppauge, New York 11788

                            By:    */s/ Arlene S. Zwilling*
                                   Arlene S. Zwilling
                                   Assistant County Attorney