UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
BRETT MILAU,

                            Plaintiff,                        17 Civ. 6061 (ADS)(SIL)

             -against-

SUFFOLK COUNTY, New York,
Commissioner TIMOTHY SINI, Individually,
Sgt. WILLIAM WALSH, Individually, Officer
LOUIS MOLINARI, Individually, Captain
WILLIAM SCRIMA, Individually, and "JOHN
DOE", Commanding Officer of the Suffolk
County Property Section, Individually,

                           Defendants.
--------------------------------------------------------x

# PLAINTIFF'S MEMORANDUM OF LAW

# IN OPPOSITION TO

# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THE BELLANTONI LAW FIRM, PLLC**
*Attorneys for Plaintiff*
**2 Overhill Road, Suite 400**
**Scarsdale, New York 10583**
**(914) 367-0090 (t)**
**(888) 763-9761 (f)**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES……………………………………………………. i

PRELIMINARY STATEMENT…………………………………………………… 1

UNDISPUTED MATERIAL FACTS……………………………..……………….. 1

LEGAL ARGUMENT……………………………………..………………….. 7

      Summary Judgment Standard…………………………………………..… 7

      Federal Rule of Civil Procedure 56(f)…………………………………… 7

I. 'PROPER CAUSE' JURISPRUDENCE IS INAPPOSITE TO THE
SUFFOLK COUNTY POLICY CHALLENGED BY PLAINTIFF……..……….. 8

II. SUFFOLK COUNTY POLICY VIOLATES CORE, FUNDAMENTAL
RIGHTS PROTECTED BY THE SECOND AMENDMENT……………....…. 9

      A. *Heller* declared handgun possession in the home to be a core
      Second Amendment 'right'…………………………………………….. 10

      B. The ability to obtain a long gun does not extinguish the core,
      fundamental right to possess handguns in the home for self-defense…….. 13

III. SUFFOLK COUNTY'S POLICY IS NOT SIMPLY AN ENFORCEMENT
OF STATE LAW…………………………………………………………………… 16

IV. SUFFOLK COUNTY'S POLICY VIOLATES THE
FOURTH AMENDMENT AS APPLIED TO PLAINTIFF………..………….. 18

V. SUFFOLK COUNTY IS LIABLE FOR VIOLATING
PLAINTIFF'S CONSTITUTIONAL RIGHTS UNDER *MONELL*………….... 19

VI. ARTICLE 78 PROCEEDINGS IN STATE COURT ARE LIMITED IN
SCOPE AND INADEQUATE TO ADJUDICATE FEDERAL
CONSTITUTIONAL MATTERS……………………..………………………….. 20

VII. PLAINTIFF'S REMAINING CAUSES OF ACTION……………………….. 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adickes v S.H. Kress & Co.*,
  398 U.S. 144, 90 S.Ct. 1598 (1970) ........................................................ 7

*Avitabile v Beach*,
  368 F.Supp 3d 404 (N.D.N.Y. 2019) ................................................ 13, 14-15

*Boss v Kelly*,
  306 F.App'x 649 (2d Cir 2009) ............................................................ 12

*Caetano v Massachusetts*,
  ___ US ___, 136 S.Ct 1027 (2016) .................................................. 14, 15-16

*Carroll v Krumpter*,
  2015 U.S. Dist LEXIS 160164 (E.D.N.Y. Nov. 30, 2015, No. 15-cv-1550 (ADS) ......... 12-13

*Coach Leatherware Co. v Ann Taylor, Inc.*,
  933 F.2d 162 (2d Cir. 1991) ................................................................ 8

*District of Columbia v Heller*,
  554 U.S. 570 (2008) .................................................................... 11, 14

*First Financial Ins. Co. v AllState Interior Demolition Corp.*,
  193 F.3d 109 (2d Cir. 1999) ................................................................ 8

*Garcha v City of Beacon*,
  351 F. Supp. 2d 213 (S.D.N.Y. 2005) ...................................................... 16

*Henry v County of Nassau*,
  2020 WL 1185283 (E.D.N.Y. March 12, 2020) .............................................. 16

*Kachalsky v County of Westchester*,
  701 F3d 81 (2d Cir. 2012) .............................................................. 10, 12

*Kaplan v Bratton*,
  249 A.D.2d 199 (1st Dep't 1998) .......................................................... 10

*Leon v Murphy*,
  988 F.2d 303 (2d Cir.1993) ................................................................ 7

*Matter of Chwick v Mulvey*,
  81 A.D.3d 161 (2d Dep't 2010) ............................................................ 16

Page(s)

*Matter of W. Sullivan O.R.E. LLC v Town of Thompson Planning Bd.*,
  53 Misc. 3d 1202[A], 2016 NY Slip Op 51329[U], *1 (Sup Ct, Sullivan County 2016) ...... 20

*McDonald v City of Chicago*,
  561 US 742, 130 S.Ct. 3020 (2010) ................................................................. 10

*Monell v Dep't of Social Servs. of the City of NY*,
  436 US 658, 98 S. Ct. 2018 (1978) ................................................................. 20

*Napolitano v Ryder*,
  2019 U.S. Dist. LEXIS 14864 (E.D.N.Y. Jan. 30, 2019, No. CV 18-3607 (SJF)(a) ............. 12

*Parker v Nastasi*,
  97 A.D.2d 547 (2d Dep't 1983) ...................................................................... 10

*People ex rel. Darling v Warden of City Prisons*,
  154 A.D. 413, 424, 139 N.Y.S. 277 (1st Dep't 1913) ...................................................... 10

*Sewell v New York*,
  182 A.D.2d 469 (1st Dep't 1992) .................................................................... 10

*Spinelli v City of NY*,
  579 F.3d 160 (2d Cir. 2009) ......................................................................... 12

*Toussaint v City of NY*,
  2018 U.S. Dist. LEXIS 152985 (E.D.N.Y. Sep. 6, 2018, No. 17-CV-5576 (NGG) .............. 12

*United States v Jacobsen*,
  466 U.S. 109 (1984) ................................................................................. 18

*United States v. Decastro*,
  682 F.3d 160 (2d Cir. 2012) ......................................................................... 13

*Vaher v Town of Orangetown*,
  916 F.Supp. 2d 404 (S.D.N.Y. 2013) ............................................................. 13, 14

*Weinstein v Krumpter*,
  386 F.Supp 3d 220 (E.D.N.Y. 2019) ............................................................ 12, 14

*Zahra v Town of Southold*,
  48 F.3d 674 (2d Cir. 1995) .......................................................................... 18

Page(s)

**Statutes**

18 U.S.C. § 922 .................................................................................................. 6, 13

Penal Law § 220.03 ................................................................................................. 5

Penal Law § 265.00 ................................................................................................. 5

Penal Law § 265.01 ................................................................................................. 5

Penal Law § 265.45 ................................................................................... 5, 6, 17, 18

Penal Law § 400.00 *et seq.* .......................................................................... *passim*

**Rules**

Fed.R.Civ.P. 56 ................................................................................................ 1, 7, 8

## PRELIMINARY STATEMENT

Brett Milau ("Plaintiff") submits the within memorandum of law, counterstatement and statement of additional facts pursuant to Local Rule 56.1, and the Declaration of Amy L. Bellantoni with annexed exhibits, in opposition to the defendants' motion for summary judgment.

Plaintiff's causes of action arise from a Suffolk County policy that bans the possession of handguns by anyone who resides with a "prohibited person", to wit, an individual who has one or more legal prohibitors to gun possession.

Suffolk County's policy violates a right that the Supreme Court has held to be a core, fundamental right falling within the scope of Second Amendment protections.

As applied to Plaintiff, Suffolk County's policy continues to violate his property rights as protected by the Fourth Amendment.

Based on the following, Suffolk County's motion for summary judgment should be denied as to Plaintiff's Second Amendment and Fourth Amendment claims, and judgment in favor of the nonmovant Plaintiff as to his Second Amendment and Fourth Amendment claims should be granted by the Court pursuant to FRCP 56(f).

## UNDISPUTED MATERIAL FACTS

Plaintiff resides in Ronkonkoma, New York. (Deposition of Brett Milau as Exhibit 1 of the Declaration of Amy L. Bellantoni at 4; 13). Plaintiff has never been arrested and has no criminal convictions. (Deposition of Investigator Nicholas LoRusso as Ex. 6 at 30).

Plaintiff has been gainfully employed as a Senior Staff Engineer for over 36 years. (Ex. 1 at 31). Before moving to Suffolk County from Queens over 30 years ago, Plaintiff possessed a New York City handgun permit. (Ex. 1 at 52). Suffolk County issued a New York State pistol

license to Plaintiff in 1986. (Ex. 1 at 52). Plaintiff has enjoyed target shooting and hunting for over 30 years. (Ex. 1 at 53-54).

Plaintiff's handguns and long guns were, at all times relevant herein, stored in a locked gun safe, which is over five (5) feet tall, three (3) feet deep, and weighs 300 pounds empty. (Ex. 1 at 103-104).

Plaintiff resides with his wife and adult son, Gregory. (Ex. 1 at 13). Gregory is approximately 30 years old and has been addicted to drugs since a car accident that occurred when he was 15 years old; he has been in drug rehabilitation programs on at least five occasions. (Ex. 1 at 13; 34-36). Since 2013, Plaintiff has called the Suffolk County Police Department ("SCPD") several times because of Gregory's verbal and physical aggression toward him and his wife. (Ex. 1 at 15-16). Seeking only to document Gregory's behavior, Plaintiff has not filed charges against his son. (Ex. 1 at 18-19). On two (2) separate occasions, Plaintiff obtained temporary orders of protection ("TOP") against Gregory in Family Court. (Ex. 1 at 20-22). The first TOP was a "stay away" order; Plaintiff requested it be vacated when Gregory entered into a drug rehabilitation program 2 months later. (Ex. 1 at 22-23). The second TOP was a "refrain from" order sought because of Gregory's "abusive" and "aggressive nature" due to substance abuse. (Ex. 1 at 23). Gregory is "extremely demanding and aggressive". (Ex. 1 at 24). The second TOP was vacated four (4) months later because Gregory was struck (as a pedestrian) by a drunk driver and sustained "life threatening injuries". (Ex. 1 at 24-25; 28). After Gregory's release from the hospital, Plaintiff again contacted the police because Gregory put holes in the sheetrock of the house. (Ex. 1 at 31-32).

In January 2013, the police responded to Plaintiff's home as a result of Gregory's phone call complaining that his father pushed him. (See, Police Incident Report as Ex. 2). Gregory became "increasingly violent and out of control and threatening", "nose-to-nose" with Plaintiff, screaming and yelling in Plaintiff's face, demanding money. Gregory's conduct forced Plaintiff to shove Gregory away from himself because he felt threatened for his safety. (Ex. 1 at 84-86).

SCPD policy requires officers responding to a domestic incident complaint to seize the firearms of a pistol licensee if the officers feel there is a potential danger within the household. (Ex. 1 at 88; Ex. 6 at 66-67; Ex. 2).

Plaintiff told the responding officers that he had weapons in the house and showed the officers his NYS handgun permit. (Ex. 1 at 88; Ex. 2). The officers did not arrest Plaintiff or charge him with any offense, nor did they take Plaintiff's handguns, long guns, or his handgun license. (Ex. 1 at 88; Ex. 2; Ex. 6 at 66-69).

On January 24, 2013, the SCPD License Bureau suspended Plaintiff's handgun permit and required Plaintiff to surrender his five (5) handguns to SCPD, which he did. (Ex. 1 at 47-48; 54-55; 57; Notice of Suspension at Ex. 3; Property Voucher at Ex. 4).

SCPD required Plaintiff to provide a written statement about the incident, to which he provided the following:

"MY SON GREGORY IS A DRUG ADDICT. I THINK HE USES HEROIN. MY WIFE THINKS HE'S ON CRACK COCAINE. HIS PROBLEMS STARTED WITH A TRAUMATIC BRAIN INJURY WHEN HE WAS 15. HIS DRUG ADDICTION HAS BEEN GOING ON FOR SO LONG, I CAN'T REMEMBER WHEN OR HOW IT ALL STARTED. MY SON IS ON PROBATION FOR THREE YEARS FOR BREAKING INTO MY NEIGHBORS HOUSE. GREG STARTED TO SHOW BEHAVIORAL CHANGES. HE STARTED NOT GOING TO SCHOOL. HE STARTED STEALING FROM US. HE STOLE TWO WEDDING BANDS FROM ME, A CAN OF SILVER COINS. I'VE GOT DEAD BOLTS ON MY BEDROOM. WE KEEP ALL OUR VALUABLE STUFF IN A SAFE. OUR OTHER SON STEVEN IS ADDICTED TO OXYCONTIN. IM PRETTY SURE HE SAID WAS OXYCONTIN MY WIFE SAID HE SAID HES ADDICTED TO OXYCONTIN. STEVEN LIVES WITH HIS GIRLFRIEND CRYSTAL NORMAN IN MEDFORD. GREGORY TAKES CABS HOME

AND YELLS AT US TO PAY THE CAB FARE. THE OTHER NIGHT I THINK IT WAS WEDNESDAY, 1/23/13, GREGORY STARTED IN SAYING HE NEEDED $80 FOR COMMUNITY SERVICE. THIS IS AFTER $100 FOR A $50 FOR THAT. I WAS LIKE NO MORE. HE WAS HITTING THINGS, POUNDING THINGS. HE'S VERBALLY ABUSIVE EVERY DAY. HE PLAYS MY WIFE AND I AGAINST EACH OTHER I HAD ENOUGH. IT WAS GOING ON FOR SO LONG, I SAID NO AGAIN AND GAVE HIM A PUSH BECAUSE I WAS ANGRY AND I WANTED HIM TO LEAVE ME ALONE."

(Ex. 5).

It is SCPD policy to retain the handguns and pistol license of a licensee until after the expiration of the statute of limitations for prosecuting the underlying offense leading to the handgun license suspension and seizure of handguns. (Ex. 6 at 24-25). "[A]s long as the violation or crime can be pursued by the complainant the [pistol] license remains in a state of suspension." (Ex. 6 at 25).The statute of limitations for Harassment in the Second Degree is one (1) year, however, SCPD retained Plaintiff's handguns for over two (2) years without any determination, reinstatement of his pistol license, or release of his property. (Ex. 1 at 64, 67; Ex. 6 at 24-25; Notice of Cancellation as Ex. 8). To date, Plaintiff has not regained possession of his handguns from SCPD. (Ex. 1 at 64).

In January 2015, Investigator Nicholas LoRusso contacted Plaintiff by phone to investigate the suspension of his handgun permit. (Ex. 6 at 37; Ex. 7). Plaintiff told Investigator LoRusso that he and his wife live in fear of Gregory and sleep with a dead bolt on their bedroom door because Gregory threatened to harm them in their sleep; Gregory constantly steals money and items from them and sells them to support his drug habit; and everything in Plaintiff's home is under lock and key. (Ex. 6 at 37; Ex. 7; Def. Revised 56.1 Counterstatement at ¶ 69). Plaintiff and his wife are reluctant to make Gregory live elsewhere, fearing that he will end up dead on the street. (Ex. 6 at 37; Ex. 7). The Milau's oldest son, Steven, passed away in September 2014. (Ex. 1 at 13).

Gregory has a prior conviction for Criminal Possession of a Controlled Substance in the Seventh Degree ("CPCS-7"), a misdemeanor, in violation of Penal Law § 220.03. A conviction of CPCS-7 is listed as a "serious offense" under Penal Law § 265.00 (17), which renders Gregory legally prohibited from possessing any class of firearm – handguns, rifles, and/or shotguns. See, § 265.01; § 400.00 (1) (c).

***Suffolk County Policy Banning Handgun Possession***

Suffolk County policy bans the possession of handguns by anyone who resides with a "prohibited person", to wit, an individual who has one or more legal prohibitors to gun possession. (Ex. 6 at 30-31; Def. Revised 56.1 Counterstatement at ¶¶ 73, 75; Ex. 9 at 17).

Suffolk County will not issue Plaintiff a New York State pistol license ("handgun permit") because he resides with Gregory - a person legally prohibited from possessing any class of firearm. (Ex. 1 at 64-66; 69; Ex. 6 at 30-34; Def. Revised 56.1 Counterstatement at ¶¶ 73, 75; Ex. 9 at 17).

Plaintiff cannot regain possession of his handguns from SCPD for self-protection in his home because of Suffolk County's policy banning handgun possession by individuals who reside with a prohibited person. (Ex. 1 at 64-66; 69; Ex. 6 at 33-34; Def. Revised 56.1 Counterstatement at ¶¶ 73, 76). Thus, under SCPD policy, Plaintiff will not be issued a handgun permit because he lives with Gregory. (Ex. 6 at 30-31).

Under Suffolk County policy, "[R]egardless of the mechanisms by which an individual safeguards their firearms [under § 265.45], if they reside with a prohibited person or if the nature of the domestic situation is such that it's – there is a concern for either public safety or household safety, firearms and the license come out of the house." (Ex. 6 at 33-35).

Penal Law § 265.45 requires any person "who owns or is a custodian of a rifle, shotgun or firearm who resides with an individual who such person knows or has reason to know is prohibited from possessing a firearm pursuant to 18 U.S.C. § 922(g) (1), (4), (8) or (9) shall store or otherwise leave such rifle, shotgun or firearm out of his or her immediate possession or control without having first securely locked such rifle, shotgun or firearm in an appropriate safe storage depository or rendered it incapable of being fired by use of a gun locking device appropriate to that weapon." (Penal Law §265.45). A violation of §265.45 is a Class A misdemeanor.

Notwithstanding § 265.45, SCPD policy requires the seizure of firearms whenever an individual resides with a prohibited person. (Ex. 6 at 34-35). The policy was created and is enforced because of the "likelihood or potentiality for a firearm to be stolen and either used in the commission of a crime or sold illegally on the street…by the prohibited person." (Ex. 6 at 33-34).

SCPD revoked Plaintiff's handgun license in January 2015 because, under SCPD policy, Plaintiff was banned from possessing a handgun as long as he cohabitated with a prohibited person. (Ex. 6 at 33-39; 67).

Whether Plaintiff 'voluntarily' canceled his handgun permit or was revoked by SCPD, as Defendants posit, is immaterial because Plaintiff's handgun permit will never be reinstated by Suffolk County and his handguns will never be returned to him, as long as Gregory resides in Plaintiff's home. (Ex. 1 at 45, 49, 65-70; Ex. 6 at 33-34; 30-39; Ex. 8).

In 2017, Plaintiff submitted an application for a handgun permit to SCPD, which was assigned to Officer Louis Molinari. (Ex. 9 at 15). Officer Molinari contacted Plaintiff upon noticing that Plaintiff's son Gregory was convicted of a serious offense, to ascertain whether

6

Gregory still lived with Plaintiff. Because Gregory's conviction of a serious offense was "an automatic bar to having a pistol license", Officer Molinari would not be able to approve Plaintiff's application if Gregory still lived in the house "based on the policy of the police department". (Ex. 9 at 17, 22-23; Ex. 1 at 65-66; Def. Revised 56.1 Counterstatement at ¶ 82).

Suffolk County's policy banned Plaintiff's right to possess handguns in his home for self-protection based solely on his cohabitation with a prohibited person. (Ex. 1 at 45, 49, 65-70; Ex. 6 at 33-34; 30-39; Ex. 9 at 17, 22-23).

Suffolk County's policy materially interfered with Plaintiff's use, enjoyment, and possession of his property, to wit, his handguns based solely on his cohabitation with a person who is legally prohibited from possessing firearms. (Ex. 1 at 45, 49, 65-70; Ex. 6 at 33-34; 30-39; Ex. 9 at 17, 22-23).

## LEGAL ARGUMENT

### Summary Judgment Standard

Summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. See, *Adickes v S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970).

Summary judgment is appropriate only where, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party. *Leon v Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

### *Federal Rule of Civil Procedure 56(f)*

Under FRCP 56(f), the court may grant summary judgment in favor of the nonmovant. "It has long been the law in the Second Circuit that a party moving for summary judgment runs the risk that not only might its own motion for summary judgment be denied, the court may grant summary judgment against the movant." *First Financial Ins. Co. v AllState Interior Demolition Corp.*, 193 F.3d 109, 115 (2d Cir. 1999) ("as long as some party has made a motion for summary judgment, a court may grant summary judgment to a non-moving party, provided that party has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried."); *Coach Leatherware Co. v Ann Taylor, Inc.*, 933 F.2d 162, 167-68 (2d Cir. 1991) (recognizing that there is no need for notice when entering summary judgment against the moving party because the movants have "significant incentive to put forward any compelling evidence in support of their summary judgment motion since the law prevent[s] the district court from drawing favorable inferences on their behalf").

Suffolk County concedes the substance of the challenged handgun ban, but doubles down on the position that (i) the policy does not violate any rights protected by the United States Constitution; and (ii) its policy is simply an enforcement of Penal Law § 400.00 *et seq.*

There are no material issues of fact to be determined by a jury. Existing legal precedent warrants judgment in favor of Plaintiff, as discussed below.

### I. 'PROPER CAUSE' JURISPRUDENCE IS INAPPOSITE TO THE SUFFOLK COUNTY POLICY CHALLENGED BY PLAINTIFF

The Suffolk County policy challenged herein is a blanket prohibition on handgun possession by any person who resides with an individual who is legally prohibited from possessing guns. (Ex. 6 at 30-39; Ex. 9 at 15-23). The policy applies to every pistol license

application, irrespective of the type of handgun permit and/or level of restriction sought by the applicant under Penal Law § 400.00 (2).

Suffolk County admits the existence and substance of the challenged policy. (Def. Revised 56.1 Counterstatement at ¶ 73, ¶ 75, ¶ 82; Ex. 6 at 30-34; Ex. 9 at 17, 22-23).

In defense of its policy, Suffolk County first relies on cases involving unsuccessful challenges to the "proper cause" requirement for the issuance of a concealed carry handgun license. [Def. MOL at 8-9].

"Proper cause" jurisprudence is inapposite to the issues before the Court. This case does not involve a challenge to the "proper cause" requirement nor does it challenge New York's handgun licensing statute, Penal Law §400.00 *et seq*.  The uncontroverted record establishes that Suffolk County denied Plaintiff's 2017 application for a handgun permit solely because he resides with a prohibited person. The issue of "proper cause" was never a consideration.

 Where an individual meets the eligibility criteria of § 400.00 (1), a pistol license "shall issue". See, § 400.00 (2). Whether the scope of the issued permit restricts possession to the applicant's residence or allows some level of public carry is within the discretion of the licensing officer.

The *type* of license restriction Plaintiff applied for is moot – Investigator Molinari did not even get that far into Plaintiff's application, nor could he. (Ex. 1 at 65-66; Ex. 9 at 17-23; Def. Revised 56.1 Counterstatement at ¶ 84). Under Suffolk County policy, no handgun permit will issue to Plaintiff while he resides with a prohibited person.

## II. SUFFOLK COUNTY POLICY VIOLATES CORE, FUNDAMENTAL RIGHTS PROTECTED BY THE SECOND AMENDMENT

Suffolk County policy banning the possession of handguns by individuals who reside with a prohibited person violates a core, fundamental right protected by the Second Amendment.

A.  *Heller* declared handgun possession in the home to be a core
Second Amendment 'right'

Handgun jurisprudence in New York following the enactment of the Sullivan Law in 1911, which launched the requirement that all handguns be licensed, has been built on the premise that handgun possession itself (leaving aside the issue of public carry) is a "privilege" to be controlled by the government, not a "right" protected by the Second Amendment. See, *Parker v Nastasi*, 97 A.D.2d 547, 548 (2d Dep't 1983); *Sewell v New York*, 182 A.D.2d 469, 472 (1st Dep't 1992); *Kaplan v Bratton*, 249 A.D.2d 199 (1st Dep't 1998). See also, *Kachalsky v County of Westchester*, 701 F3d 81, 85 (2d Cir. 2012) (noting that the constitutionality of the Sullivan Law was upheld, in part, "on what is now the erroneous belief that the Second Amendment does not apply to the states") citing *People ex rel. Darling v Warden of City Prisons*, 154 A.D. 413, 424, 139 N.Y.S. 277 (1st Dep't 1913) (deciding, albeit erroneously, that the "police power of the State" legitimizes the creation of such laws).

New York's historical categorization of handgun possession as a 'privilege' is based on the faulty premise that the Second Amendment applied only to the federal government, not the states. The Supreme Court's decision in *McDonald v City of Chicago*, 561 U.S. 742, 130 S.Ct. 3020 (2010), made clear that the preexisting individual rights codified in the Second Amendment are protected from infringement by federal *and* state action. *McDonald*, 561 U.S. at 785-786 (Evidence from the period immediately following the ratification of the Fourteenth Amendment confirms that the right to keep and bear arms is considered a "fundamental" right.).

As such, the states shall not infringe the preexisting right of the individual to keep and bear arms.

In *District of Columbia v Heller*, 554 U.S. 570 (2008), the Supreme Court confirmed that the scope of an individual's core fundamental rights under the Second Amendment encompasses the possession of handguns in the home for self-defense.

The court expressly rejected the idea that the scope of the Second Amendment right should be determined by judicial interest balancing, rejecting the dissents' arguments to the contrary. "The very enumeration of the right takes out of the hands of government--even the Third Branch of Government--the power to decide on a case-by-case basis whether the right is really worth insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all." *Heller*, 554 U.S. at 634-636.

The government cannot eviscerate a core right falling with the scope of the Second Amendment. Suffolk County's ban on handgun possession in the home by individuals who reside with prohibited persons violates a core right protected by the Second Amendment.

Even post-*Heller* and *McDonald*, jurisprudence in this jurisdiction continues to place emphasis on the license itself, erroneously characterizing it as a 'privilege', and not a 'right'. The term "license", and placing the focus thereon, is disingenuous. For a non-prohibited person under New York's "shall issue" statute § 400.00 (2), the process for legally possessing a handgun in one's home is no different than a "registration" with the State to investigate and confirm that the applicant does not to have a *per se* prohibitor to gun possession.

If obtaining a "New York State pistol license" is the only means of exercising the Second Amendment right to possess a handgun for self-protection in one's home, then the issuance of that license is mandated for non-prohibited persons.

The majority of cases classifying pistol licenses as a mere 'privilege', including those cited by Suffolk County, are factually and legally distinguishable from the facts before the Court.

11

Challenges to the "proper cause" requirement for the issuance of a concealed carry permit, employment-related carry licenses, challenges to the statutory licensing fees of § 400.00 (14), and/or involve the seizure of weapons in the face of threats of unlawful use are inapposite to the right to possess handguns in one's home for self-protection. *C.f., Kachalsky v County of Westchester*, 701 F.3d 81, 83 (2d Cir. 2012) (upholding the "proper cause" provision of § 400.00 (2)(f)); *Boss v Kelly*, 306 F.App'x 649, 650 (2d Cir 2009) (relied upon by *Weinstein v Krumpter* and decided pre-*McDonald*, involved a due process claim related to a police officer's possession of a firearm in the course of his employment); *Spinelli v City of NY*, 579 F.3d 160, 168 (2d Cir 2009) (involved an employment-related firearms dealership license); *Toussaint v City of NY*, 2018 U.S. Dist. LEXIS 152985, at *2 (E.D.N.Y. Sep. 6, 2018, No. 17-CV-5576 (NGG) (VMS)) (relying on *Spinelli*, also involved an employment-related carry license); *Napolitano v Ryder*, 2019 U.S. Dist. LEXIS 14864, at *5 (E.D.N.Y. Jan. 30, 2019, No. CV 18-3607 (SJF) (AKT)) (application for a preliminary injunction; underlying facts involved the issuance of an order of protection against the handgun owner, which required divestiture of *all* guns under 18 U.S.C. § 922(g) and the suspension or revocation of his handgun permit under § 400.00 (11)(a), Criminal Procedure Law § 530.14 and/or Family Court Act § 842-a.); *Weinstein v Krumpter*, 386 F.Supp 3d 220, 224 (E.D.N.Y. 2019) (involving allegations of, at a minimum, a criminal menacing charge where the plaintiff was alleged to have threatened his family members with his gun. *Weinstein* also involved a challenge to § 400.00, which is not present here.).

B.  The ability to obtain a long gun does not extinguish the core, fundamental right to possess handguns in the home for self-defense

A popular response to Second Amendment claims involving the possession of handguns and/or handgun permits is that no violation of the Second Amendment exists where an individual can simply purchase a new gun. See, e.g., *Carroll v Krumpter*, 2015 U.S. Dist LEXIS 160164, at

*27 (E.D.N.Y. Nov. 30, 2015, No. 15-cv-1550 (ADS)(ARL)), citing, *Vaher v Town of Orangetown*, 916 F.Supp. 2d 404, 429-430 (S.D.N.Y. 2013) ("the 'right to bear arms' is not a right to hold some particular gun") quoting, *Garcha v City of Beacon*, 351 F. Supp. 2d 213, 217 (S.D.N.Y. 2005) (dismissing Second Amendment claim based on destruction of gun seized incident to an arrest where the plaintiff had not alleged that "any action taken by defendants would prevent him from acquiring another weapon").

The "adequate alternative" language originates from *United States v Decastro*, 682 F.3d 160 (2d Cir. 2012), a case in which the Second Circuit rejected a constitutional challenge to 18 U.S.C. § 922(a)(3), a federal criminal statute that made it unlawful for "anyone other than a licensed importer, manufacturer, dealer or collector [to] transport[] into his state of residence a firearm purchased or obtained outside the state." *Avitabile v Beach*, 368 F.Supp 3d 404, 415 (N.D.N.Y. 2019). The *Decastro* court reasoned that a law that regulates the availability of firearms is not a substantial burden on the right to keep and bear arms if adequate alternatives remain for law-abiding citizens to acquire a firearm for self-defense…[thus] there remained ample alternative means of acquiring firearms for self-defense purposes." *Id.* quoting, *Decastro*, 682 F.3d at 168.

However, the purpose of the federal statute in *Decastro* was to stop circumvention of state laws regulating gun possession by requiring state residents to comply with the conditions of sale and similar requirements in their home state. *Id.* citing, *Decastro*, 682 F.3d at 168. In *Decastro*, the "ample alternative means" encompassed all lawful firearms available for sale in one's state.

Through generous interpretation, courts in the Eastern and Southern Districts have applied the language in *Decastro* to hold held that the right to keep and bear arms does not mean

the right to possess a particular gun [*Vaher*, supra] and is not violated where an individual can go out and purchase a new gun [*Krumpter*, supra].

But the Supreme Court has held more than once, "The right to bear other weapons is 'no answer' to a ban on the possession of protected arms." *Caetano v Massachusetts*, ___US___ , 136 S.Ct 1027, 1033 (2016).

Suffolk County's policy bans the right to possess a handgun in one's home for self-protection – a right the Supreme Court has held to be a core, fundamental right falling within the scope of Second Amendment protections. Suffolk County's policy bans an entire class of arms from an entire class of people who have done nothing to warrant the termination of that right.

As stated by the Supreme Court in *Heller*,

> "It is no answer to say, as petitioners do, that it is permissible to ban the possession of handguns so long as the possession of other firearms (i.e., long guns) is allowed. It is enough to note, as we have observed, that the American people have considered the handgun to be the quintessential self-defense weapon. There are many reasons that a citizen may prefer a handgun for home defense: It is easier to store in a location that is readily accessible in an emergency; it cannot easily be redirected or wrestled away by an attacker; it is easier to use for those without the upper-body strength to lift and aim a long gun; it can be pointed at a burglar with one hand while the other hand dials the police. Whatever the reason, handguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid."

*District of Columbia v Heller*, 554 US 570, 629 (2008).

Plaintiff cannot go out and buy a new handgun and bring it home, because possession in the home without a state permit is a crime.

While statutes banning certain subsets of firearms, such as fully automatic rifles, have been upheld by the courts, a ban on an entire class of weapon such as handguns is overbroad and unconstitutional See, *Avitabile*, 368 F. Supp. 3d at 417 ("In sum, the Court declines to conclude that the "adequate alternative" language sweeps so broadly as to mean that a state can

14

permissibly enact what amounts to a total ban on an entire class of weapons that are in common use for the lawful purpose of self-defense simply because various alternative items that might also be useful for that purpose could still be obtained and kept in the home.").

Handguns are not only recognized as "common" weapons used for self-protection in the home – and in public - the Supreme Court confirmed that handguns are the preferred means of home protection in the United States.

A contrary holding removes an <u>entire class of arms</u> [handguns] – "common weapons" and not just a <u>subset of arms</u> [fully automatic rifles] from the scope of Second Amendment protections. The result is the government dictating to an entire group of people, including Plaintiff, that a long gun is their only option for self-protection, leaving no means for Plaintiff (and others similarly situated) to use the weapon that millions of lawful gun owners in this country choose as the preferred weapon for self-defense, and the weapon the Supreme Court has held is protected by the Second Amendment.

Protecting only certain classes of arms is unconstitutional, because then the states would be free to ban all weapons except those the government decides its residents can possess. "The right to bear other weapons is 'no answer' to a ban on the possession of protected arms."  See, *Caetano v Massachusetts*, ___US___ , 136 S.Ct 1027, 1033 (2016) (rejecting the claim that, because the number of stun guns used for self-defense by the public is dwarfed by the number of firearms, they cannot be considered 'commonly possessed by law-abiding citizens' "[o]therwise, a State would be free to ban all weapons except handguns, because handguns are the most popular weapon chosen by Americans for self-defense in the home.") citing *Heller*, at 629. *C.f.*, *Avitabile*, at 418 (striking down as unconstitutional § 265.01 as applied to tasers and stun guns because such 'electric arms' are in 'common use', typically possessed by law-abiding persons for

15

self-defense, and protected by the Second Amendment) citing, *Heller*, 554 U.S. at 629 ("It is no answer to say, as petitioners do, that it is permissible to ban the possession of handguns so long as the possession of other firearms (i.e., long guns) is allowed.").

Based on the above, Suffolk County's policy banning handgun possession by individuals who reside with persons prohibited from possessing firearms violates the Second Amendment generally, and as applied to Plaintiff.

## III. SUFFOLK COUNTY'S POLICY IS NOT SIMPLY AN ENFORCEMENT OF STATE LAW

Penal Law § 400.00, *et seq.* is the "exclusive statutory mechanism of the licensing of firearms" *Henry v County of Nassau*, 2020 WL 1185283, at *5 (E.D.N.Y. March 12, 2020) and preempts all local laws and ordinances concerning the regulation of firearms in New York State. *Matter of Chwick v Mulvey*, 81 A.D.3d 161 (2d Dep't 2010).

The detailed provisions of § 400.00, *et seq.* evince the intention of the New York State Legislature to preempt the field of firearms regulation, leaving no room for local ordinances to operate. *Matter of Chwick*, 81 A.D.3d at 163 (holding that Nassau County's local ordinance criminalizing the possession of colored firearms was preempted by the comprehensive and detailed regulatory language and scheme of § 400.00.).

As such, no locality may supplant the licensing requirements of § 400.00, since to do so would undermine the system of uniform firearm licensing. Instead, the statutes give localities detailed instructions concerning the procedures to be employed in licensing firearms. *Matter of Chwick v Mulvey*, 81 A.D.3d at 163.

The enactment of the New York Secure Ammunition and Firearms Enforcement Act of 2013 (the "SAFE Act") was borne out of, *inter alia*, a desire to "ensure that legal gun owners obtain their licenses expeditiously while those prohibited are denied that privilege...[and] require

16

safe storage of guns for gun owners who live  with someone who has been convicted of certain crimes, is under an order of protection, or who has been involuntarily committed as a result of a mental  illness." (See attached hereto, New York State Senate Introducer's Memorandum in Support of Bill Number S2230 at p. 42 of 49, ¶ "Purpose"; p. 44 of 49, ¶ "Safe Storage".).

Penal Law § 265.45, created by the SAFE Act, requires "a gun owner who lives with someone who the owner has reason to know is prohibited from possessing a gun because the prohibited person has been convicted of a crime punishable by a term of imprisonment exceeding one year, has been adjudicated mentally defective or committed to a mental institution, is subject to a court order of protection or has been convicted of a misdemeanor crime of domestic violence whose sentence has been completed in the last five years must, when the gun is out of the owner's immediate control, keep the gun secured in a safe storage depository (for example, a safe or similar secure container with a lock that can be opened only with a key or combination, or other locking mechanism) or render it incapable of being fired by putting a safety lock on the gun." See, page 44 of 49, ¶ "Safe Storage"; page E109; Penal Law § 265.45.

The statute as enacted also contains the following language: "Nothing in this section shall be deemed to affect, impair or supersede any special or local act relating to the safe storage of rifles, shotguns or firearms which impose additional requirements on the owner or custodian of such weapons." P.L. § 265.45.

Anticipating that Suffolk County may rely on this language to defend its policy, the Court is respectfully advised that this language only appears in § 265.45 – a single statute limited to the issue of "storage" of handguns, rifles, and shotguns. No similar language exists in the handgun licensing and/or eligibility provisions of § 400.00, *et seq.* nor is there a statute criminalizing, prohibiting, or in any other way affecting the possession of handguns [or the issuance of a

17

handgun permit] to individuals based on cohabitation with a prohibited person. Suffolk County's policy conflicts with the Legislative intent of the SAFE Act, § 265.45, § 400.00 *et seq.*, and exceeds the limited scope of authority granted to licensing officers and local municipalities.

The language enacted by the SAFE Act is comprehensive and detailed. Had the Legislature intended to ban the possession of handguns by individuals who reside with prohibited persons or to render them "ineligible" under § 400.00 (1) for the issuance of a pistol license, the Legislature would have incorporated such language. It did not.

No incorporation of the SAFE Act - Penal Law, the Family Court Act, Criminal Procedure Law and/or Mental Hygiene Law – bans – or even suggests banning - handguns from home in which a prohibited person resides.

Moreover, while a violation of state law may not *automatically* give rise to a violation of federal constitutional rights [see, Zahra v Town of Southold, 48 F.3d 674, 682 (2d Cir. 1995)], it does not follow that a violation of a statute cannot *also* constitute a violation of federally protected civil rights, as it the case here.

Accordingly, Suffolk County's blanket policy conflicts with, and is not an enforcement of, New York State statutes.

## IV. SUFFOLK COUNTY'S POLICY VIOLATES THE FOURTH AMENDMENT AS APPLIED TO PLAINTIFF

The Fourth Amendment is implicated where there "is some meaningful interference with an individual's possessory interests in that property." See, e.g., *United States v Jacobsen*, 466 U.S. 109, 113 (1984).

Plaintiff has a protected property interest in his handguns. While a handgun cannot be possessed without the issuance of a handgun permit, which Plaintiff had when he purchased them, the subsequent revocation of his permit did not extinguish Plaintiff's property rights.

18

Plaintiff committed no act that forfeited his ownership or property interest in his handguns. Indeed, even where the seizure of an individual's firearms is required under one of the three (3) limited events listed in § 400.00 (11), none of which exist here, one's possessory interest may be affected, but their property interest may not be automatically terminated.

As discussed in Point II above, the right to possess a handgun in one's home for self-protection is a core, fundamental right protected within the scope of the Second Amendment. See, *Heller*. Suffolk County policy bars Plaintiff from possessing his property, in violation of the Fourth Amendment.  (Ex. 1 at 45, 49, 65-70; Ex. 6 at 33-34; 30-39; Ex. 8).

Suffolk County denied Plaintiff's 2017 application for a handgun permit based solely on his cohabitation with a prohibited person. This fact is uncontested.

It is disingenuous for Suffolk County to claim that state law, and not SCPD policy, is to blame because Plaintiff cannot legally possess a handgun without a permit. Section 400.00 is a **"shall issue"** statute. "A license for a pistol or revolver, other than an assault weapon or a disguised gun, shall be issued to (a) have and possess in his dwelling by a householder…" § 400.00 (2).

Suffolk County's denial of Plaintiff's 2017 application for a handgun permit gives rise to a Fourth Amendment violation because Suffolk County's policy, not state law, is the obstacle preventing Plaintiff from regaining possession of his handguns.

## V. SUFFOLK COUNTY IS LIABLE FOR VIOLATING PLAINTIFF'S CONSTITUTIONAL RIGHTS UNDER *MONELL*

As discussed above, Suffolk County was enforcing its own policy, not Penal Law § 400.00, which continues to violate Plaintiff's rights as protected by the Second Amendment and Fourth Amendment to the Constitution. Accordingly, Suffolk County is liable to Plaintiff

19

consistent with *Monell v Dep't of Social Servs. of the City of NY*, 436 U.S. 658, 98 S. Ct. 2018 (1978).

## VI.  ARTICLE 78 PROCEEDINGS IN STATE COURT ARE LIMITED IN SCOPE AND INADEQUATE TO ADJUDICATE FEDERAL CONSTITUTIONAL MATTERS

Proceedings brought in state court under CPLR Article 78 employ a "very limited standard which governs judicial review of administrative determinations [to wit,] whether the determination was arbitrary and capricious. A reviewing court is therefore restricted to an assessment of whether the action in question was taken without sound basis in reason and without regard to the facts." *Matter of W. Sullivan O.R.E. LLC v Town of Thompson Planning Bd.*, 53 Misc 3d 1202[A], 2016 NY Slip Op 51329[U], *1 (Sup Ct, Sullivan County 2016); CPLR Article 78.

An Article 78 proceeding is an ineffective and incompetent manner of addressing claims that require the interpretation of the United States Constitution. Certain pistol license-related decisions are appropriately pursued in state court through an Article 78 proceeding. This is not such a case.

The scope of an Article 78 proceeding, limited to the "arbitrary and capricious standard" is not broad enough, and cannot consider, constitutional questions - particularly those involving a core, fundamental rights subject to heightened scrutiny. To hold otherwise would subject rights protected by the federal constitution to the same standards of judicial review as social 'privileges' to which the courts are constrained to apply a standard akin to, or lower than, a 'rational basis' test.

Matters of constitutional interpretation belong in the federal courts, where judicial experience and jurisprudence in such matters is at the ready.

**VII. PLAINTIFF'S REMAINING CAUSES OF ACTION**

The causes of action alleged under the First and Fourteenth Amendments are hereby withdrawn. Likewise, the claims against the individually named defendants are withdrawn.

WHEREFORE, it is respectfully requested that Suffolk County's motion for summary judgment be denied as to Plaintiff's Second Amendment, Fourth Amendment and *Monell* claims; that summary judgment in favor of the nonmoving Plaintiff be entered against Suffolk County for violating Plaintiff's Second Amendment and Fourth Amendment rights; and that the matter be scheduled for a hearing on the issue of damages.

Dated: June 12, 2020
      Scarsdale, New York

                                          THE BELLANTONI LAW FIRM, PLLC
                                          *Attorneys for Plaintiff*

By:             /s_____
                            Amy L. Bellantoni (AB3061)
                            2 Overhill Road, Suite 400
                            Scarsdale, New York 10598
                            (914) 367-0090 (t)
                            (888) 763-9761 (f)
                            abell@bellantoni-law.com