UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
BRETT MILAU,

                     Plaintiff,                    17 Civ. 6061 (JS)(SIL)

        -against-

SUFFOLK COUNTY, New York,
Commissioner TIMOTHY SINI, Individually,
Sgt. WILLIAM WALSH, Individually, Officer
LOUIS MOLINARI, Individually, Captain
WILLIAM SCRIMA, Individually, and "JOHN
DOE", Commanding Officer of the Suffolk
County Property Section, Individually,

                     Defendants.
-------------------------------------------------------x

---

# PLAINTIFF'S MEMORANDUM OF LAW
# IN SUPPORT OF CROSS-MOTION AND IN
# OPPOSITION TO  DEFENDANTS' MOTION
# FOR SUMMARY JUDGMENT

---

**THE BELLANTONI LAW FIRM, PLLC**
*Attorneys for Plaintiff*
**2 Overhill Road, Suite 400**
**Scarsdale, New York 10583**
**(914) 367-0090 (t)**
**(888) 763-9761 (f)**

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES .................................................................................................. i

PRELIMINARY STATEMENT ........................................................................................... 1

UNDISPUTED MATERIAL FACTS ................................................................................... 2

Suffolk County Policy Banning Handgun Possession ...................................................... 6

LEGAL ARGUMENT ......................................................................................................... 7

Summary Judgment Standard ............................................................................................. 7

The *Bruen* Standard For Second Amendment Challenges .............................................. 8

I. PLAINTIFF'S CONDUCT IS "PRESUMPTIVELY PROTECTED" ........................... 9

II. THE BURDEN SHIFTS TO SUFFOLK COUNTY TO JUSTIFY ITS REGULATIONS ....... 9

III. DEFENDANTS' MOTION FAILS AS A MATTER OF LAW ............................................. 10

     A.  Possessing Handguns Is A Guaranteed Right ...................................................... 12

     B.  The Policy Has Nothing to Do With the CCIA's "Cohabitant Requirement" ......... 12

     C.  Plaintiff's Inability to Possess Handguns Is A Constitutional Violation ................ 13

     D.  The 2015 Cancellation of Plaintiff's License Was Not Voluntary .......................... 14

     E.  Under *Bruen*, Defendants' Motion for Summary Judgment Must Be Denied ......... 14

IV. QUALIFIED IMMUNITY IS UNAVAILABLE TO THE INDIVIDUAL DEFENDANTS ............................................................................................... 14

     A.  The Right Was Clearly Established ...................................................................... 15

     B.  No Objectively  Reasonable  Person Would Believe They Were Not Violating Plaintiff's Second Amendment Rights .................................................... 16

     C.  The Policy Is Not Discretionary .......................................................................... 17

V. A § 1983 PLAINTIFF HAS NO OBLIGATION TO PURSUE STATE REMEDIES .......... 18

VI.  SUFFOLK COUNTY IS LIABLE UNDER *MONELL* ......................................................... 19

CONCLUSION ......................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adickes v S.H. Kress & Co.*,
　398 U.S. 144, 90 S.Ct. 1598 (1970) ........................................................................ 8

*Antonyuk v. Chiumento*,
　89 F.4th 271 (2d Cir. 2023) ................................................................................... 12

*Ashcroft v. al-Kidd*,
　—— U.S. ——, 131 S.Ct. 2074 (2011) ................................................................... 16

*Bodenmiller v. Cnty. Of Suffolk*,
　2023 WL 2214037 (E.D.N.Y. Feb. 15, 2023) ....................................................... 12

*Boss v. Kelly*,
　306 F. App'x 649 (2d Cir. 2009) ........................................................................... 11

*Brounstein v. United States*,
　979 F.2d 952 (3d Cir. 1992) .................................................................................. 18

*Butz v. Economou*,
　438 U.S. 478 (1978) ............................................................................................... 17

*Caetano v. Massachusetts*,
　577 U.S. 411 (2016) .................................................................................. 2, 9, 13, 16

*Chwick v. Mulvey*,
　81 A.D.3d 161 (2d Dept. 2010) ............................................................................. 17

*Crawford v. Washington*,
　541 U.S. 36 (2004) ................................................................................................... 9

*Damico v. California*,
　389 U.S. 416 (1967) ............................................................................................... 18

*District of Columbia v. Heller*,
　554 U.S. 570 (2008) .........................................................................................Passim

*Gamble v. United States*,
　587 U.S. ——, 139 S.Ct. 1960 (2019) ..................................................................... 9

*Goldstein v. Schwartz*,
　185 A.D.3d 929 (2d Dept. 2020) ........................................................................... 17

i

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) ................................................................................. 17

*Harper v. Neary,*
    2024 WL 950149 (N.Y. App. Div. Mar. 6, 2024) ............................... 11, 19

*Husejnovic v. DeProspo,*
    2024 WL 950125 (N.Y. App. Div. Mar. 6, 2024) ..................................... 19

*In re State Police Litig.,*
    88 F.3d 111 (2d Cir.1996) ....................................................................... 16

*Jackson v. Anderson,*
    149 A.D.3d 933 (2d Dept. 2017) ............................................................. 19

*Leon v Murphy,*
    988 F.2d 303 (2d Cir.1993) ........................................................................ 8

*Malley v. Briggs,*
    475 U.S. 335 (1986) ................................................................................. 16

*McDonald v City of Chicago, Ill.,*
    561 U.S.742 (2010) ............................................................................ 15, 16

*Monell v Dep't of Social Servs. of the City of NY,*
    436 U.S. 658, 98 S. Ct. 2018 (1978) ....................................................... 19

*Mustafa v. Pelletier,*
    2023 WL 7537625 (2d Cir. Nov. 14, 2023) ............................................. 15

*Nevada Comm'n on Ethics v. Carrigan,*
    564 U.S. 117 (2011) ................................................................................... 9

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
    597 U.S. 1 (2022) ...............................................................................Passim

*Papaioannou v. Kelly,*
    14 A.D.3d 459, 788 N.Y.S.2d 378 (2005)............................................... 11

*Patsy v. Bd. of Regents of State of Fla.,*
    457 U.S. 496 (1982) ................................................................................. 18

*Robbins v. Warhit,*
    198 A.D.3d 790 (2d Dept. 2021) ............................................................. 19

*Salahuddin v. Goord,*
    467 F.3d 263 (2d Cir.2006) ................................................................................ 16

*Shuttlesworth v. City of Birmingham, Ala.,*
    394 U.S. 147 (1969) ........................................................................................ 12

*Steffel v. Thompson,*
    415 U.S. 452 (1974) ........................................................................................ 18

*Thosteson v. United States,*
    331 F.3d 1294 (11th Cir. 2003) ...................................................................... 18

*Town of Castle Rock v. Gonzales,*
    545 U.S. 748 (2005) ........................................................................................ 12

*Virginia v. Moore,*
    553 U.S. 164 (2008) .......................................................................................... 9

*Waltier v. N.Y. Police Dep't,*
    856 F. Supp. 196 (S.D.N.Y. 1994) ................................................................ 18

*Walz v. Town of Smithtown,*
    46 F.3d 162 (2d Cir. 1995) ............................................................................. 17

*Weinstein v Ryder,*
    2021 US Dist. LEXIS 55410, at *8 ................................................................ 18

**Statutes**

18 U.S.C. § 922(g) ................................................................................................ 1
42 U.S.C. § 1983 ................................................................................................ 18

**Rules**

Fed.R.Civ.P. 56(a) ............................................................................................... 7

## PRELIMINARY STATEMENT

Brett Milau ("Plaintiff") submits the within Memorandum of Law, Counterstatement of Material Facts pursuant to Local Rule 56.1, and the Declaration of Amy L. Bellantoni with annexed exhibits in opposition to Suffolk County's motion for summary judgment and in support of Plaintiff's Cross-Motion for Summary Judgment on his Second Amendment claims.

The Supreme Court declared in 2008 that the "right to possess and carry weapons in case of confrontation" was a "guarantee[d]..individual right." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

But Suffolk County Policy requires terminating the individual rights of one person based on the acts of *someone else*. It is the policy of the Suffolk County Police Department Licensing Bureau ("SCPD") to preclude an individual's right to possess handguns for self-defense if that individual resides with an individual who is statutorily disqualified from possessing firearms[1] (a "prohibited person") (the "Policy").

As a result of the Policy, Plaintiff can no longer possess handguns for self-defense because his adult son, who resides with Plaintiff and his wife, is a prohibited person.[2] According to SCPD, the only circumstances under which Plaintiff will be 'allowed' to lawfully possess handguns for self-defense is for his son to move out of Plaintiff's home.

Plaintiff's undisputed safe storage of his handguns is irrelevant under the Policy: "if one person is in the household is ineligible, then the entire household is ineligible." [56.1 Statement at ¶¶94-95]. Notably, SCPD did not seize Plaintiff's collection of approximately 13 long guns. [56.1 Statement at ¶50].

---

[1] See, e.g., 18 U.S.C. § 922(g); Penal Law §§ 265.00(17), 265.01(4), 400.00(1)(c).
[2] In *LaMarco v. Suffolk County, et al.*, 21 Civ. 3716 (GRB), the plaintiffs' pistol licenses were suspended under the Policy because their adult son with whom they reside, is considered by SCPD to be 'prohibited' because he was transported to the hospital for a mental health evaluation [56.1 Statement at 85-95].

Plaintiff's conduct – the possession and carriage of weapons in common use - is "presumptively protected" by the plain text of the Second Amendment. *Heller*, 554 U.S. at 592 ; *Caetano v. Massachusetts*, 577 U.S. 411, 411 (2016) (per curium) (stun guns); *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022).

Under the test announced in *Bruen*, the burden lies with Suffolk County to demonstrate that the Policy is consistent with the plain text of the Second Amendment, and this Nation's history and tradition of firearm regulation. *Id.* "Only then" can the continued enforcement of the Policy be justified. *Id.*

Because the Policy is inconsistent with the plain text of the Second Amendment and lacks any historical analogue, summary judgment in favor of Plaintiff must be granted, the Policy permanently enjoined, and the defendants' motion for summary judgment denied in its entirety.

## UNDISPUTED MATERIAL FACTS

Plaintiff resides in Ronkonkoma, New York. [56.1 Statement at ¶ 1]. Plaintiff has never been arrested and has no criminal convictions. [Plaintiff's Statement of Undisputed Material Facts ("56.1 Statement") at ¶ 64].

Plaintiff has been gainfully employed as a Senior Staff Engineer for over 40 years [56.1 Statement at ¶ 2]. Before moving to Suffolk County from Queens over 30 years ago, Plaintiff possessed a New York City handgun permit [56.1 Statement at ¶¶ 3-4]. Suffolk County issued a New York State pistol license to Plaintiff in 1986 [56.1 Statement at ¶ 5]. Plaintiff has enjoyed target shooting and hunting for over 30 years [56.1 Statement at ¶ 6].

Plaintiff's handguns and long guns were always stored in a locked gun safe that is over five (5) feet tall, three (3) feet deep, and weighs 300 pounds empty [56.1 Statement at ¶ 7].

Plaintiff resides with his wife and adult son, Gregory [56.1 Statement at ¶ 9]. Gregory is disqualified from firearms possession under state and federal law [56.1 Statement at ¶ 62]. Plaintiff has called SCPD several times because of Gregory's verbal and physical aggression toward him and his wife [56.1 Statement at ¶ 12]. Seeking only to document Gregory's behavior, Plaintiff has not filed charges against his son [56.1 Statement at ¶ 14]. On two (2) separate occasions, Plaintiff obtained temporary orders of protection ("TOP") against Gregory in Family Court [56.1 Statement at ¶ 16]. The first TOP was a "stay away" order; Plaintiff requested it be vacated when Gregory entered a drug rehabilitation program 2 months later [56.1 Statement at ¶¶ 17-18]. The second TOP was a "refrain from" order sought because of Gregory's "abusive" and "aggressive nature" due to substance abuse [56.1 Statement at ¶ 19]. Gregory is "extremely demanding and aggressive" [56.1 Statement at ¶ 20].  The second TOP was vacated four (4) months later because Gregory was struck (as a pedestrian) by a drunk driver and sustained "life threatening injuries" [56.1 Statement at ¶ 21]. After Gregory's release from the hospital, Plaintiff again contacted the police because Gregory intentionally damaged the sheetrock of the house [56.1 Statement at ¶ 22].

In January 2013, the police responded to Plaintiff's home as a result of Gregory's phone call complaining that his father pushed him [56.1 Statement at ¶ 24]. Gregory became "increasingly violent and out of control and threatening", "nose-to-nose" with Plaintiff, screaming and yelling in Plaintiff's face, demanding money [56.1 Statement at ¶ 25]. Gregory's conduct forced Plaintiff to shove Gregory away from himself because he felt threatened for his safety [56.1 Statement at ¶ 25].

SCPD policy requires that officers responding to a domestic incident complaint seize the firearms of a pistol licensee if the officers feel there is a potential danger within the household [56.1 Statement at ¶¶ 28, 34; Ex. 2]. Plaintiff told the officers that he had weapons in the house

3

and showed them his handgun permit [56.1 Statement at ¶¶ 27-28; Ex. 2]. However, the officers did not arrest Plaintiff or charge him with any offense, nor did they take Plaintiff's handguns, long guns, or his handgun license [56.1 Statement at ¶¶ 30, 35-36; Ex. 2; Ex. 6 at 66-69]. Gregory was not in fear of Plaintiff  [56.1 Statement at ¶ 31].

On January 24, 2013, the SCPD License Bureau suspended Plaintiff's handgun permit and required Plaintiff to surrender his five (5) handguns to SCPD, which he did [56.1 Statement at ¶¶ 37-42; Notice of Suspension at Ex. 3; Property Voucher at Ex. 4].

SCPD required Plaintiff to provide a written statement about the incident, to which he provided the following:

"MY SON GREGORY IS A DRUG ADDICT. I THINK HE USES HEROIN. MY WIFE THINKS HE'S ON CRACK COCAINE. HIS PROBLEMS STARTED WITH A TRAUMATIC BRAIN INJURY WHEN HE WAS 15. HIS DRUG ADDICTION HAS BEEN GOING ON FOR SO LONG, I CAN'T REMEMBER WHEN OR HOW IT ALL STARTED. MY SON IS ON PROBATION FOR THREE YEARS FOR BREAKING INTO MY NEIGHBORS HOUSE. GREG STARTED TO SHOW BEHAVIORAL CHANGES. HE STARTED NOT GOING TO SCHOOL. HE STARTED STEALING FROM US. HE STOLE TWO WEDDING BANDS FROM ME, A CAN OF SILVER COINS. I'VE GOT DEAD BOLTS ON MY BEDROOM. WE KEEP ALL OUR VALUABLE STUFF IN A SAFE. OUR OTHER SON STEVEN IS ADDICTED TO OXYCONTIN. IM PRETTY SURE HE SAID WAS OXYCONTIN MY WIFE SAID HE SAID HES ADDICTED TO OXYCONTIN. STEVEN LIVES WITH HIS GIRLFRIEND CRYSTAL NORMAN IN MEDFORD. GREGORY TAKES CABS HOME AND YELLS AT US TO PAY THE CAB FARE. THE OTHER NIGHT I THINK IT WAS WEDNESDAY, 1/23/13, GREGORY STARTED IN SAYING HE NEEDED $80 FOR COMMUNITY SERVICE. THIS IS AFTER $100 FOR A $50 FOR THAT. I WAS LIKE NO MORE. HE WAS HITTING THINGS, POUNDING THINGS. HE'S VERBALLY ABUSIVE EVERY DAY. HE PLAYS MY WIFE AND I AGAINST EACH OTHER I HAD ENOUGH. IT WAS GOING ON FOR SO LONG, I SAID NO AGAIN AND GAVE HIM A PUSH BECAUSE I WAS ANGRY AND I WANTED HIM TO LEAVE ME ALONE."

[56.1 Statement at ¶¶ 43-44; Ex. 5].

Plaintiff learned during discovery in this matter that it is SCPD policy to retain the handguns and pistol license of a licensee until after the expiration of the statute of limitations for prosecuting the underlying offense leading to the handgun license suspension and seizure of

handguns [56.1 Statement at ¶¶ 51-57]. "[A]s long as the violation or crime can be pursued by the complainant the [pistol] license remains in a state of suspension" [56.1 Statement at ¶ 52]. Gregory had told SCPD that he did not want to pursue charges against Plaintiff [56.1 Statement at ¶ 54].

The statute of limitations for Harassment in the Second Degree is one (1) year, however, SCPD retained Plaintiff's handguns for over two (2) years without any determination, reinstatement of his pistol license, or release of his property [56.1 Statement at ¶¶ 53-57; Notice of Cancellation as Ex. 8]. To date, Plaintiff has not regained possession of his handguns from SCPD [56.1 Statement at ¶ 57].

In January 2015, Investigator Nicholas LoRusso contacted Plaintiff by phone to investigate the suspension of his handgun permit [56.1 Statement at ¶¶ 58-59; Ex. 7]. Plaintiff told LoRusso that he and his wife live in fear of Gregory and sleep with a dead bolt on their bedroom door because Gregory threatened to harm them in their sleep; Gregory constantly steals money and items from them and sells them to support his drug habit; and everything in Plaintiff's home is under lock and key [56.1 Statement at ¶¶ 63, 69; Ex. 7; Def. Revised 56.1 Counterstatement at ¶ 69]. Plaintiff and his wife are reluctant to make Gregory live elsewhere, fearing that he will end up dead on the street [56.1 Statement at ¶ 69; Ex. 7]. Plaintiff's oldest son, Steven, passed away in September 2014 [Ex. 1 at 13].

Gregory has a prior conviction for Criminal Possession of a Controlled Substance in the Seventh Degree ("CPCS-7"), a misdemeanor, in violation of Penal Law § 220.03 [56.1 Statement at ¶ 62]. A conviction of CPCS-7 is listed as a "serious offense" under Penal Law § 265.00 (17), which renders Gregory legally prohibited from possessing any class of firearm – handguns, rifles, and/or shotguns [56.1 Statement at ¶ 62; § 265.01; § 400.00(1)(c)].

5

***Suffolk County Policy Banning Handgun Possession***

Suffolk County policy bans the possession of handguns by anyone who resides with a "prohibited person", to wit, an individual who has one or more legal prohibitors to gun possession [56.1 Statement at ¶¶ 65-66, 90-92, 95; Def. Revised 56.1 Counterstatement at ¶¶ 73, 75; Ex. 9 at 17].

Suffolk County will not issue Plaintiff a new pistol license because Gregory is a person legally prohibited from possessing any class of firearm [56.1 Statement at ¶¶ 75-77, 80-84]. Plaintiff cannot possess handguns for self-defense – or regain possession of the handguns confiscated by SCPD - because of Suffolk County's policy [56.1 Statement at ¶¶ 75-77, 80-84]. For as long as Gregory resides in Plaintiff's home, Plaintiff will not be issued a pistol license [56.1 Statement at ¶¶ 75-77, 80-84].

Under Suffolk County policy, "[R]egardless of the mechanisms by which an individual safeguards their firearms [under § 265.45], if they reside with a prohibited person or if the nature of the domestic situation is such that it's – there is a concern for either public safety or household safety, firearms and the license come out of the house" [56.1 Statement at ¶ 66].

Plaintiff's firearms were always stored in compliance with Penal Law § 265.45's safe storage requirements [56.1 Statement at ¶ 7]. Notwithstanding Penal Law § 265.45, SCPD policy requires the seizure of firearms whenever an individual resides with a prohibited person [56.1 Statement at ¶ 66]. The Policy was created and is enforced because of the "likelihood or potentiality for a firearm to be stolen and either used in the commission of a crime or sold illegally on the street…by the prohibited person" [56.1 Statement at ¶ 66].

SCPD revoked Plaintiff's handgun license in January 2015 because, under SCPD policy, Plaintiff was banned from possessing a handgun as long as he cohabitated with a prohibited person [56.1 Statement at ¶¶ 65-66, 71, 73; Ex. 8].

In 2017, Plaintiff reapplied for a pistol license; his application was assigned to Officer Louis Molinari [56.1 Statement at ¶ 79]. Officer Molinari contacted Plaintiff to ask whether Gregory still lived with Plaintiff because Gregory's conviction of a serious offense was "an automatic bar to having a pistol license" -- Officer Molinari would not be able to approve Plaintiff's application if Gregory still lived in the house "based on the policy of the police department" [56.1 Statement at ¶¶ 74-76; 80-84; Def. Revised 56.1 Counterstatement at ¶ 82; Def. Ex. L].

Plaintiff's handgun permit will never be reinstated by SCPD and his handguns will never be returned to him, so long as Gregory resides in Plaintiff's home [56.1 Statement at ¶¶ 51-57; 63-84; Ex. 8]. Suffolk County policy has terminated Plaintiff's right to possess handguns in his home for self-protection based solely on his cohabitation with a prohibited person [56.1 Statement at ¶¶ 65-66, 68-73-84].

The Policy continues to be enforced [56.1 Statement at ¶¶85-97].

## LEGAL ARGUMENT

### Summary Judgment Standard

Summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. See, *Adickes v S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970). Summary judgment is appropriate only where, after drawing all reasonable

inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party. *Leon v Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

There are no material issues of fact to be determined by a jury. But contrary to the defendants' motion, Plaintiff is entitled to summary judgment on his Second Amendment claims.

### The *Bruen* Standard For Second Amendment Challenges

In keeping with *Heller*, the Supreme Court in *NYSRPA v. Bruen* held that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. "To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17.

Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." *Id.* (citation omitted).

Courts called upon to make such determinations are cautioned that "when it comes to interpreting the Constitution, not all history is created equal. Constitutional rights are enshrined with the scope they were understood to have *when the people adopted them*." *Bruen*, 597 U.S. at 34 (emphasis supplied) quoting *Heller*, 554 U.S. at 634–635.

The scope of the protection applicable to the Federal Government and states is "pegged to the public understanding of the right when the Bill of Rights was adopted in 1791." *Bruen*, 597 U.S. at 37.[3] And to the extent later history contradicts what the text says, the text controls; liquidating indeterminacies in written laws is far removed from expanding or altering them. *Bruen*,

---

[3] Citing *Crawford v. Washington*, 541 U.S. 36, 42–50 (2004) (Sixth Amendment); *Virginia v. Moore*, 553 U.S. 164, 168–169 (2008) (Fourth Amendment); *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 122–125 (2011) (First Amendment).

597 U.S. at 36-37 quoting *Gamble v. United States*, 587 U.S. ——, ——, 139 S.Ct. 1960, 1987, 204 L.Ed.2d 322 (2019) (THOMAS, J., concurring); see also Letter from J. Madison to N. Trist (Dec. 1831), in 9 Writings of James Madison 477 (G. Hunt ed. 1910).

The courts "must also guard against giving postenactment history more weight than it can rightly bear. *Bruen*, 597 U.S. at 35. Indeed, "post-ratification adoption or acceptance of laws that are inconsistent with the original meaning of the constitutional text *obviously cannot overcome or alter that text*." *Bruen*, 597 U.S. at 36 (citations omitted) (emphasis added).

## I. PLAINTIFF'S CONDUCT IS "PRESUMPTIVELY PROTECTED"

Conduct that falls within the plain text of the Second Amendment is presumptively protected by the Constitution. *Bruen*, 597 U.S. at 17.[4]

Plaintiff's conduct, possessing handguns for self-defense, is presumptively protected by the plain text of the Second Amendment. *Heller*, 554 U.S. at 592 (the plain text "guarantee[s] the individual right to possess and carry weapons in case of confrontation); *Bruen*, 597 U.S. at 33 ("The Second Amendment's plain text thus presumptively guarantees petitioners Koch and Nash a right to 'bear' arms in public for self-defense"); *Caetano v. Massachusetts*, 577 U.S. 411, 411 (2016) (per curiam) (stun guns) (the Second Amendment protects all weapons in common use).

Thus, the starting point for this Court's assessment of Suffolk County's justifications for its policy is the *presumption* that Plaintiff enjoys a pre-existing and guaranteed individual right to possess handguns for self-defense.

## II. THE BURDEN SHIFTS TO SUFFOLK COUNTY TO JUSTIFY ITS REGULATIONS

Having proven that Plaintiff's conduct is protected by the plain text of the Second Amendment, the burden shifts to Suffolk County to justify its policy. *Bruen*, 597 U.S. at 17 (test reproduced above).

---

[4] "In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, at 2126.

To defeat Plaintiff's motion for summary judgment as to his Second Amendment claims, Suffolk County must prove that terminating the right to possess weapons in common use for self-defense based on the acts of a *third party* is consistent with the plain text and historical traditions in this Nation. Suffolk County cannot meet its burden.

First, Defendants cannot even come to terms with the fact that Plaintiff's conduct – possessing handguns for self-defense – is protected by the plain text of the Second Amendment [County Br. at 12 n. 6 "Again, it is defendants' primary position that *Bruen* does not control this case"; and Br. at 9 "the Second Amendment affords no right to a pistol license in New York"]. Apparently, the County believes that New York's license requirement has extinguished the Rights codified in the Second Amendment.

Second, Defendants cannot identify an historical analogue for its policies, which are odious to the Second Amendment and *Heller*. *Heller*, 554 U.S. at 592 (the Second Amendment protects an *individual* right).

Because Plaintiff's conduct rests snugly inside of the Second Amendment's 'unqualified command,' summary judgment in favor of Plaintiff is required. *Bruen*, 597 U.S. at 17 (Only if the County's firearm regulation is "consistent with this Nation's historical tradition" may this court conclude that Plaintiff's conduct "falls outside the Second Amendment's "unqualified command").

## III. DEFENDANTS' MOTION FAILS AS A MATTER OF LAW

Defendants' motion for summary judgment must be summarily denied. To begin, the County's entire premise – that handgun possession is a privilege and not a Right – is a lesson in frivolity and belied by the Second Amendment and Supreme Court jurisprudence on the matter.

Defendants move on to ignore (then fail) the *Bruen* test, which is the standard to be applied in all Second Amendment challenges.[5] Lacking any viable legal defense, Suffolk County presses some specious arguments: a pistol license is not a guaranteed right, the inability to possess handguns is not a constitutional violation, that Plaintiff should have sought a state court remedy

---

[5] Defendants' motion for summary judgment contains no mention of the test to be applied in all Second Amendment challenges. Indeed, *Bruen* itself is mentioned only once in Defendants' Brief - when recounting the temporary stay of this action pending a decision by the Supreme Court [County Br. at 4].

under Article 78, and that state law is preventing Plaintiff's ability to possess handguns because without a license, no handgun can be lawfully possessed.

As set forth below, Defendants' arguments fail as a matter of law.

### A.  Possessing Handguns Is A Guaranteed Right

There appears to be a fatal disconnect between New York and Supreme Court precedent. Between the high bench and the ground floor, the message is lost, or more probably ignored. Requests to apply sound legal principles are met with half-truths and twisted logic.

New York's post-Sullivan Law mantra that a 'pistol license is not a right' was defeated by *Heller*, worn out by the time *McDonald* was decided, retired under *Caetano* and dead-on-arrival with *Bruen* – still New York refuses to comply.

How New York sees the Second Amendment[6]:

> Possession of handguns is a right. Possession of handguns cannot take place without a license.  Licenses are a privilege. Handgun possession is a privilege.

The Second Amendment reality:

> Possession of handguns is a guaranteed individual right. *Heller*, 554 U.S. at 592.

Licensing wraps up the Right in a fiction. Laying aside the fact that requiring a license itself violates the Second Amendment,[7] a handgun license cannot be considered a privilege because the only road to exercising the Right to possess handguns is through the license. So, if handguns and licensing are forced to be inextricably intertwined, then the license (like the handgun) is *de facto* a guaranteed Right.

---

[6] "Under New York law, it is well settled that the possession of a handgun license is a privilege, not a right, which is subject to the broad discretion of the New York City Police Commissioner." *Boss v. Kelly*, 306 F. App'x 649, 650 (2d Cir. 2009); *Papaioannou v. Kelly*, 14 A.D.3d 459, 460, 788 N.Y.S.2d 378, 378 (2005); *Harper v. Neary*, No. 2023-02620, 2024 WL 950149, at *2 (N.Y. App. Div. Mar. 6, 2024) ("Penal Law § 400.00 does not establish a clear legal right to a pistol license" but ignoring the plain text of the Second Amendment).

[7] "It is settled by a long line of recent decisions of this Court that an ordinance which, like this one, makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms." *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 151 (1969).

Defendants' claim that "the Second Amendment affords no right to a pistol license" is a farce. Defendants' view eviscerates the plain text of the Second Amendment, proving the point that licensing weapons reduces the Right to a mere privilege.[8] *Shuttlesworth,* 394 U.S. at 151; *c.f., Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (A benefit is not a protected entitlement if government officials may grant or deny it in their discretion) (citation omitted).

**B. The Policy Has Nothing to Do With the CCIA's "Cohabitant Requirement"**

Defendants mention, without more, the CCIA's "cohabitant requirement," enacted in September 2022 [County Br. at 12]. But neither the "cohabitant requirement" nor the CCIA generally, have anything to do with Suffolk County's Policy.

The cohabitant requirement of the CCIA requires an individual applying for a concealed carry license to identify everyone with whom they reside. The Second Circuit has interpreted this provision to be in furtherance of determining the 'good moral character' of the *applicant* – having nothing to do with the eligibility of the cohabitants.

In *Antonyuk v. Chiumento*, the Second Circuit found that the requirement that an applicant disclose their cohabitants "is tantamount to the character-reference provision upheld by the district court." *Antonyuk*, 89 F.4th 271, 329 (2d Cir. 2023) ("An assessment of an applicant's "good moral character" requires an evaluation of the whole individual. The identity and characteristics of an applicant's cohabitants are obviously relevant to the dangerousness of the applicant in situ.").

Unlike the County's Policy, the State cohabitant requirement focuses on the moral character assessment of the *applicant* – it has nothing to do with the cohabitants or their eligibility to possess firearms. The "circumstances of the applicant's cohabitants" [County Br. at 12] is not at issue under the CCIA. No part of the CCIA prejudices an applicant based on the disqualification

---

[8] Defendants' reference to *Bodenmiller v. Cnty. Of Suffolk*, 2023 WL 2214037 (E.D.N.Y. Feb. 15, 2023) [County Br. at 9] is misleading. *Bodenmiller* held that, "In the context of carrying a firearm in connection with one's police duties, the possession of a handgun license is a privilege, not a right." (internal quotation marks and citation omitted). The case had nothing to do with the *individual* rights guaranteed by the Second Amendment. The other pre-*Bruen* cases cited for the same premise are constitutionally infirm and patently incorrect [County Br. at 10-12].

of a third person – cohabitant or otherwise. [9]

### C. Plaintiff's Inability to Possess Handguns *Is* A Constitutional Violation

The Policy constitutes an absolute ban of conduct that is presumptively protected by the Second Amendment.

The Second Amendment protects the possession and carriage of all weapons in common use for self-defense. *Caetano*, 577 U.S. at 411 ("the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding") quoting *Heller*, 554 U.S. at 582. And handguns are in 'common use.' *Bruen*, 597 U.S. at 32 citing *Heller*, 554 U.S. at 627.

Defendants play too-cute-by-half with the statement that Plaintiff's "inability to possess handguns is due not to defendants, but to New York State's prohibition against unlicensed possession of handguns…" [County Br. at 13] because the only barrier to Plaintiff's possession of handguns is the Policy. But for the policy, Plaintiff's license would not have been revoked and his reapplication for a pistol license in 2017 would have been approved.

The Policy caused Plaintiff's inability to possess handguns. No pistol license will be issued if an applicant resides with a prohibited person. [Ex. 10 at 24-25 ("Again, as the common practice in my office, that if one person is in the household is ineligible, then the entire household is ineligible"); Ex. 10 at 21-23; Ex 11 at 32-33 (Under Suffolk County policy, if anyone in the household is firearms disqualified, no one in the household will be issued a pistol license, and all existing licensees residing in the same house be suspended and their handguns confiscated); Ex. 9 at 17 (Officer Molinari "would not be able to approve a license for [Plaintiff]" "while his son was in the house" "based on the policy of the police department"); Ex. 6 at 30-35; Ex. 1 at 45, 49, 70].

Plaintiff has no disqualifiers to firearm possession – he lawfully owns long guns[10] – and he would hold a valid pistol license but for the Policy.

---

[9] In reality, whether a cohabitant is 'prohibited' or not is immaterial; New York State requires every handgun to be registered to a *particular* licensee. No one but the licensee may lawfully possess a particular handgun – including other licensed individuals.
[10] Ex. 1 at 58, 103-104; Ex. 2.

### D.  The 2015 Cancellation of Plaintiff's License Was Not Voluntary

Plaintiff was required to cancel his pistol license in 2015, in lieu of being 'revoked,' as a revocation would have additional negative consequences. Rather than having to answer 'yes' to future questions about prior handgun license revocations[11], [12] Because the County Policy forecloses any possibility that Plaintiff's pistol license would be returned and/or would *not* be revoked, SCPD gave Plaintiff the Hobbesian choice of 'canceling' his license. Defendants' assertion that Plaintiff's cancellation was 'voluntary,' so no constitutional violation was committed by the County, is incorrect [County Br. at 16].

### E.  Under *Bruen,* Defendants' Motion for Summary Judgment Must Be Denied

Where a plaintiff's conduct is covered by the plain text (as Plaintiff's is here), no government can prevail in a Second Amendment challenge without proving that their regulations are consistent with the plain text, history, and tradition. *Bruen*, 597 U.S. at 17.

As discussed above, Plaintiff's conduct is presumptively protected by the plain text of the Second Amendment. Defendants failed to meet their burden of justifying the SCPD regulations, requiring denial of their motion for summary judgment on Plaintiff's Second Amendment claims.

## IV. QUALIFIED IMMUNITY IS UNAVAILABLE TO THE INDIVIDUAL DEFENDANTS

The individual defendants enforcing the Policy did more than unknowingly 'cross a constitutional line' [County Br. at 16]; they enforced a blanket policy that terminates an individual's  protected rights based on the acts of *someone else*. They are not entitled to qualified immunity.

To overcome a qualified immunity defense, a plaintiff must show (1) the violation of a constitutional right and (2) that the constitutional right was clearly established at the time of the alleged violation. *Mustafa v. Pelletier*, No. 22-2187, 2023 WL 7537625, at *2 (2d Cir. Nov. 14, 2023) (citation omitted). In determining whether qualified immunity exists, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity

---

[11] https://suffolkpd.org/Portals/18/scpd_pdfs/formsandreports/PDCS-4406n.pdf (SCPD license questionnaire)
[12] https://troopers.ny.gov/system/files/documents/2022/10/ppb-3-08-22.pdf (required New York State application)

analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* (citation omitted).

### A.  The Right Was Clearly Established

The Second Circuit does not require a case directly on point for a right to be clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Mustafa*, at *2 (citation omitted).

In that connection, Plaintiff is not required to identify a case that specifically holds that a policy banning the possession of handguns because they reside with a prohibited person violates the Second Amendment.

Existing precedent places the constitutional question "beyond debate." Plaintiff's constitutional right to possess handguns in his home for self-defense was "clearly established" well before the Policy was enforced against him in 2015. By that time, the Supreme Court had declared that the plain text of the Second Amendment "guarantee[s] the *individual* right to possess and carry weapons in case of confrontation." *Heller*, 554 U.S. at 592 (emphasis added). *McDonald* held that the Second Amendment applies in equal force to the federal government and the states. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010) (plurality opinion) (the Second Amendment is "fully applicable to the States").

By the time that Officer Molinari refused to process Plaintiff's 2017 application for a handgun license upon learning that his son still resided in the home, it was 'clearly established' that the right to possess handguns for self-defense was an 'individual right' 'guaranteed' by the plain text of the Second Amendment[13], that the Second Amendment was enforceable against the states through the Fourteenth Amendment[14], and that the Right extends to all weapons 'in common use.'[15]

---

[13] *Heller*, 554 U.S. at 592 (the plain text of the Second Amendment "guarantee[s] individual right to possess and carry weapons in case of confrontation").
[14] *McDonald*, supra.
[15] *Caetano*, 577 U.S. at 412.

Moreover, it should be made clear that the *Bruen* decision and the test announced therein was nothing "new." *Bruen* was a reiteration of the text, history and tradition principles set forth in *Heller* and generally observed in the Supreme Court's constitutional jurisprudence. Indeed, the description of the *Bruen* test begins with the phrase, "In keeping with *Heller*." *Bruen,* 597 U.S. at 17.

**B.  No Objectively Reasonable Person Would Believe They Were Not Violating Plaintiff's Second Amendment Rights**

No reasonable person in Defendants' position would believe that a blanket prohibition on an individual's constitutional right based on *another person's* conduct was constitutionally sound.

A defendant is not entitled to qualified immunity if, when the evidence is viewed in the light most favorable to Plaintiff and with all permissible inferences drawn in his favor, no rational jury could conclude that it was objectively reasonable for the defendants to believe that they were acting in a manner that did not violate a clearly established right. *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir.2006) (quoting *In re State Police Litig.*, 88 F.3d 111, 123 (2d Cir.1996)).

When making this determination, courts should be mindful that officials are not entitled to qualified immunity if they are "plainly incompetent" or "knowingly violate the law." *Ashcroft v. al-Kidd*, ––– U.S. ––––, 131 S.Ct. 2074, 2085 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The blanket prohibition of the right of a non-prohibited person to possess handguns in his home for self-defense – the exact issue presented in *Heller* - is glaringly unconstitutional. The Suffolk County Defendants were either "plainly incompetent" or "knowingly violated the law" by enforcing the Policy.

Penal Law § 400.00 does not have any provisions relating to the eligibility status of third parties residing with an applicant or a licensee. Defendants were  not 'enforcing state law' nor were they abiding by state law. Nothing in Penal Law 400.00 leads to the conclusion that an individual's eligibility under 400.00 is affected by the acts of a third person.

And by 2010, the Appellate Division, Second Department (which includes Suffolk County) had declared that Penal Law § 400.00 **preempts all local firearm regulations**. See, *Chwick v. Mulvey*, 81 A.D.3d 161, 171 (2d Dept. 2010) ("there is ample evidence to demonstrate that the Legislature intended Penal Law § 400.00 to preempt local laws with respect to firearm licensing").

Meaning that Defendants had no cognizable basis to believe that they could create or enforce any firearm regulations *at all*, including the Policy challenged herein.

Licensing officers are constrained by the language of the enabling statute, § 400.00. See, *Goldstein v. Schwartz*, 185 A.D.3d 929 (2d Dept. 2020). Nothing in the record gives rise to a finding that *Plaintiff* was 'ineligible' to be issued a pistol license under § 400.00. Rather, the sworn evidence conclusively establishes that the *only* basis for Plaintiff's inability to obtain a pistol license from SCPD[16] is the firearms disqualification of *someone else*.

The individual defendants' enforcement of the Policy was not objectively reasonable.

**C. The Policy Is Not Discretionary**

Qualified immunity exists to protect officials who are required to exercise their discretion and to encourage the vigorous exercise of official authority. *Walz v. Town of Smithtown*, 46 F.3d 162, 169 (2d Cir. 1995) (cleaned up) quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982) (quoting *Butz v. Economou*, 438 U.S. 478, 506 (1978).

A government official who exercises a ministerial duty is not entitled to qualified immunity. The Licensing Bureau does not exercise discretion when an applicant (or licensee) resides with a prohibited person. The denial (or suspension) is a matter of course.

Upon learning that Plaintiff's son was a prohibited person, Officer Molinari ceased processing Plaintiff's 2017 application for a handgun license. Under the Policy, the *son's* conviction for CPCS-7 was enough for Molinari to deny *Plaintiff's* application [Ex. 9 at 17, 22-23].

---

[16] SCPD "declined to issue him a license." [County Br. at 20].

17

Officer Molinari "would not be able to approve a license for [Plaintiff]" "while his son was in the house" "based on the policy of the police department" [Ex. 9 at 17]. The sole factor considered was Plaintiff's co-habitation with his son [Ex. 9 at 23].[17]

And it is no defense for Defendants to claim that they were simply following orders; each Defendant made "a voluntary, conscious and intentional decision" to enforce an unconstitutional Policy against Plaintiff. *Brounstein v. United States*, 979 F.2d 952, 956 (3d Cir. 1992) (rejecting the 'Nuremburg defense'); *Thosteson v. United States*, 331 F.3d 1294, 1300 (11th Cir. 2003) (same).

## V. A § 1983 PLAINTIFF HAS NO OBLIGATION TO PURSUE STATE REMEDIES

Plaintiff has no obligation to seek a state court remedy before pursuing claims for civil rights violations under 42 U.S.C. § 1983.

"When federal claims are premised on [§ 1983]—as they are here—we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 472–473 (1974); see also, *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 498 (1982) (cases cited); *Damico v. California*, 389 U.S. 416 (1967); *Waltier v. N.Y. Police Dep't*, 856 F. Supp. 196, 199 (S.D.N.Y. 1994), aff'd, 52 F.3d 311 (2d Cir. 1995); *Weinstein v Ryder*, 2021 US Dist. LEXIS 55410, at *8 [EDNY Mar. 23, 2021, No. 19-cv-6236 (SJF)(AKT)]).

Moreover, Article 78 does not provide redress for Second Amendment violations. *Matter of Harper v. Neary*, 2024 WL 950149, at *1 (2d Dept. 2024) (declaratory judgment is not properly before the court in Article 78 proceeding); *Robbins v. Warhit*, 198 A.D.3d 790, 791 (2d Dept. 2021) (constitutional challenge seeking declaratory relief is not properly before the court under Article 78) citing *Matter of Jackson v. Anderson*, 149 A.D.3d 933, 934 (2d Dept. 2017) (Second

---

[17] The culture persists to this day, as the Lt. and another officer testified within the past few months in *LaMarco v. Suffolk County* that, as a matter of course, no one can possess handguns if anyone in the house is a 'prohibited person' [Ex. 10 at 21; Ex. 11 at 46-48]. The safe storage of the handguns is irrelevant and does not alter the flat prohibition [Ex. 10 at 23-24; Ex. 11 at 42].

Amendment challenge not properly before the court in an original proceeding pursuant to CPLR article 78, as a declaratory judgment action is the proper vehicle for challenging the constitutionality of a statute); *Husejnovic v. DeProspo*, No. 2023-02771, 2024 WL 950125, at *1 (N.Y. App. Div. Mar. 6, 2024).

And the 'arbitrary and capricious' standard applied to an Article 78 review of a pistol licensing determination, which *de facto* implicates Second Amendment rights, is even lower than the intermediate scrutiny test flatly rejected in *Bruen*. *Bruen*, 597 U.S. at 17-24.

## VI.  SUFFOLK COUNTY IS LIABLE UNDER *MONELL*

Suffolk County is liable for Plaintiff's constitutional harms based on the established policy and practice that is being enforced against Plaintiff and other Suffolk County residents. See, *Monell v Dep't of Social Servs. of the City of NY*, 436 U.S. 658, 98 S. Ct. 2018 (1978).

The record conclusively establishes that Suffolk County enforces a policy wherein no handgun license will be issued to a person who resides with a person disqualified from possessing firearms [Plaintiff's Ex. 10 at 21-23; Ex 11 at 32-33].

It is "a common practice at the Pistol Licensing Bureau that the entire household is held to the same standard as the licensee, the same eligibility" [Ex. 10 at 21]. It is the Licensing Bureau's "common practice that everybody, if one person in the household is not eligible, the entire household is held to that" [Ex. 10 at 22].

This Suffolk County policy was testified to during the depositions of the defendants this case and as recently as January 2024 in a separate case challenging the same County policy. See, *LaMarco v. Suffolk County*, 21 Civ. 3716 (GRB).

Defendants' Exhibit A, the SCPD Pistol License Information Handbook, establishes under "Grounds for License Suspension and/or Revocation" that "(14) The  conviction  of  the  licensee

***or a household member*** for a felony or other serious offense, as defined in Section 265.00 Definitions, Sub. 17" constitutes grounds for a handgun license to be suspended or revoked (emphasis added).

## CONCLUSION

Plaintiff's Cross-Motion for Summary Judgment should be granted in its entirety, Suffolk County's motion should be denied, the challenged policy should be permanently enjoined, and a hearing is requested to be scheduled for a determination of Plaintiff's monetary damages.

Dated: March 26, 2024
      Scarsdale, New York

                           THE BELLANTONI LAW FIRM, PLLC
                           *Attorneys for Plaintiff*

By:    _____/s_____
            Amy L. Bellantoni (AB3061)
            2 Overhill Road, Suite 400
            Scarsdale, New York 10598
            abell@bellantoni-law.com

20