UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
BRETT MILAU,

                        Plaintiff,                    17 Civ. 6061 (ADS)(SIL)

    -against-

SUFFOLK COUNTY, New York,
Commissioner TIMOTHY SINI, Individually,
Sgt. WILLIAM WALSH, Individually, Officer
LOUIS MOLINARI, Individually, Captain
WILLIAM SCRIMA, Individually, and "JOHN
DOE", Commanding Officer of the Suffolk
County Property Section, Individually,

                        Defendants.
--------------------------------------------------------x

# REPLY MEMORANDUM OF LAW

# IN FURTHER SUPPORT OF

# PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

**THE BELLANTONI LAW FIRM, PLLC**
*Attorneys for Plaintiff*
**2 Overhill Road, Suite 400**
**Scarsdale, New York 10583**
**abell@bellantoni-law.com**

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ..................................................................................................... i

I. PLAINTIFF HAS ESTABLISHED *MONELL* LIABILITY FOR THE COUNTY ................... 1

    A.  Policy of Violating the Individual Right ....................................................................... 1

    B. The County's Representation that the Policy Has 'Changed' is Proven False by its Own Exhibit ............................................................................................................ 3

    C. The County Admits that Plaintiff Established a Policy, Then Misstates the Policy Being Challenged by Plaintiff ........................................................................... 4

II. THE POLICY FORECLOSES PLAINTIFF'S ABILITY TO HOLD A LICENSE (AND THEREFORE, TO POSSESS HANDGUNS) ............................................................................. 5

III. DEFENDANTS FAILED TO JUSTIFY THEIR FIREARMS REGULATIONS UNDER THE *BRUEN* TEST; PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ....................... 6

CONCLUSION ............................................................................................................................ 7

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amnesty Am. v. Town of W. Hartford*,
   361 F.3d 113 (2d Cir. 2004) .................................................................................................. 1

*Antonyuk v. Chiumento*,
   89 F.4th 271 (2d Cir. 2023) ................................................................................................... 6

*D.C. v. Heller*,
   554 U.S. 570 (2008) .............................................................................................................. 2

*Monell v. Dep't of Soc. Servs. of City of New York*,
   436 U.S. 658 (1978) .............................................................................................................. 1

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
   597 U.S. 1 (2022) .............................................................................................................. 2, 7

*Pembaur v. City of Cincinnati*,
   475 U.S. 469 (1986) .............................................................................................................. 1

**Statutes**

18 U.S.C. 922(g) ........................................................................................................................ 4, 5

## I. PLAINTIFF HAS ESTABLISHED *MONELL* LIABILITY FOR THE COUNTY

Under *Monell*, an employee's act of enforcing an unconstitutional municipal policy may be considered the act of the municipality itself. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004) citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80 (1986). Conversely, constitutional torts committed by city employees without official sanction or authority do not typically implicate the municipality in the deprivation of constitutional rights, and therefore the employer-employee relationship is insufficient to establish the necessary causation. *Id.*

Subsequent cases have considerably broadened the concept of official municipal action. In *Pembaur*, the Court recognized that "when a municipality decides to adopt a particular course of action, ... it surely represents an act of official government 'policy' as that term is commonly understood." *Amnesty*, 361 F.3d at 125 quoting *Pembaur*, 475 U.S. at 481. "It is not necessary, therefore, for plaintiffs to prove that a municipality has followed a particular course of action repeatedly in order to establish the existence of a municipal policy; rather, a single action taken by a municipality is sufficient to expose it to liability." *Ibid.*

### A. Policy of Violating the *Individual* Right

The County failed to overcome undisputed evidence that the License Division precludes individuals from possessing handguns where a household member is a 'prohibited person'[1] (or is perceived by the License Division to be a prohibited person).[2]

For at least a decade, Suffolk County has "repeatedly" "followed a particular course of action" sufficient to establish a policy under *Monell*. License Division officials unanimously

---

[1] A person prohibited by state and/or federal law from possessing, receiving, transferring, and purchasing firearms.
[2] According to the License Division, a mere *transport* of a family member to have a mental health *evaluation* – without more – constitutes a prohibitor for everyone in the household, including the licensee/applicant [Ex. 10 at p. 25 ].

confirmed that the County recognizes no *individual* right to possess handguns. It is immaterial that the licensee/applicant has no prohibitors to firearm possession because a household member's disqualification terminates conduct that is covered by the plain text of the Second Amendment and, therefore, "presumptively protected by the Constitution." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022) ("In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct").

Under this policy, the disqualification of Plaintiff's *son* prevents *Plaintiff* from obtaining a pistol license (and therefore prohibits his possession of handguns); in *Torcivia* (2014) it was the plaintiff's daughter, in *LaMarco* (2021) it is the plaintiffs' son.

Treating "everyone in the household the same" contradicts one of the central holdings in *Heller*: that the Second Amendment protects an *individual* right, not a collective right:

> **c. Meaning of the Operative Clause.** Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons in case of confrontation.
>
> This meaning is strongly confirmed by the historical background of the Second Amendment. We look to this because it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right. The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it "shall not be infringed."

*D.C. v. Heller*, 554 U.S. 570, 592 (2008) (emphasis supplied).

Plaintiff's 2017 reapplication for a pistol license was not even processed; because Plaintiff continues to reside with his son, a prohibited person, the County has placed a blanket prohibition on his right to possess handguns [SOF ¶ 81 (Officer Molinari did not even begin to investigate Plaintiff's application because Gregory's conviction for CPCS-7 was enough for him to make a phone call to Plaintiff), ¶82 (Molinari "would not be able to approve a license for [Plaintiff]"

2

"while his son was in the house" "based on the policy of the police department"), ¶83 (the only factor considered by Molinari was Plaintiff's co-habitation with his son Gregory), ¶ 84 (if Plaintiff's son moved out, SCPD policies and procedures would allow Plaintiff's pistol license application to be reevaluated).

Plaintiff is entitled to summary judgment because his Second Amendment rights cannot be terminated because *another person* forfeited theirs.

**B. The County's Representation that the Policy Has 'Changed' is Proven False by its Own Exhibit**

The County declares that the Policy has changed:

> "the evidence now presented by the County illustrates that Milau's claim that that the alleged policy continues lacks support. The present grounds for suspension and/or revocation of a pistol license are set forth in Section 5, Chapter 4 of the current Pistol Licensing Handbook (Exhibit Q, Defendants' Counterstatement to Plaintiff's March 26, 2024 Statement as to Alleged *Monell* Policy). Those grounds do not include the conviction of a member of the licensee's household member of a felony or other serious offense."

[County Reply/Opp at 3; Counterstatement [ECF No. 47-16] ¶ 97].

Exhibit Q actually provides:

> "14)   The conviction of the licensee or a household member for a felony or other serious offense, as defined in Section 265.00 Definitions, Sub. 17."

The County goes on to generally mention post-*Bruen* changes to the Handbook [County Opp/Reply at p. 8; see, Ex. R], but the Policy remains in effect: the Second Amendment rights of licensees and applicants are being foreclosed because of the disqualification of their household members.

Officer Plihcek was deposed post-*Bruen* [November 2023] when she testified that the "entire household is held to the same standard as the licensee, the same eligibility" which is "a

3

common practice at the Pistol Licensing Bureau" [Ex. 10 at 21]. Lt. Komorowski's January 2024 testimony demonstrates SCPD's continued enforcement of the Policy [Ex. 11 at p. 46, 48 [a licensee who is unable to produce a doctor's note indicating that a cohabitant with a mental health disqualifier was "fit" to reside in a home where firearms are possessed "will remain suspended…Could be [for] years" or "until the [cohabitant] moves out of the house"].

And Sgt. Walsh testified on November 16, 2023 (also post-*Bruen*) that suspended licensee Diane LaMarco[3] is unfit to possess handguns because her family member required a mental health assist." [Ex. 13 at 73].

### C. The County Admits that Plaintiff Established a Policy, Then Misstates the Policy Being Challenged by Plaintiff

The County concedes that Plaintiff's "Exhibit 10 and 11 to his Rule 56.1 Statement indicate…that the County does not permit a person to have a license if they reside with someone precluded from possessing weapons under federal law (¶ 90)" [County Opp/Reply at p. 8-9].

Among other evidence, Officer Plihcek and Lt. Komorowski [Exhibits 10, 11] establish demonstrate that the Policy is not limited to household members who are disqualified under *federal* law.[4] The Policy is triggered if *anyone in the household* is prohibited from possessing firearms. Period. "The entire household is held to the same standard as the licensee, the same eligibility" "it's a common practice at the Pistol Licensing Bureau" [Ex. 10 at 21].

---

[3] *LaMarco v. Suffolk County, et al.*, 21 Civ. 3716 (GRB), the plaintiffs' pistol licenses were suspended under the Policy because their adult son with whom they reside, is considered by SCPD to be 'prohibited' because he was transported to the hospital for a mental health evaluation [56.1 Statement at 85-95].

[4] Lt. Komorowski responded to an example of a type of objective prohibitor that would prevent a licensee and/or applicant from possessing handguns, i.e., a federal prohibitor under 18 U.S.C. 922(g) [Ex. 11 at 32-33], but neither Komorowski nor any other witness testified that the scope of the Policy was limited to household members with a federal prohibitor.

4

The County's attempt to confine the Policy to "merely" federal disqualifiers [this "is a different policy than the one Milau seeks to hold the County liable for"] [County Opp/Reply at p. 9] is unsupported by the record.

The Policy prohibits an individual from possessing handguns if a household member is statutorily disqualified from possessing firearms[5] [Plaintiff Br. at p. 1], which encompasses federal and state prohibitors, or is perceived by the Licensing Bureau as being disqualified. Here, the Policy was enforced against *Plaintiff* whose *son* is prohibited from possessing firearms due to a state prohibitor.

But whether the cohabitant's disqualifier arises under federal law or state law is immaterial to the County's overarching constitutional affront: barring an individual's right to possess handguns because *another person* is prohibited from possessing firearms.

## II. THE POLICY FORECLOSES PLAINTIFF'S ABILITY TO HOLD A LICENSE (AND THEREFORE, TO POSSESS HANDGUNS)

The Policy forecloses Defendant's argument that Plaintiff's actions caused the violation of his Second Amendment rights, as if Plaintiff's inaction could have led to a different result.

Defendants assert that Plaintiff acted 'voluntarily' when (i) canceling his license after SCPD suspended it, and (ii) withdrawing his subsequent reapplication for a pistol license,[6] ignoring the alternatives – a revocation in his file and a denial of his application – both of which will negatively affect future firearms applications in New York State and other jurisdictions.

---

[5] See, e.g., 18 U.S.C. § 922(g); Penal Law §§ 265.00(17), 265.01(4), 400.00(1)(c).
[6] County Reply and Opp at 1-2.

The Policy left Plaintiff with a Hobbesian choice, and neither path could change the ultimate result: in Suffolk County, no one can possess handguns if a household member is a prohibited person (or is perceived to be one by Licensing Bureau).[7]

### III. DEFENDANTS FAILED TO JUSTIFY THEIR FIREARMS REGULATIONS UNDER THE *BRUEN* TEST; PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT

Plaintiff established that his conduct – possessing handguns for self-defense - is presumptively protected by the Second Amendment.

The burden immediately shifted to the County to prove that the Policy was consistent with the text, history, and National traditions of firearm regulations.

Rather than adhere to the constitutional requirements set forth in *Bruen*, the County argued (unsuccessfully) that there is no Policy, that whatever policy exists it does not cover Plaintiff's conduct, that Plaintiff voluntarily gave up his Second Amendment rights, and that the CCIA amendment regarding cohabitants supports Defendants' conduct.

The County failed to identify any historical analogue for the Policy. Arrogantly, it cautioned this Court to "wisely refrain from reasoning that [Defendants'] acts were unconstitutional" because the *Antonyuk*[8] Court upheld the "cohabitant provision" of § 400.00(1)(o). [County Opp/Reply at p. 6].

Unfortunately for Defendants, the "cohabitant provision" cuts the County's argument off at the knees. The very purpose of the "cohabitant provision" is to require applicants to disclose the identity of their household members for the purpose of assessing the *applicant's character*. The County's Policy has nothing to do with the applicant/licensee – and focuses solely on the

---

[7] The fact that a suspended license is, nevertheless, an absolute bar to the possession of handguns for self-defense appears to be lost on the County [County Opp/Reply at p. 2 ("their licenses were only suspended")].
[8] *Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023).

disqualification of the *cohabitant*. Defendants were not enforcing state law[9] – they were enforcing a 'made up,' unconstitutional SCPD policy.

The County also fails to grasp the *Bruen* test [County Opp/Reply at p. 6 ("Absent authority indicating that the Second Amendment's "plain text" forbids the defendants' limited actions, the Court would wisely refrain from reasoning that their acts were unconstitutional")].

The plain text inquiry determines whether Plaintiff's conduct is presumptively protected by the Constitution, which it is. *Bruen*, 597 U.S. at 17 ("In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct").

To prevail here, the County was required to "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17.

"Only if a firearm regulation is consistent with this Nation's historical tradition may [this] court conclude that [Plaintiff's] conduct falls outside the Second Amendment's 'unqualified command.'" *Bruen*, 597 U.S. at 17.

The County made no attempt to meet its burden under *Bruen*, which requires summary judgment in Plaintiff's favor.

## CONCLUSION

Plaintiff's Cross-Motion for Summary Judgment should be granted in its entirety, Suffolk County's motion should be denied, the challenged policy should be permanently enjoined, and a

---

[9] County Opp/Reply at p. 6.

7

hearing should be scheduled for a determination of Plaintiff's monetary damages.

Dated: May 16, 2024
      Scarsdale, New York

                                                THE BELLANTONI LAW FIRM, PLLC
                                                *Attorneys for Plaintiff*

By:   _____/s_____
       Amy L. Bellantoni (AB3061)
       2 Overhill Road, Suite 400
       Scarsdale, New York 10598
       abell@bellantoni-law.com