UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
BRETT MILAU,

                   Plaintiff,                 17 Civ. 6061 (JS)(SIL)

        -against-

SUFFOLK COUNTY, New York,
Commissioner TIMOTHY SINI, Individually,
Sgt. WILLIAM WALSH, Individually, Officer
LOUIS MOLINARI, Individually, Captain
WILLIAM SCRIMA, Individually, and "JOHN
DOE", Commanding Officer of the Suffolk
County Property Section, Individually,

                 Defendants.
------------------------------------------------------x

# PLAINTIFF'S SUPPLEMENTAL

# MEMORANDUM OF LAW

**THE BELLANTONI LAW FIRM, PLLC**
*Attorneys for Plaintiff*
**2 Overhill Road, Suite 400**
**Scarsdale, New York 10583**
**(914) 367-0090 (t)**
**(888) 763-9761 (f)**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

TABLE OF AUTHORITIES ........................................................................................................... i

PRELIMINARY STATEMENT ................................................................................................... 1

PLAINTIFF'S RESPONSE ........................................................................................................... 1

I. *BRUEN* DOES NOT SUPPORT GRANTING QUALIFIED IMMUNITY;
CONTROLLING LAW WAS ESTABLISHED IN *HELLER* ...................................................... 1

II.  *ANTONYUK* DOES NOT SUPPORT SUFFOLK COUNTY'S COHABITANT POLICY .... 4

CONCLUSION ............................................................................................................................. 5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Antonyuk v. James*,
  120 F.4th 941 (2d Cir. 2024) ................................................................................ 4

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) ............................................................................................. 3

*D.C. v. Heller*,
  554 U.S. 570 (2008) ....................................................................................... 1, 2, 3

*Malley v. Briggs*,
  475 U.S. 335 (1986) ............................................................................................. 3

*McDonald v. Chicago*,
  561 U.S. 742 (2010) .......................................................................................... 1, 3

*McDonald v. Smith*,
  472 U.S. 479, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985) ........................................ 2

*NYSRPA v. Bruen*,
  597 U.S. 1 (2022) .......................................................................................... 1, 2, 3

## PRELIMINARY STATEMENT

Brett Milau ("Plaintiff") submits the within supplemental brief, pursuant to the Court's October 16, 2024 text Order, in response to the defendants' supplemental brief setting forth their position on the proper application of *NYSRPA v. Bruen*, 597 U.S. 1 (2022) to the parties' pending cross-motions for summary judgment.

## PLAINTIFF'S RESPONSE

## I. *BRUEN* DOES NOT SUPPORT GRANTING QUALIFIED IMMUNITY; CONTROLLING LAW WAS ESTABLISHED IN *HELLER*

In their motion for summary judgment, Defendants argued that *Bruen* is inapplicable to the instant case because it was decided four years after the events that form the basis of Plaintiff's operative complaint [See Def. Mem. at 9-12].

Defendants now reverse course, conceding that *Bruen* is applicable, but with the caveat that its retroactive application "is not without limitation" [County Supp. Br. at 1] including for example, the principle of qualified immunity for the individually named defendants.

But when the individual defendants enforced the unconstitutional SCPD policy at issue, denying an individual's right to possess firearms based on *another person's* disqualified status, the law had already been established – long before *Bruen* was decided.

Missing the forest for the trees, Defendants focus on the facts of *Bruen* while ignoring its fundamental purpose: the reiteration of the principles laid down in *D.C. v. Heller*, 554 U.S. 570 (2008) and reinforced in *McDonald v. Chicago*, 561 U.S. 742 (2010) – that the rights enumerated in the Bill of Rights belong to the *individual*; they are not "collective rights."  See, *Bruen*, 597 U.S. at 37 ("Nonetheless, we have made clear that *individual rights* enumerated in the Bill of Rights and made applicable against the States through the Fourteenth Amendment have the same scope as against the Federal Government") (emphasis added) (cases cited).

1

The main argument from the government in *Heller* was that the Second Amendment protected a "collective right" - that there was no individual right to keep and bear arms. But the Supreme Court rejected that view and declared,

> "Putting all of these textual elements together, we find that they guarantee the *individual right* to possess and carry weapons in case of confrontation. This meaning is strongly confirmed by the historical background of the Second Amendment.
>
> We look to this because it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right…

*Heller*, 554 U.S. at 592 (emphasis added).[1]

The unamended Constitution and the Bill of Rights use the phrase "right of the people" two other times, in the First Amendment's Assembly–and–Petition Clause and in the Fourth Amendment's Search–and–Seizure Clause. The Ninth Amendment uses very similar terminology ("The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people"). All three of these instances unambiguously refer to individual rights, not "collective" rights, or rights that may be exercised only through participation in some corporate body. *Heller*, 554 U.S. at 579.

And in *Bruen*, when the Court explained that "confining the right to 'bear' arms to the home would make little sense given that self-defense is 'the central component of the [Second Amendment] right itself,' the Court reconfirmed, "after all, the Second Amendment guarantees an individual right to possess and carry weapons in case of confrontation and confrontation can surely

---

[1] The majority also pointed out that Justice Steven was "correct…that the right to assemble cannot be exercised alone, but it is still an individual right, and not one conditioned upon membership in some defined "assembly," as he contends the right to bear arms is conditioned upon membership in a defined militia. And Justice STEVENS is dead wrong to think that the right to petition is "primarily collective in nature." Ibid. See *McDonald v. Smith*, 472 U.S. 479, 482–484, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985) (describing historical origins of right to petition)." *Heller,* 554 U.S. at 579.

take place outside the home." *Bruen*, 597 U.S. at 32-33, quoting *Heller*, 554 U.S. at 592, 599 (cleaned up); see also *McDonald*, 561 U.S. at 767.

As of 2008, the Supreme Court established that the rights guaranteed by the Second Amendment right to possess and carry weapons in case of confrontation belong to the individual. *Heller,* 554 U.S. at 592.

No reasonable person would believe that – despite the affirmative rejection of the 'collective rights' theory of Second Amendment protections by the Supreme Court in 2008 – is would not violate the Second Amendment to enforce a "collective rights" policy revokes existing pistol licenses and denies applications for a pistol license based on a cohabitant's 'prohibited person status.' Stated differently, only the plainly incompetent – or those who knowingly and intentionally violate the law[2] - would believe that terminating one person's Second Amendment rights because of another person's disqualification was consistent with the Constitution.

Defendants' emphasis on the licensing issues giving rise to the *Bruen* case highlights a fundamental misunderstanding of the Second Amendment right. One does not even get to whether the state statues are 'may issue' a license or 'shall issue' a license because the Suffolk County policy prevents Plaintiff's application to even be considered:  Officer Molinari "would not be able to approve a license for [Plaintiff]" "while his son was in the house" "based on the policy of the police department" [Ex. 9 at 17]. The sole factor considered was Plaintiff's co-habitation with his son [Ex. 9 at 23]; Upon learning that Plaintiff's son was a prohibited person, Officer Molinari ceased processing Plaintiff's 2017 application for a handgun license. Under the Policy, the son's conviction for CPCS-7 was enough for Molinari to deny Plaintiff's application [Ex. 9 at 17,

---

[2] *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)) ("When making this determination, courts should be mindful that officials are not entitled to qualified immunity if they are 'plainly incompetent' or 'knowingly violate the law'.").

22-23] [see, Plaintiff's Memorandum of Law in support of cross-motion at 17-18].

## II.  *ANTONYUK* DOES NOT SUPPORT SUFFOLK COUNTY'S COHABITANT POLICY

The Second Circuit decision in *Antonyuk v. James*, 120 F.4th 941 (2d Cir. 2024) does not lend any support to Defendants' position.

In fact, Defendants' are misrepresenting the state statute being challenged in, and the Second Circuit's discussion of, the cohabitant requirement in *Antonyuk.* There is no analogy to be made between *Antonyuk* and the Suffolk County cohabitant policy.

In *Antonyuk,* the plaintiffs challenged the requirement under Penal Law § 400.00(1)(o)(ii) that an applicant for a concealed carry license disclose the identity of his/her cohabitants. *First,* this is a disclosure requirement only. *Second,* the disclosure of cohabitants is required solely for the purpose of having "*additional* character references"[3] for the licensing officer to consider when assessing the moral character of the applicant. *Third,* under the state statute, the focus is on the *applicant's* eligibility. Under Suffolk County's policy, the focus is on the *cohabitants'* eligibility.

There is **no support** for Defendants claim that the Second Circuit upheld Penal Law § 400.00(1)(o)(ii)'s disclosure requirement "on the basis that association with an unsuitable cohabitant may suggest that the prospective licensee is themselves unfit, rather than on the ground that a license should not be issued to a person who shares a home with an unsuitable cohabitant." [County Sup. Br. at 2-3]. This statement is a misrepresentation of *Antonyuk*'s analysis and holding. The Second Circuit discussion pointed to the *applicant*'s trustworthiness and character, and involved no inquiry or assessment into a cohabitant's qualifications to possess firearms.

---

[3] *Antonyuk v. James*, 120 F.4th at 1000 (emphasis supplied).

That said, *Antonyuk* neither replaces nor supplements Defendants' burden under the *Bruen* test to identify an historical analogue for their cohabitant policy, which they failed to do – requiring granting summary judgment in Plaintiff's favor.

## CONCLUSION

Plaintiff's cross-motion for summary judgment should be granted in its entirety, Suffolk County's motion for summary judgment should be denied in its entirety, Suffolk County's policy should be permanently enjoined, and a hearing should be scheduled to determine the amount of Plaintiff's monetary damages.

Dated: December 17, 2024
        Scarsdale, New York

                                    Respectfully submitted,


                                    THE BELLANTONI LAW FIRM, PLLC
                                    *Attorneys for Plaintiff*


                        By:    _____/s_____
                                    Amy L. Bellantoni
                                    2 Overhill Road, Suite 400
                                    Scarsdale, New York 10598
                                    abell@bellantoni-law.com