UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
BRETT MILAU,

Plaintiff,

    -against-

SUFFOLK COUNTY, COMMISSIONER TIMOTHY
SINI *individually*, SGT. WILLIAM WALSH
*individually*, POLICE OFFICER "JOHN"
MOLINARI *of the Pistol Licensing Bureau,
individually*, CAPTAIN WILLIAM SCRIMA,
*individually, and* JOHN DOE, *Commanding
Officer of the Suffolk County Property Section,
individually,*

Defendants.

-------------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**
17-CV-06061 (JS) (SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this Section 1983 litigation, on referral from the Honorable Joanna Seybert for Report and Recommendation, are: (i) Defendants' Suffolk County, Commissioner Timothy Sini ("Sini"), Sgt. William Walsh ("Walsh"), Police Officer Louis Molinari ("Molinari"), Captain William Scrima ("Scrima"), and John Doe (collectively, "Defendants") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure ("Rule" or "Fed. R. Civ. P.") 56 ("Defs. Mot."), DE [46]; and (ii) Plaintiff Brett Milau's ("Plaintiff" or "Milau") Cross-Motion for Summary Judgment ("Plaintiff's Motion" or "Pl. Mot."), DE [48].

By way of Complaint (or "Compl.") filed on October 17, 2017, DE [1], Milau commenced this action against Defendants pursuant to 42 U.S.C. § 1983 for violations of his rights under the First, Second, Fourth and Fourteenth Amendments. *See*

1

Compl. For the reasons set forth below, the Court recommends: (i) granting Defendants' Motion as to Plaintiff's First, Fourth and Fourteenth Amendment claims and as to Defendants Sini, Walsh and Scrima on the merits, and as to Defendant Molinari on qualified immunity grounds; and (ii) granting Plaintiff's Motion as to his Second Amendment cause of action as to Suffolk County's *Monell* liability. Finally, the Court recommends setting a hearing on damages and to determine the appropriate language of a permanent injunction against enforcement of Suffolk County's challenged policy.

## I.    BACKGROUND

### A.  <u>Relevant Facts</u>

The following facts are taken from the parties' pleadings, submissions, exhibits and Local Rule 56.1 statements. Unless otherwise noted, these facts are not in dispute.

#### i.    *Relevant Suffolk County Policies and New York Law*

In this action, Plaintiff challenges a Suffolk County policy by which a person who lives with someone who is legally prohibited from possessing firearms cannot receive a Suffolk County pistol license. *See* Plaintiffs' Memorandum of Law in Support of Plaintiff's Motion, DE [47-15] ("Pl. Mem.") at 10-11; Defendants' Second Revised Rule 56.1 Counterstatement, DE [46-1] ("Defs. 56.1 Counterstatement"), ¶ 73; *see id.,* ¶¶ 75-77; Declaration of Amy L. Bellantoni, DE [48-2], ("Bellantoni Decl."), ¶ 12, Ex. 10, Deposition of Police Officer Ciara Plihcik in *LaMarco et al. v. Suffolk Cnty. et al.*, No: 21-3716 (GRB) (E.D.N.Y.) ("Plihcik Dep.") at 21:13-22:14.

The parties agree that, under N.Y. Penal Law § 400.00[1], which governs firearm licenses in New York State, Plaintiff cannot possess handguns unless he has a pistol license.  *See* Defs. 56.1 Counterstatement, ¶ 74.  His son Gregory Milau's ("Gregory") conviction for Criminal Possession of a Controlled Substance in the Seventh Degree, a misdemeanor, renders Gregory ineligible to possess a firearm in the New York State, pursuant to N.Y. Penal Law § 265.  *Id.*, ¶ 62.

Until 2022, the Pistol License Information Handbook used by Suffolk County provided that the conviction of a cohabitant for a "felony or serious offense, as defined in" N.Y. Penal Law § 265.00 (17), which term includes Criminal Possession of a Controlled Substance in the Seventh Degree, was grounds for the suspension or revocation of a licensee's pistol license.  *See* Defs. Mem., Ex. P at 26-27; Ex. Q at 26-27.  Despite admitting that Milau is currently subject to this policy, *see* Defs. 56.1 Counterstatement, ¶¶ 75-77, Defendants dispute that this is the current Suffolk County policy and assert that that policy was changed sometime in 2022.  *See* Defendants' Supplemental 56.1 Counterstatement, DE [47-16] ("Defs. Supp. 56.1 Counterstatement"), ¶ 90 (denying that "[u]nder Suffolk County policy, if anyone in the household is firearms disqualified, no one in the household will be issued a pistol license"), ¶ 97 (stating that "[t]he grounds for [pistol license] suspension and revocation have changed from the time that Milau received the Notice of Cancellation and the present," including the removal as a ground for suspension and revocation "the conviction of a member of the licensee's household of a felony or other serious

---

[1] Defendants cite to "N.Y. Penel [sic] Law Article 200," which concerns bribery, not handgun regulations.  *See* Defs. 56.1 Counterstatement, ¶ 74.  The Court assumes this is a typographical error.

offense" in the Pistol License Information Handbook) (citing Defs. Mot., Ex. R, DE [47-22]); Defs. Mot., Ex R, § 5; Bellantoni Decl., ¶ 13, Ex. 11, Deposition of Lt. William Komorowski ("Komorowski Dep.") at 32:5-33:13.

The parties agree that "[i]t is the policy and procedure of the Suffolk County Police Department to retain the handguns and pistol license of a licensee until after the expiration of the statute of limitations for prosecuting the underlying offense that led to the suspension/seizure in the first instance." Defs. 56.1 Counterstatement, ¶ 51; *see* Bellantoni Decl., ¶ 8, Ex. 6, Deposition of Nicholas LoRusso ("LoRusso Dep.") at 23:14-24:16, 24:23-25:14. The statute of limitations for Harassment in the Second Degree, N.Y. Penal Law § 240.26, is one year. *See* Defs. 56.1 Counterstatement, ¶ 53.

ii. *Plaintiff's Surrender of His Handguns*

Plaintiff is a resident of Ronkonkoma, New York. *See* Defs. 56.1 Counterstatement, ¶ 1. He possessed a New York City pistol license prior to moving to Suffolk County approximately 30 years ago, *id.*, ¶ 4, and applied for and received a New York State pistol license when he moved. *Id.*, ¶ 5. Milau currently lives with his wife and 29-year-old son Gregory. Defs. 56.1 Counterstatement, ¶¶ 9-10. Gregory has used heroin and "crack cocaine" since he was 15 years old. *Id.*, ¶ 11. On unspecified dates, Milau called the Suffolk County Police Department ("SCPD") multiple times to request assistance and documentation because of Gregory's verbal and physical aggression toward Plaintiff and Plaintiff's wife. *Id.*, ¶ 12. The SCPD responded to these calls at Milau's home. *Id.*, ¶¶ 13-14. While Gregory was not arrested, *id.*, ¶ 14, on unspecified dates, Milau twice applied for and received

4

Temporary Orders of Protection against Gregory, neither of which is still in effect. *Id.*, ¶¶ 16-21.

Prior to January 22, 2013, Plaintiff owned handguns and long guns, which were stored in a locked safe. Defs. 56.1 Counterstatement, ¶ 7. On January 22, 2013, the SCPD responded to Milau's home after Gregory called them, complaining that Plaintiff pushed him. *Id.*, ¶ 24; Bellantoni Decl., ¶ 4, Ex. 2 ("Jan. 22, 2013 Report"). During this visit, Milau informed the responding officers that he had weapons in the house and showed them his pistol license. Defs. 56.1 Counterstatement, ¶¶ 27-29; Jan. 22, 2013 Report. On that date, Plaintiff was neither arrested nor charged, nor were his firearms or license seized. Defs. 56.1 Counterstatement, ¶¶ 30, 35-36. The parties disagree as to whether Milau's action when he pushed his son constitutes Harassment in the Second Degree, a violation of N.Y. Penal Law § 240.26. *Id.*, ¶¶ 46, 49. Gregory told the responding SCPD officers that he did not want to pursue a charge against his father. *Id.*, ¶ 54.

On January 24, 2013, however, Milau's pistol license was suspended by Suffolk County. *Id.*, ¶ 37; Bellantoni Decl., ¶ 5, Ex. 3 ("Notice of Suspension"). This order of suspension directed Plaintiff to "respond to the Suffolk County Police [Pistol] Licensing Bureau, Police Headquarters, or [his] local precinct immediately and surrender [his] pistol license and all handguns in [his] possession." Notice of Suspension. Milau maintains that he had "no idea that his pistol license was in jeopardy," while Defendants take the position that "[P]laintiff had received the [SCPD] Pistol License Information Handbook[,] which states that the grounds for

5

suspension of a pistol license include '[i]ncidents where the licensee …(b) has caused or threatened bodily harm to another person: or (c) is behaving irrationally and in a manner that causes a normal, rational person to be fearful or threatened 'by the licensee having access to handguns', and 'volatile domestic situations'." Defs. 56.1 Counterstatement, ¶ 39; *see* Defs. Mot., Ex. A, DE [46-2] ("Pistol License Information Handbook Excerpt") at 4-5.[2]

After receiving the Notice of Suspension, Milau contacted the Suffolk County "Pistol License Division," presumably the Pistol Licensing Bureau that issued the Notice of Suspension, and was informed that he must turn in his handguns. Defs. 56.1 Counterstatement, ¶ 39. According to Plaintiff, Suffolk County required him to surrender his handguns to the SCPD, while Defendants maintain that "N.Y. Penal Law Article 400 prohibited [Milau] from possessing handguns" once his pistol license had been suspended. *Id.*, ¶ 41. On January 25, 2013, Plaintiff surrendered the five handguns in his possession, *see* Bellantoni Decl., ¶ 6, Ex. 4 ("Receipt of Weapon/License"), and provided a written statement to the SCPD. Defs. 56.1 Counterstatement, ¶¶ 43-44; Bellantoni Decl., ¶ 7, Ex. 5 ("Jan. 25, 2013 Milau Statement"). In this statement, Milau explained Gregory's history with drug use and described the January 22, 2013 altercation between Plaintiff and his son, stating that he pushed Gregory because his son demanded money, "was hitting things [and pounding things," and was verbally abusive "every day." Jan. 25, 2013 Milau Statement. In any event, Suffolk County did not seize Plaintiff's collection of

---

[2] Defendants' Exhibit A to their Motion truncates the cited portion of the Pistol License Information Handbook Excerpt due to an apparent file processing error.

approximately 13 long guns. Defs. 56.1 Counterstatement, ¶ 50. To date, Milau has not recovered his handguns. *Id.*, ¶¶ 55, 57.

        iii.    *Plaintiff's Interactions with the SCPD in 2015*

On January 14, 2015, Gregory and his father were "involved in a verbal domestic incident." *See id.*, ¶ 59; Bellantoni Decl., ¶ 9, Ex. 7 ("Jan. 22, 2015 Internal Correspondence"). As a result, SCPD Investigator Nicholas LoRusso ("LoRusso") was reassigned Plaintiff's pistol license file. Defs. 56.1 Counterstatement, ¶ 58; Jan. 22, 2015 Internal Correspondence. In this role, LoRusso learned that "'Gregory had a significant drug problem . . . [and] a multitude of arrests . . . including . . . Burglary, Loitering and Possession of a Hypodermic Instrument, and a conviction of Criminal Possession of a Controlled Substance in the Seventh Degree ([N.Y.] Penal Law §220.03) on [May 23, 2014].'" Defs. 56.1 Counterstatement, ¶ 61; Jan. 22, 2015 Internal Correspondence. The parties agree that this conviction for Criminal Possession of a Controlled Substance in the Seventh Degree, which is a misdemeanor, renders Gregory ineligible to possess a firearm in New York. Defs. 56.1 Counterstatement, ¶ 62.

Milau spoke to LoRusso on January 21, 2015, and expressed that Plaintiff and his wife "'live in constant fear of Gregory . . . sleep with a dead bolt on their bedroom door, that Gregory has made numerous threats to harm them with physical violence while they sleep, and that he is constantly stealing from the family to support his drug habit . . . [that] everything in his home has to be under lock and key….'" Defs. 56.1 Counterstatement, ¶ 63; Jan. 22, 2015 Internal Correspondence. During that

phone conversation, LoRusso informed Milau that "in light of the information Milau had conveyed about Gregory, it would probably be in Milau's best interest to cancel his pistol license until Gregory no longer resided in the home. Milau agreed with LoRusso and requested that his pistol license be cancelled."     Pl. 56.1 Counterstatement, ¶ 11; *see* Jan. 22, 2015 Internal Correspondence.   The parties agree that under Suffolk County policies and procedures, the "volatility" of Milau's "domestic situation," combined with his "cohabitation with" Gregory, "a prohibited person" who used illegal drugs, Plaintiff was ineligible to possess a pistol license. Defs. 56.1 Counterstatement, ¶ 65, 68, 73; LoRusso Dep., 30:14-34:12.   Moreover, under Suffolk County policy, Milau will not be issued a pistol license as long as Gregory lives with him.  Defs. 56.1 Counterstatement, ¶ 75, 82.

On January 22, 2015, Milau received a Pistol License Notice of Cancellation from SCPD Captain William Scrima ("Scrima"), which stated that his pistol license was canceled "only in view of [his] request to cancel this license," and that "[t]he circumstances leading up to the original suspension would be considered if any future application for a pistol license [were] filed[.]"  *See* Bellantoni Decl., ¶ 10, Ex. 8 ("Notice of Cancellation").  The parties agree that Scrima "was independently and personally involved in the review of Plaintiff's file" and "personally made the determination to cancel Plaintiff's pistol license."  Defs. 56.1 Counterstatement, ¶ 72.  Milau takes the position that this cancellation was not made solely at his request, "as his license would inevitably have been revoked because of the County's Policy." Pl. 56.1 Counterstatement, ¶ 12.

*iv.    Plaintiff's 2016 Application for a Pistol License*

On March 22, 2016 Plaintiff applied for a pistol license.  *See* Defs. 56.1 Counterstatement, ¶ 79; Pl. 56.1 Counterstatement, ¶ 13; Bellantoni Decl., ¶ 11, Ex. 9, Deposition of Officer Louis Molinari ("Molinari Dep.") at 15:18-17:7.  Officer Louis Molinari ("Molinari") was assigned to investigate and process that application.  Defs. 56.1 Counterstatement, ¶ 79.  Upon discovering that Gregory had a conviction for Criminal Possession of a Controlled Substance in the Seventh Degree, which Molinari described in his deposition as "an automatic bar to having a pistol license," Molinari determined that he could not approve a pistol license for Plaintiff while he lived with Gregory.  *Id.*, ¶ 80, 82; Molinari Dep. at 17:7-18:14.  Molinari then contacted Milau on May 19, 2017 and "request[ed] him to withdraw his [pistol license] application because at that time it would be hard for [Molinari] to approve [Plaintiff's] license, and [Milau] would therefore have to go through all the rigmarole of the interview and everything."  Defs. 56.1 Counterstatement, ¶ 80, 83; Molinari Dep. at 18:22-19:14.  Plaintiff withdrew his application.  Pl. 56.1 Counterstatement, ¶ 13.  According to Milau, he did so because "he was informed that he would be denied [a license] because his son still lived with him," and because Plaintiff "did not want to have had a pistol license 'denied.'"  *Id.*  Milau has not reapplied since.  *Id.*, ¶ 14.

**B. <u>Procedural History</u>**

Based on the above facts, Plaintiff commenced this action against Defendants by way of Complaint dated October 17, 2017, which asserted claims pursuant to 42 U.S.C. §1983 for:  (i) violations of his right to freedom of association under the First Amendment; (ii) violations of the Second Amendment; (iii) violations of the Fourth

Amendment's protection against unreasonable seizure; and (iv) violations of his due process rights under the Fourteenth Amendment. *See* Complaint ("Compl."), DE [1]. Milau purports to bring these claims with respect to "constitutional harms ar[ising] in 2017." *See* Pl. Mem. at 1. Defendants answered the Complaint on December 27, 2017. Answer, DE [8].

Defendants moved for summary judgment on April 24, 2020, *see* DE [35], which motion was fully briefed on July 1, 2020. *See* DE [37]. Before a decision was issued, Judge Seybert ordered the parties to rebrief that motion following the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111 (2022). *See* Elec. Order dated May 10, 2023. Defendants' rebriefed Motion was filed May 9, 2024, *see* DEs [46]-[47]; Defendants' Memorandum in Support of Defendants' Motion, DE [46-11] ("Defs. Mem."), and Plaintiff cross-moved on May 16, 2024. *See* Pl. Mot.; Pl. Mem. Judge Seybert referred the cross-motions to this Court for Report and Recommendation on October 10, 2024. *See* Elec. Order dated Oct. 10, 2024.[3] This Court then directed Defendants to file a supplemental brief explaining the proper application of *Bruen* to the case at hand. *See* Elec. Order dated Oct. 16, 2024. Defendants did so on November 22, 2024. *See* Defendants' Supplemental Memorandum, DE [58] ("Defs. Supp. Mem.").

---

[3] This Electronic Order also makes reference to a case with factual similarities, to which the parties refer in their briefing, *LaMarco et al. v. Suffolk Cnty. et al.*, No. 22-CV-4629 (GRB) (E.D.N.Y.). While that case has been resolved *via* consent decree, *see id.*, DE [36]; Elec. Order dated Jan. 31, 2025, the Court determines that the consent decree entered in *LaMarco* does not impact the present case.

## II.    LEGAL STANDARDS

### A.  Fed. R. Civ. P. 56

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Cross-motions for summary judgment do not alter the basic standard, but simply require the court to determine whether either of the parties deserves judgment as a matter of law on facts that are not in dispute." *AFS/IBEX v. AEGIS Managing Agency Ltd.*, 517 F. Supp. 3d 120, 123 (E.D.N.Y. 2021) (*citing Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)). Each movant bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004).

In deciding the motion, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once a movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come

forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted); *see Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party").

In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see Artis v. Valls*, No. 9:10-CV-427, 2012 WL 4380921, at *6, n.10 (N.D.N.Y. Sept. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment."). Questions of law are not subject to the same rule. "[T]he Court may decide all questions of law on summary judgment." *AKF, Inc. v. W. Foot & Ankle Ctr.*, 632 F. Supp. 3d 66, 74 (E.D.N.Y. 2022) (collecting cases). Relevant here, at the summary judgment stage a court may consider deposition testimony in another action. *See Linzy v. Uber Techs., Inc.*, 21-CV-05097, 2023 WL 7302643, at *3 (S.D.N.Y. Nov. 6, 2023), *reconsideration denied*, No. 21-CV-05097, 2024 WL 2882186 (S.D.N.Y. June 7, 2024); *Kanciper v. Lato*, No. 13-CV-0871S, 2016 WL 11507274, at *13 (E.D.N.Y. Dec. 1, 2016), *aff'd*, 718 F. App'x 24 (2d Cir. 2017).

**B. 42 U.S.C. § 1983**

42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State… subjects, or causes to be subjected, any citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured….

42 U.S.C. § 1983.  Although Section 1983 itself does not create substantive rights, it does provide "a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  To prevail on a claim arising under 42 U.S.C. § 1983, a plaintiff must demonstrate:  "(i) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (ii) by a person acting under the color of state[-]law." *Hawkins v. Nassau Cnty. Corr. Fac.*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. § 1983); *see also Dubin v. Cnty. of Nassau*, 277 F. Supp. 3d 366, 384 (E.D.N.Y. 2017) (quoting *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)).  In federal cases "in New York, the statute of limitations for Section 1983 claims is New York's general statute of limitations for personal injury actions, N.Y. C.P.L.R. § 214(5), which is three years." *Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 108 (2d Cir. 2023).

Under *Monell v. Department of Social Services of City of New York*, municipalities and other local governmental entities may be held liable under 42 U.S.C. § 1983 for constitutional violations caused by an official policy or custom.  *See* 436 U.S. 658, 663, 98 S. Ct. 2018, 2021-22 (1978).  The "policy or custom" element may be established by demonstrating:  (i) a formal policy officially endorsed by the

municipality; (ii) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (iii) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (iv) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees. *See Kucharczyk v. Westchester Cnty.*, 95 F. Supp. 3d 529, 538-39 (S.D.N.Y. 2015) (citing *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)); *see also Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't*, 557 F. Supp. 2d 408, 419 (S.D.N.Y. 2008).

## C. **Permanent Injunctions**

A permanent injunction of an unconstitutional policy is an appropriate remedy. *See Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 619, 141 S. Ct. 2373, 2389 (2021); *Lauretano v. Spada*, 339 F. Supp. 2d 391, 421 (D. Conn. 2004); *Fraser v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 689 F. Supp. 3d 203, 213 (E.D. Va. 2023) (collecting cases).

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief.  A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839 (2006).

## III.    DISCUSSION

Applying the standards set forth above, and for the reasons set forth below, the Court respectfully recommends:  (i) granting Defendants' Motion as to Plaintiff's First, Fourth and Fourteenth Amendment claims, and as to the individual Defendants; and (ii) granting Plaintiff's Motion as to his Second Amendment cause of action and as to Suffolk County.  Finally, the Court recommends setting a hearing on damages, and to determine the appropriate language of a permanent injunction against enforcement of Suffolk County's policy of denying pistol licenses to individuals who live with someone who is legally barred from possessing a firearm.

### A. **Plaintiff's First Amendment Claim**

Initially, Milau alleges violations of his First Amendment rights in the Complaint.  *See* Compl., ¶¶ 51, 69.  The Court recommends that Plaintiff's First Amendment cause of action be dismissed on the grounds that he has abandoned it. Defendants address this cause of action in their Memorandum in Support of Defendants' Motion.  *See* Defs. Mem., DE [46-11], at 9, 13-14.  Plaintiff, however, does not address this claim in opposition.  *See* Pl. Mem.; Pl. Opp.; Plaintiffs' Reply ("Pl. Reply"), DE [49].

"'Where a partial response to a motion [for summary judgment] is made — *i.e.*, referencing some claims or defenses but not others . . . in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.'" *Dynamic Concepts, Inc. v. Tri-State Surgical Supply & Equip. Ltd.*, 716 F. App'x 5, 14 (2d Cir. 2017) (alteration in original) (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 197–98 (2d

15

Cir. 2014)).  Here, Milau has made no reference to his First Amendment cause of action in his otherwise fulsome briefing.  Accordingly, the Court recommends finding that Plaintiff has abandoned this claim and dismissing it.

### B. **Plaintiff's Second Amendment Claim**

Next, Milau argues that "in 2017 and continuing to the present day," Defendants violated his Second Amendment rights by refusing to issue him a pistol license based on his cohabitation with his son, who was prohibited from possessing firearms.  *See* Compl., ¶ 49; Pl. Mem. at 1.  He challenges the constitutionality of a Suffolk County policy refusing pistol licenses to individuals who live with someone statutorily prohibited from possessing firearms.  *See* Pl. Mem. at 1.  Because Plaintiff seeks, among other relief, a permanent injunction, *see* Pl. Mem. at 2, he brings a facial challenge against the policy.  *See Bucklew v. Precythe*, 587 U.S. 119, 138, 139 S. Ct. 1112, 1127 (2019).  To survive a facial challenge, Suffolk County must "demonstrate that" the challenged policy "is constitutional in some of its applications."  *United States v. Rahimi*, 602 U.S. 680, 693, 144 S. Ct. 1889, 1898 (2024).  For the reasons set forth below, the Court recommends granting summary judgment in Plaintiff's favor as to liability on this cause of action against Suffolk County but granting summary judgment in favor of the individual Defendants.  Moreover, the Court recommends scheduling a hearing to determine Milau's damages and the appropriate language of the injunction.

Initially, Defendants equivocate as to whether the challenged Suffolk County policy currently exists, such that a facial challenge is cognizable.  *Compare* Defs.

Supp. Mem. at 2-3 (arguing that a cohabitation-based pistol licensing regime comports with the Second Amendment); Defs. 56.1 Counterstatement, ¶¶ 73, 75-77, 84 (admitting that Milau was prohibited from possessing a pistol license because his son was prohibited from owning firearms, and that Suffolk County currently will not issue Plaintiff a pistol license or return his handguns as long as his son lives with him) *with* Defs. Reply at 7 ("Milau offers no evidence that the alleged policy exists."); Defs. Supp. 56.1 Counterstatement, ¶ 97 (stating that "[t]he grounds for [pistol license] suspension and revocation have changed from the time that Milau received the Notice of Cancellation and the present," including the removal as a ground for suspension and revocation "the conviction of a member of the licensee's household of a felony or other serious offense" from the Pistol License Information Handbook) (citing Defs. Mot., Ex. R, DE [47-22]).

Multiple Suffolk County employees have testified that Suffolk County held the challenged policy on May 19, 2017, when Molinari requested that Milau withdraw his pistol license application. *See* Plihcik Dep. at 21:13-22:14 (testifying on November 21, 2023 that if one individual in a household is ineligible to possess firearms, the entire household is ineligible to possess a pistol license); LoRusso Dep. at 33:22-34:12 (testifying on March 28, 2019); Molinari Dep. at 17:7-18:14 (testifying on March 28, 2019 as to the policy's existence in 2017). Moreover, despite offering evidence that the Pistol License Information Handbook language was changed in 2022, Defendants have put forth no evidence showing that the policy at issue is no longer enforced. To the contrary, Police Officer Ciara Plihcik ("Plihcik") testified on November 21, 2023

that the policy was still in place—well after the Pistol License Information Handbook was revised. *See* Defs. Mot., Ex. R; Plihcik Dep. at 21:13-22:14. And, as explained above, the parties do not dispute that Suffolk County *currently* will not issue Plaintiff a pistol license or return his handguns while his son Gregory is living with him. *See* Defs. 56.1 Counterstatement, ¶¶ 75-77, 82, 84. Accordingly, the Court concludes that there is no genuine issue of material fact that Plaintiff is still barred from receiving a pistol license from Suffolk County pursuant to the challenged policy.

1.  Suffolk County's Policy Against Issuing Pistol Licenses to Those Living With Prohibited Individuals is Facially Unconstitutional

The Second Amendment commands that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Due Process clause of the Fourteenth Amendment incorporates the Second Amendment and renders the right to keep and bear arms fully applicable against the states. *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 750, 130 S. Ct. 3020, 3025 (2010). This right, however, "'is not unlimited[.]'" *United States v. Ceruti*, No. 24-CR-295 (KMW), 2024 WL 5186532, at *1 (S.D.N.Y. Dec. 20, 2024) (citing *District of Columbia v. Heller*, 554 U.S. 570, 595, 626, 128 S.Ct. 2783, 2799, 2816 (2008)). Since the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111 (2022), courts analyzing Second Amendment challenges to government regulations must first assess whether "the Second Amendment's plain text covers an individual's conduct" that forms the basis of the challenge. *Bruen*, 597 U.S. at 17, 142 S. Ct. at 2126. If so, "the Constitution presumptively protects that conduct." *Id.* The burden

18

then shifts to the government to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19, 142 S. Ct. at 2127; *see id.* at 34, 142 S. Ct. at 2135; *Antonyuk v. James*, 120 F.4th 941, 1012 (2d Cir. 2024); *United States v. Quailes*, No. 23-2533, 2025 WL 225486, at *4, n.6 (3d Cir. Jan. 17, 2025); *United States v. Perez-Garcia*, 96 F.4th 1166, 1175 (9th Cir. 2024).

The Court concludes at the first step of the *Bruen* analysis that the plain text of the Second Amendment covers Milau's possession of handguns. The Supreme Court made it clear in *Heller* that ownership of handguns in the home for self-defense is central to the Second Amendment right. *See Heller,* 554 U.S. at 628, 128 S. Ct. at 2817. Defendants argue that it is not County policy but state law that prevents Plaintiff from owning handguns, since County policy governs only the issuance of pistol licenses, and so Suffolk County's policy itself has not burdened Milau's Second Amendment rights. *See* Defs. Mem. at 20, N.Y. Penal Law § 400.00. The Second Circuit, however, has concluded otherwise, holding that a plaintiff who challenges a county's denial of a pistol license "has alleged a substantial burden on his Second Amendment rights." *Henry v. Cnty. of Nassau*, 6 F.4th 324, 333 (2d Cir. 2021). Accordingly, Suffolk County bears the burden of demonstrating that its policy "is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 34, 142 S. Ct. at 2135.

On October 16, 2024, the Court ordered Defendants to brief the proper application of *Bruen. See* Elec. Order dated Oct. 16, 2024; Defs. Supp. Mem. In

response, Defendants argue only that qualified immunity still applies because "the applicable law was not clearly established at the time of [the individual Defendants'] action," and that "[s]ome of the discretion afforded to licensing officers survives *Bruen*." Defs. Supp. Mem. at 1-2. Defendants cite two cases, but no historical sources: *Kamenshchik v. Ryder*, 84 Misc.3d 1048, 216 N.Y.S.3d 831, 836 (Sup. Ct. Nassau Cty 2024) and *Antonyuk v. James*, 120 F.4th 941 (2d Cir. 2024).

The first case, *Kamenshchik*, cites a predecessor case to *Antonyuk v. James*, captioned *Antonyuk v. Chiumento*, for the principle that a pistol licensing officer enjoys "a small amount of discretion . . . particularly in the area of good moral character or dangerousness, and in the nature of following-up on other information provided" before striking a urinalysis requirement to obtain a pistol permit. *See Kamenshchik*, 84 Misc.3d at 1052, 216 N.Y.S.3d at 836 (citing *Antonyuk v. Chiumento*, 89 F.4th 271, 312-24 (2d Cir. 2023), *cert. granted, judgment vacated sub nom. Antonyuk v. James*, 144 S. Ct. 2709, 219 L. Ed. 2d 1315 (2024), *and reinstated in part by Antonyuk v. James*, 120 F.4th 941 (2d Cir. 2024)). The *Kamenshchik* court, then, reached the opposite conclusion than that for which Defendants cite it, holding that the discretion afforded to a pistol licensing officer does *not* save pistol licensing requirements from Second Amendment analysis.

Defendants cite the second case, *Antonyuk v. James*, for the proposition that a pistol licensing officer may inquire as to an applicant's cohabitants "on the basis that association with an unsuitable cohabitant may suggest that the prospective licensee is [himself or herself] unfit[.]" Defs. Supp. Mem. at 2. In *Antonyuk v. James*, the

court vacated the district court's preliminary injunction against enforcing N.Y. Penal Law § 400.00(1)(o)(i), which requires a pistol license applicant to identify their cohabitants and disclose whether minors reside in the home.  120 F.4th at 1002.  In so holding, the Second Circuit reviewed the historical sources offered by the government in the district court proceedings and determined that a "character-reference requirement is consistent with a historical tradition of firearm regulation." *Id.* at 1000 (citing *Antonyuk v. Hochul*, 639 F. Supp. 3d 232, 306 (N.D.N.Y. 2022), *aff'd in part, vacated in part, remanded sub nom. Antonyuk v. James*, 120 F.4th 941 (2d Cir. 2024)).  The court's rationale, however—as Defendants acknowledge—is based on its conclusion that the "identity and characteristics of an applicant's cohabitants" may point to the applicant's ability to be "entrusted with a weapon and to use it only in a manner that does not endanger himself or others."  *Id.* at 1001 (citing N.Y. Penal Law § 400.00(1)(b)).  The Second Circuit did not conclude that historical tradition supports prohibiting an applicant from obtaining a pistol license merely because *his cohabitant* cannot possess firearms, without any reference to what that cohabitant may indicate to a licensing officer about the character of the applicant himself.  Accordingly, the Court concludes that *Antonyuk v. James* is inapposite, and the historical analysis in that opinion does not meet Defendants' burden here.

Because Defendants have not met their burden under *Bruen*, the Court recommends holding that Suffolk County's policy of denying pistol licenses to individuals merely because they live with someone who is legally prohibited from

possessing firearms facially violates the Second Amendment, as applied to the states through the Fourteenth Amendment. *See Bruen*, 597 U.S. at 70, 142 S.Ct. at 2156.

### 2. A Permanent Injunction is Appropriate

If the Court adopts this recommendation and determines that Suffolk County's challenged policy is unconstitutional, it should grant Plaintiff's request for a permanent injunction of that policy's enforcement. As explained above, a permanent injunction of an unconstitutional policy is an appropriate remedy. *See Bonta*, 594 U.S. at 619, 141 S. Ct. at 2389; *Lauretano*, 339 F. Supp. 2d at 421; *Fraser*, 689 F. Supp. 3d at 213 (collecting cases). The Supreme Court in *eBay Inc. v. MercExchange, L.L.C.* explained the four-factor test courts use to determine whether to issue a permanent injunction. 547 U.S. at 391, 126 S. Ct. at 1839. A plaintiff must demonstrate: (i) an irreparable injury; (ii) that remedies available at law are inadequate to compensate for that injury; (iii) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (iv) that the public interest would not be disserved by a permanent injunction. *Id.*

Initially, Milau has demonstrated an irreparable injury. "[I]mpairment of constitutional rights can undoubtedly constitute irreparable injury" if the "adverse factual consequences the plaintiff apprehends if an injunction is not issued . . . violate any of the plaintiff's rights." *Time Warner Cable of New York City v. Bloomberg L.P.*, 118 F.3d 917, 924 (2d Cir. 1997). As explained above, Milau's ownership of his handguns for self-defense is central to his Second Amendment right. *See Heller*, 554 U.S. at 628, 128 S. Ct. at 2817. Moreover, his only avenue available to regain his

22

pistol license—discontinuing cohabiting with his son Gregory—likely violates his First Amendment right to freedom of intimate association. *See Greco v. City of New York*, 686 F. Supp. 3d 191, 198 (E.D.N.Y. 2023) (relationships protected by the First Amendment right to intimate association include "cohabitation with one's relatives") (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 619, 104 S. Ct. 3244, 3250 (1984)).

Next, because Milau continues to suffer the violation of his Second Amendment rights, the Court concludes that remedies available at law, such as monetary damages, cannot adequately compensate him for his injury. *See, e.g., Allen v. Koenigsmann*, 700 F. Supp. 3d 110, 145 (S.D.N.Y. 2023); *New Hope Fam. Servs., Inc. v. Poole*, 626 F. Supp. 3d 575, 585 (N.D.N.Y. 2022).

As to the final two factors, "[w]here the [government] is the opposing party, the balance of the equities and public interest factors merge." *Goldstein v. Hochul*, 680 F. Supp. 3d 370, 402 (S.D.N.Y. 2023) (citing *Nken v. Holder*, 556 U.S. 418, 435, 129 S.Ct. 1749, 1761 (2009)). Because the Court recommends determining that Suffolk County's policy is unconstitutional, and "the 'Government does not have an interest in the enforcement of an unconstitutional law[,]'" *Goldstein*, 680 F. Supp. 3d at 403 (citing *New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013)), the Court concludes that these factors also weigh in favor of granting a permanent injunction. Because all four factors favor granting Plaintiff's request, but Milau has not submitted a proposed injunction, the Court recommends conducting a hearing to determine the appropriate language of a permanent injunction against enforcement of the challenged policy.

3. <u>Individual Liability and Qualified Immunity</u>

The Court next turns to the individual Defendants' liability for the constitutional violations described above. Initially, Milau brings his Second Amendment cause of action against the individual Defendants in their individual capacities only, pursuant to 42 U.S.C. § 1983. "[A] plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity under § 1983." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004).

As to Defendants Sini, Walsh, and John Doe, Plaintiff has pointed to no evidence in the record that they personally contributed to the violation of Milau's Second Amendment rights, and so the Court recommends summary judgment be granted in their favor on this claim. *See id.* As to Scrima, his involvement in the evidentiary record is limited to his issuance of the Notice of Cancellation in 2015. *See* Defs. 56.1 Counterstatement, ¶ 72; Notice of Cancellation. The parties do not dispute that Plaintiff requested this cancellation. *See* Pl. 56.1 Counterstatement, ¶¶ 11-12; Jan. 22, 2015 Internal Correspondence at 1-2. Further, the Notice of Cancellation indicates that it was issued "only in view of [Milau's] request to cancel [his] license." Notice of Cancellation. As a result, the Court concludes that Scrima did not personally contribute to any violation of Plaintiff's Second Amendment rights, and recommends that summary be judgment be granted in his favor on this claim.

As to Molinari, however, the record demonstrates that he determined that he was unable to approve Plaintiff's March 22, 2016 application because Gregory's

conviction "was an automatic bar to having a pistol license" based on SCPD policy. *See* Defs. 56.1 Counterstatement, ¶¶ 79-84; Molinari Dep. at 17:7-19:14. Subsequently, Molinari called Milau, informed him that his application would likely be denied if it was not withdrawn, and requested that Plaintiff withdraw it. *See id.* The Court concludes that Molinari's actions were tantamount to a denial of Milau's application pursuant to a policy that the Court recommends deeming unconstitutional. Moreover, no party disputes that Molinari was acting under the color of state law. *See Hawkins v. Nassau Cnty. Corr. Fac.*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011). Plaintiff has thus established Molinari's individual liability pursuant to 42 U.S.C. § 1983.

Molinari, however, asserts a qualified immunity defense. *See* Defs. Mem. at 16-19. Qualified immunity protects federal and state officials from both civil damages and "unnecessary and burdensome discovery or trial proceedings[,]" *Spavone v. New York State Dep't of Corr. Serv.*, 719 F.3d 127, 134 (2013) (quoting *Crawford–El v. Britton,* 523 U.S. 574, 598, 118 S. Ct. 1584, 1596 (1998)), "where the officials' conduct was not in violation of a 'clearly established' constitutional right." *Sudler v. City of New York,* 689 F.3d 159, 174 (2d Cir. 2012), *cert. denied,* 569 U.S. 1018, 133 S. Ct. 2777 (2013); *see Walker v. Schult,* 717 F.3d 119, 125 (2d Cir. 2013) ("A federal official is entitled to qualified immunity from suit for money damages unless the plaintiff shows that the official violated a statutory or constitutional right, and that the right was 'clearly established' at the time of the challenged conduct."). Qualified immunity extends to circumstances where an official's conduct "does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known[.]" *Spavone,* 719 F.3d at 135 (quoting *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009)).  To defeat qualified immunity, the party opposing it must demonstrate that "existing precedent . . . place[s] the statutory or constitutional question beyond debate. . .  at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083 (2011).

Here, the parties point to no precedent existing before May 2017, nor has the Court been able to find any, placing it "beyond debate" that Suffolk County's policy was unconstitutional at that time.  Milau argues that *Heller*, decided in 2008, made it clear that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation."  *See* Pl. Opp. at 15; *Heller*, 554 U.S. at 592, 128 S. Ct. at 2797.  After *Heller* but prior to *Bruen*, however, federal courts upheld numerous licensing restrictions in New York that burdened that right.  *See, e.g.*, *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 83 (2d Cir. 2012), *abrogated by New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111 (2022); *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 128 (2d Cir. 2020), *abrogated by same; Fusco v. Cnty. of Nassau*, 492 F. Supp. 3d 71, 83 (E.D.N.Y. 2020).  The mere existence of *Heller*, then, did not render every licensing scheme unconstitutional, and *Heller* was silent as to whether a cohabitant-based restriction like that at issue here would survive any level of scrutiny.  *See  Connecticut Citizens Def. League, Inc. v. Thody*, No. 23-724-CV, 2024 WL 177707, at *5 (2d Cir. Jan. 17, 2024) (where *Heller* was silent on the constitutionality of wait times to obtain firearm permits,

government defendants were entitled to qualified immunity when plaintiffs alleged they were experiencing long wait times for processing of their firearm permits).

In fact, in *Torcivia v. Suffolk County, New York*, another court in this District concluded that Suffolk County had an "important interest in limiting the ability of those individuals who suffer from mental health issues or are involved in domestic incidents *to access firearms*." 409 F. Supp. 3d 19, 38 (E.D.N.Y. 2019) (emphasis added), *aff'd on other grounds*, 17 F.4th 342 (2d Cir. 2021). The *Torcivia* court upheld Suffolk County's policy of revoking a pistol license when a licensee was transported by the SCPD to a mental health facility. *Id.* at 35-38. That court's recognition of Suffolk County's interest in limiting *access* to firearms by other members of the household supports the Court's position that, prior to *Bruen*, the constitutionality of the policy at issue here was not clear.

Moreover, "qualified immunity protecting [Molinari's] conduct is further supported by the fact that Second Amendment jurisprudence is currently undergoing a sea change following the Supreme Court's ruling" in *Bruen*. *Brewer v. VanMarter*, No. 7:24-CV-00087, 2024 WL 2131521, at *4 (W.D. Va. May 13, 2024). As a result, this Court's recommendation that Suffolk County's policy be enjoined under *Bruen* does not equate to a determination that the policy was clearly unconstitutional in May 2017, when Molinari functionally denied Plaintiff's license application. Milau's failure to meet his burden to defeat Molinari's qualified immunity defense requires granting summary judgment in Molinari's favor.

### 4. *Monell* Liability

Finally, Plaintiff seeks to impose *Monell* liability on Suffolk County. As explained above, under *Monell*, municipalities and other local governmental entities may be held liable under 42 U.S.C. § 1983 for constitutional violations caused by an official policy or custom. *See* 436 U.S. 658, 663, 98 S. Ct. 2018, 2021-22 (1978). The "policy or custom" element may be established by demonstrating a formal policy officially endorsed by the municipality. *See Kucharczyk*, 95 F. Supp. 3d at 538-39 (S.D.N.Y. 2015) (citing *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)). Here, the Court concludes that there is no genuine issue of material fact that, at the time that Molinari refused to process Milau's pistol license application and instructed him to withdraw it, a formal written policy prohibited Plaintiff from possessing a pistol license because Gregory had been convicted of Criminal Possession of a Controlled Substance in the Seventh Degree. *See* Defs. Mem., Ex. P at 26-27; Ex. Q at 26-27; N.Y. Penal Law § 265.00 (17). Moreover, the testimony of multiple Suffolk County employees establishes the existence of a formal policy prohibiting an applicant from receiving a pistol license if he lives with someone who is prohibited from owning a firearm. *See* Plihcik Dep. at 21:13-22:14; LoRusso Dep. at 33:22-34:12; Molinari Dep. at 17:7-18:14. Finally, the record demonstrates that Molinari's deprivation of Plaintiff's Second Amendment rights was caused by that policy. *See* Defs. 56.1 Counterstatement, ¶¶ 79-84; Molinari Dep. at 17:7-19:14. Accordingly, the Court concludes that Milau has established Suffolk County's *Monell* liability for Molinari's violation of the Fourteenth Amendment.

### C. **Plaintiffs' Fourth Amendment Claim**

Next, Milau brings a facial and an as-applied challenge to Suffolk County's alleged confiscation on January 25, 2013 and continued retention of his handguns under the Fourth Amendment, pursuant to 42 U.S.C. § 1983.  *See* Pl. Mem. at 10-11; Receipt of Weapon/License.  The Fourth Amendment mandates in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"  U.S. Const. amend. IV.  For the reasons set forth herein, his claim fails.

Initially, Milau's claim is untimely.  As explained above, in federal cases "in New York, the statute of limitations for Section 1983 claims is New York's general statute of limitations for personal injury actions, N.Y. C.P.L.R. § 214(5), which is three years."  *Kane*, 80 F.4th at 108.  A Fourth Amendment cause of action based on seizure of property accrues on the date when the property at issue is seized.  *Mallard v. Potenza*, 376 F. App'x 132, 133 (2d Cir. 2010).  Because the Complaint was not filed until October 17, 2017, and Plaintiff's claim accrued on January 25, 2013, the statute of limitations period has lapsed.[4]

Milau's Fourth Amendment cause of action also fails on the merits.  Voluntary surrender of handguns pursuant to a request by law enforcement does not constitute a "seizure" for purposes of the Fourth Amendment.  *See Kaminsky v. Schriro*, 760 F. App'x 69, 72 (2d Cir. 2019); *Weinstein v. Krumpter*, 386 F. Supp. 3d 220, 233 (E.D.N.Y.

---

[4] Because Plaintiff predicates his Second Amendment cause of action on Molinari's 2017 refusal to process his pistol license application, *see* Pl. Mem. at 1, 12, this claim is not barred by any statute of limitations.

2019); *see also Juzumas v. Nassau Cnty., New York*, 33 F.4th 681, 692 (2d Cir. 2022) ("While the government may seize a person by a mere 'show of authority' so long as the person submits . . . the 'show of authority' doctrine does not appear to have been extended to cover the seizure of personal effects.") (citation omitted).  Moreover, the Second Circuit does not recognize a Fourth Amendment cause of action for "continued retention of personal property where plaintiffs already challenge the reasonableness of the initial seizure." *Anderson v. Townsend*, No. 21-CV-03569 (LAK), 2021 WL 5359681, at *5 (S.D.N.Y. Nov. 17, 2021) (citing *Ahlers v. Rabinowitz*, 684 F.3d 53, 62 (2d Cir. 2012)); *see Santander Consumer USA, Inc. v. City of Yonkers*, No. 22-CV-8870 (KMK), 2024 WL 4817649, at *7 (S.D.N.Y. Nov. 18, 2024) (a seizure claim based on unlawful retention alone was "too novel" to warrant Fourth Amendment protection) (citing *Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 187 (2d Cir. 2004)); *Bello v. Rockland Cnty., New York*, No. 19 CV 3514 (VB), 2020 WL 2319115, at *5 (S.D.N.Y. May 11, 2020), *aff'd*, 846 F. App'x 77 (2d Cir. 2021) ("the government's continued retention of property does not constitute an additional seizure.").

Here, the parties do not dispute that Plaintiff surrendered his handguns pursuant to a request within the Notice of Suspension, such that their seizure does not implicate the Fourth Amendment, and the continued retention of those handguns does not save the claim.  *See* Defs. 56.1 Counterstatement, ¶¶ 43-44; *Kaminsky*, 760 F. App'x at 72;  *Santander Consumer USA, Inc.*, 2024 WL 4817649, at *7; *Anderson*, 2021 WL 5359681, at *5; *Weinstein*, 386 F. Supp. 3d at 233.  Accordingly, the Court recommends dismissal of this cause of action.

### D. **Plaintiffs' Fourteenth Amendment Due Process Claims**

Finally, Milau alleges that Defendants violated his Fourteenth Amendment right to due process. *See* Compl., ¶¶ 53, 56, 57, 63. As explained above, the Fourteenth Amendment's Due Process Clause renders the Second Amendment applicable against the states. To the extent Plaintiff attempts to allege any other claim under this clause, however, the Court recommends dismissal of this claim on the grounds that he has abandoned it. Defendants address Plaintiff's due process cause of action in their summary judgment briefing. *See* Defs. Mem. at 12-13. Milau, however, makes no reference to due process or to the Fourteenth Amendment in his opposition briefing, except to point out that the Second Amendment is enforceable against the states under the Fourteenth Amendment. *See* Pl. Opp. at 15.

Accordingly, the claim is abandoned, *see Dynamic Concepts, Inc.*, 716 F. App'x at 14 (alteration in original) (quoting *Jackson*, 766 F.3d at 197–98), and summary judgment is appropriate.

### IV. CONCLUSION

For the reasons set forth above, the Court respectfully recommends: (i) granting Defendants' Motion as to Plaintiff's First, Fourth and Fourteenth Amendment claims, and as to the individual Defendants; and (ii) granting Plaintiff's Motion as to his Second Amendment cause of action as to Suffolk County. Finally, the Court recommends setting a hearing on damages and to determine the appropriate language of a permanent injunction against Suffolk County's challenged policy.

## V.     OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below.   Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report.   Failure to file objections within the specified time waives the right to appeal the District Court's order.   *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-cv-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:         Central Islip, New York
                    February 13, 2025

/s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge