UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
BRETT MILAU,

   Plaintiff,

     -against-

SUFFOLK COUNTY; COMMISSIONER
TIMOTHY SINI, Individually;
SERGEANT WILLIAM WALSH,
Individually; POLICE OFFICER
"JOHN" MOLINARI of the Pistol
Licensing Bureau, Individually;
CAPTAIN WILLIAM SCRIMA,
Individually; and JOHN DOE,
Commanding Officer of the Suffolk
County Property Section,
Individually,

   Defendants.
--------------------------------X

<u>MEMORANDUM & ORDER</u>
17-cv-6061 (JS)(SIL)

APPEARANCES

For Plaintiff:          Amy L. Bellantoni, Esq.
                        The Bellantoni Law Firm, PLLC
                        2 Overhill Road, Suite 400
                        Scarsdale, New York 10583


For Defendants:         Arlene S. Zwilling, Esq.
                        Suffolk County Attorney
                        P.O. Box 6100
                        H. Lee Dennison Building, Fifth Floor
                        100 Veterans Memorial Highway
                        Hauppauge, New York 11788


SEYBERT, District Judge:

      On October 17, 2017, Plaintiff Brett Milau (hereinafter,

"Plaintiff" or "Mr. Milau") commenced this Section 1983 action

against Defendants Suffolk County (hereinafter, the "County"), Commissioner Timothy Sini (hereinafter, "Commissioner Sini"), Sergeant William Walsh (hereinafter, "Sergeant Walsh"), Police Officer Louis Molinari (hereinafter, "Officer Molinari"), Captain William Scrima (hereinafter, "Captain Scrima"), and John Doe (hereinafter, Commissioner Sini, Sergeant Walsh, Officer Molinari, Captain Scrima, and John Doe, together, the "Individual Defendants") (collectively, the County and Individual Defendants, the "Defendants"), alleging violations of his constitutional rights from Defendants' enforcement of the County's policy that bans possession of handguns by any individual who resides with a person who is, or who is believed to be, prohibited from possessing firearms (hereinafter, the "Policy"). (See generally Compl., ECF No. 1.) Plaintiff alleges Defendants violated his rights, asserting claims pursuant to 42 U.S.C. § 1983 for: (1) violations of his right to freedom of association pursuant to the First Amendment of the United States Constitution ("U.S. Constitution") (hereinafter, "First Amendment Claim"); (2) violations of his rights pursuant to the Second Amendment of the U.S. Constitution (hereinafter, "Second Amendment Claim"); (3) violations of his right to protection against unreasonable seizures pursuant to the Fourth Amendment of the U.S. Constitution (hereinafter, "Fourth Amendment Claim"); and, (4) violations of his due process rights pursuant to the Fourteenth Amendment of the U.S. Constitution

(hereinafter, "Fourteenth Amendment Claim").  (See generally id.)
Defendants answered the Complaint on December 27, 2017.  (See ECF
No. 8.)

April 24, 2020 is when Defendants originally moved for
summary judgment.  (See ECF No. 35.)  However, on May 10, 2023,
before the Court issued a decision, it ordered the parties to re-
brief the summary judgment motion in light of the Supreme Court's
decision in New York State Rifle & Pistol Association, Inc. v.
Bruen, 597 U.S. 1 (2022).  (See May 10, 2023, Elec. Order.)
Defendants' and Plaintiff's cross-motions for summary judgment
(hereinafter, "Defendants' Motion" and "Plaintiff's Motion,"
respectively, and "Cross-Motions," collectively) were fully
briefed on May 16, 2024.  (See Defs.' Mot., ECF No. 46; see Defs.'
Support Memo, ECF No. 46-11; see Pl.'s Mot., ECF No. 47[1]; see Pl.'s
Support Memo, ECF No. 47-15; see Pl.'s Opp'n, ECF No. 47-24[2]; see
Def.'s Opp'n & Reply, ECF No. 47-23.[3])

On October 10, 2024, the Cross-Motions were referred to
Magistrate Judge Steven I. Locke (hereinafter, "Judge Locke") for

---

[1] The Court has noticed there are two notices of motion filed for
Plaintiff's summary judgment motion.  (See ECF No. 47; see also
ECF No. 48.)  These are materially the same and do not affect the
Court's analysis.

[2] Plaintiff's opposition memorandum is also filed on the docket
twice.  (See ECF No. 47-24; see also ECF No. 48-15.)

[3] Defendants' opposition memorandum is also filed on the docket
twice.  (See ECF No. 47-23; see also ECF No. 49-2.)

a Report and Recommendation (hereinafter, "Report" or "R&R"). (See Case Docket, Oct. 10, 2024 Referral Order.)  Judge Locke directed Defendants to file supplemental briefing regarding the proper application of the Bruen case to the instant action.  (See Oct. 16, 2024 Elec. Order.)  On November 22, 2024, Defendants filed their supplemental brief.  (See Defs.' Suppl. Memo, ECF No. 58.) Plaintiff responded on December 17, 2024.  (See Pl.'s Suppl. Memo ECF No. 59.)

On February 13, 2025, Judge Locke issued an R&R recommending the Court: (1) grant summary judgment in Defendants' favor as to: (a) Plaintiff's First, Fourth, and Fourteenth Amendment Claims against all Defendants, and (b) Plaintiff's Second Amendment Claim against the Individual Defendants; and (2) grant summary judgment in Plaintiff's favor as to his Second Amendment Claim against the County.  (R&R, ECF No. 60, at 31.)

On February 26, 2025, Defendants filed objections to Judge Locke's R&R (hereinafter, "Objections").  (Defs.' Objs., ECF No. 61.)  Plaintiff responded to Defendants' Objections on March 12, 2025 (hereinafter, "Response").  (Pl.'s Resp., ECF No. 62.)

For the reasons stated herein, Defendants' Objections are OVERRULED, and the R&R is ADOPTED in its entirety.  Therefore, Defendants' Motion is GRANTED in part, dismissing with prejudice: (a) Plaintiff's First, Fourth, and Fourteenth Amendment Claims against all Defendants, and (b) Plaintiff's Second Amendment Claim

4

against the Individual Defendants, and DENIED in part as to the balance; and Plaintiff's Motion is GRANTED in part, granting summary judgment as to Plaintiff's Second Amendment Claim against the County, and DENIED in part as to the balance.

<u>BACKGROUND</u>

I.    <u>Factual and Procedural Background</u>

The Court presumes the parties' familiarity with, adopts, and incorporates herein, the factual and procedural background as set forth in the R&R. (R&R at 2-10.) <u>See generally Sali v. Zwanger & Pesiri Radiology Grp., LLP</u>, No. 19-CV-0275, 2022 WL 819178, at *1 (E.D.N.Y. Mar. 18, 2022) (where no party challenges magistrate judge's recitation of the factual and procedural background of the case, upon clear error review, adopting and incorporating same into court's order).

II.   <u>Judge Locke's R&R</u>

Judge Locke's Report is summarized as follows:

A. <u>Plaintiff's First Amendment Claim</u>

Judge Locke determined Plaintiff's First Amendment Claim should be dismissed because he has abandoned it, and thus summary judgment should be granted in favor of All Defendants on this claim. (R&R at 15-16.) Defendants addressed Plaintiff's First Amendment Claim in their underlying briefing, but Plaintiff did not address the claim in his opposition papers. (<u>Id.</u>)

B. Plaintiff's Second Amendment Claim

On Plaintiff's Second Amendment Claim, Judge Locke recommended this Court grant summary judgment in Plaintiff's favor against the County, and grant summary judgment in Individual Defendants' favor. (See id. at 16.)  First, Judge Locke concluded "there is no genuine issue of material fact that Plaintiff is still barred from receiving a pistol license from Suffolk County pursuant to the challenged policy." (See id. at 16-18.)

Next, Judge Locke examined the Policy and determined it was facially unconstitutional.  Applying Bruen, Judge Locke first assessed "whether 'the Second Amendment's plain text covers an individual's conduct' that forms the basis of the challenge." (Id. at 18 (quoting Bruen, 597 U.S. 1, 17).)  "If so, 'the Constitution presumptively protects that conduct.'" (Id. (quoting Bruen, 597 U.S. 1, 17).)  Then, the burden is shifted to the government to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." (Id. at 18-19 (quoting Bruen, 597 U.S. 1, 19).)  At the first step of the Bruen analysis, Judge Locke determined "the plain text of the Second Amendment covers [Mr.] Milau's possession of handguns" (id. at 19), thus requiring the County bear the burden to demonstrate its policy "'is consistent with this Nation's historical tradition of firearm regulation.'" (Id. (quoting Bruen, 597 U.S. 1, 34).)  Judge Locke examined

6

Kamenshchik v. Ryder, 216 N.Y.S.3d 831, 836 (Sup. Ct. Nassau Cty. 2024), and determined the Kamenshchik Court reached the opposite conclusion for which Defendants cited that case; the Kamenshchik Court held "the discretion afforded to a pistol licensing officer does not save pistol licensing requirements from Second Amendment analysis."  (R&R at 20 (emphasis in original).)  Judge Locke then examined Antonyuk v. James, 120 F.4th 941 (2d Cir. 2024), which Defendants cited "for the proposition that a pistol licensing officer may inquire as to an applicant's cohabitants 'on the basis that association with an unsuitable cohabitant may suggest that the prospective licensee is [himself or herself] unfit[.]'"  (Id. (quoting Defs.' Suppl. Memo at 2).)  Judge Locke concluded Antonyuk is "inapposite" because the "Second Circuit did not conclude that historical tradition supports prohibiting an applicant from obtaining a pistol license merely because his cohabitant cannot possess firearms, without any reference to what that cohabitant may indicate to a licensing officer about the character of the applicant himself."  (Id. at 21 (emphasis in original).)  Thus, Judge Locke determined Defendants have not met their burden under Bruen, and recommended the Court find the County's Policy of denying pistol licenses to people on the sole basis that they live with a person who is legally prohibited from possessing firearms as facially violative of the Second Amendment.  (Id. at 21-22.)

Then, Judge Locke recommended the Court grant Plaintiff's request for a permanent injunction of the Policy's enforcement and set a hearing to determine appropriate language for the injunction and Plaintiff's damages. (Id. at 16, 22-23.) Judge Locke found a permanent injunction to be appropriate since Plaintiff has demonstrated: (1) an irreparable injury; (2) remedies available at law cannot adequately compensate him for his injury; and (3) the balance of the equities and the public interest weigh in favor of granting a permanent injunction because the government does not have an interest in enforcing an unconstitutional law. (Id. at 22-23 (citing eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)).)

Judge Locke then determined Plaintiff "pointed to no evidence in the record" that Commissioner Sini, Sergeant Walsh, and John Doe "personally contributed to the violation of [Plaintiff's] Second Amendment rights," and thus, recommended summary judgment be granted in their favor. (Id. at 24.) Judge Locke similarly recommends summary judgment be granted in Captain Scrima's favor since his involvement is limited to his issuance of the Pistol License Notice of Cancellation in 2015, and Plaintiff himself requested that cancellation. (Id.) Continuing, Judge Locke examined the record to conclude Officer Molinari's actions were "tantamount to a denial of [Mr.] Milau's application pursuant to a policy that the Court recommends deeming unconstitutional"

8

and it is undisputed Officer Molinari was acting under color of state law.  (Id. at 24-25.)  However, finding Officer Molinari's qualified immunity defense to be a valid one since Plaintiff could not demonstrate it was "beyond debate" the Policy was unconstitutional at the time, Judge Locke further recommended summary judgment also be granted for Officer Molinari's favor on the Second Amendment Claim.  (Id. at 25-27.)

Last, Judge Locke determined it is appropriate to impose Monell Liability on the County for Officer Molinari's constitutional violation, because at the time Officer Molinari refused to process Mr. Milau's pistol license application and instructed him to withdraw it, there was a formal written policy prohibiting Plaintiff from having a pistol license since he cohabitated with someone who could not himself own a firearm.  (See id. at 28.)

C. Plaintiff's Fourth Amendment Claim

Judge Locke also determined Plaintiff's Fourth Amendment Claim was lacking, and recommended granting summary judgment in favor of All Defendants on this claim.  (See id. at 29-30.)  Judge Locke explained Plaintiff's claim is untimely as the statute of limitations period of three years had lapsed: "Because the Complaint was not filed until October 17, 2017, and Plaintiff's claim accrued on January 25, 2013, the statute of limitations period has lapsed."  (Id. at 29.)  Continuing, Judge Locke further

9

explained Plaintiff's Fourth Amendment Claim was meritless because "[v]oluntary surrender of handguns pursuant to a request by law enforcement does not constitute a 'seizure' for purposes of the Fourth Amendment." (Id.)  And further, the "Second Circuit does not recognize a Fourth Amendment cause of action for 'continued retention of personal property where plaintiffs already challenge the reasonableness of the initial seizure.'"  (Id. at 30.)

D. Plaintiff's Fourteenth Amendment Claim

Judge Locke also recommended dismissal of Plaintiff's Fourteenth Amendment Claim on the grounds Plaintiff has abandoned it.  (Id. at 31.)  Like Plaintiff's First Amendment Claim, Defendants addressed Plaintiff's Fourteenth Amendment Claim and discussed due process in their underlying briefing; yet, Plaintiff did not discuss this claim or due process in his opposition papers, "except to point out that the Second Amendment is enforceable against the states under the Fourteenth Amendment." (Id.)  Thus, Judge Locke recommended granting summary judgment for All Defendants. (Id.)

III.  Defendants' Objections to the R&R

Defendants raise two Objections to Judge Locke's R&R, both relating to the granting of Summary Judgment on Plaintiff's Second Amendment Claim.[4]  The first is Judge Locke "too narrowly

---

[4]  Notably, Defendants do not object to the portions of Judge Locke's Report that analyze and recommend this Court: (1) find

defined the scope of a licensing officer's discretion to consider the circumstances of a cohabitant" upon analyzing Defendants' argument based on the <u>Kamenshchik</u> case.  (<u>See</u> Defs.' Objs. at 3.) The second is Judge Locke's reading of the <u>Antonyuk</u> case is incorrect because that case "does not require licensing agencies to ignore all conceivable negative aspects of a cohabitant's history and character."  (<u>See</u> <u>id.</u>)

        In response, Plaintiff argues:[5] (1) although Defendants seek to enlarge the existing "discretion" licensing officers have, Plaintiff's individual right to possess firearms cannot be terminated because another person has forfeited his Second Amendment right; and (2) Judge Locke properly rejected Defendants' incorrect interpretation of <u>Antonyuk</u> and <u>Kamenshchik</u>, i.e., their contention it is unconstitutional to disarm someone based upon his cohabitant's disqualification from possessing a firearm.  (<u>See</u> Pl.'s Resp. at 2-3.)

        The Court finds Defendants' Objections to be without merit and addresses each, in turn, below.

_____

Plaintiff established the County's <u>Monell</u> liability; and (2) grant a permanent injunction, enjoining enforcement of the Policy.

[5]  Plaintiff does not object to any portion of the Report.  Rather, his Response is merely his articulation as to why the Defendants' Objections are without merit and should be overruled.

DISCUSSION

I.   Legal Standards

A. Report and Recommendation

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also Fed. R. Civ. P. 72(b)(3). The district judge must evaluate proper objections de novo; however, where a party "makes only conclusory or general objections, or simply reiterates [the] original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (quoting Barratt v. Joie, No. 96-CV-0324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)); Fed. R. Civ. P. 72(b)(3); see also U.S. Small Bus. Admin. v. Ameritrans Holdings, LLC, No. 20-CV-1166, 2024 WL 704621, at *2 (E.D.N.Y. Feb. 21, 2024) (applying clear error review where "[d]efendants' regurgitation of their original arguments [was] readily apparent when comparing their [underlying motion] to their [o]bjections"). Moreover, the Court need not review the findings and conclusions to which no proper objection has been made. Thomas v. Arn, 474 U.S. 140, 150 (1985).

B. Summary Judgment

The Court shall grant summary judgment under Rule 56(a) when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

12

of law." FED. R. CIV. P. 56(a).  A fact is material for the purposes of resolving a summary judgment motion "when it might affect the outcome of the suit under the governing law." Adamson v. Miller, 808 F. App'x 14, 16 (2d Cir. 2020).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. (quoting Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005)).

"The movant bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'" Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 114 (2d Cir. 2017) (alteration in original) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  This burden may be satisfied by either: (1) "submitting evidence that negates an essential element of the non-moving party's claim"; or (2) "demonstrating the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." Id.  Once the moving party has met its burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to material facts" and, instead, offer "some hard evidence showing that its version of events is not wholly fanciful." Stein v. County of Nassau, 417 F. Supp. 3d 191, 197 (E.D.N.Y. 2019) (citations omitted).

Furthermore, "[s]ummary judgment is inappropriate when the admissible materials in the record make it arguable that the claim has merit." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545

(2d Cir. 2010) (citations and quotation marks omitted). In reviewing the record, the Court "may not make credibility determinations or weigh the evidence" as such determinations are to be made by the jury, not the judge. Id. (citing Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 150 (2000)). However, "[q]uestions of law are not subject to the same rule" and "[t]he Court may decide all questions of law on summary judgment." Reliance Standard Life Ins. Co. v. Luna, No. 21-CV-0189, 2023 WL 9232955, at *4 (E.D.N.Y. Dec. 8, 2023) (citation omitted); see also Shoreline Aviation, Inc. v. Sound Aircraft Flight Enterprises, Inc., No. 20-CV-2161, 2024 WL 4040352, at *7 (E.D.N.Y. Aug. 12, 2024).

II. Analysis[6]

    A. The Objections Warrant Clear Error Review

        Turning to the Objections, the Court finds them to be "'mere reiterations of the arguments in [the] original papers that

---

[6] Because there are no objections to Judge Locke's recommendations that: (1) summary judgment be granted in Defendants' favor for the First Amendment Claim as to All Defendants; (2) summary judgment be granted in Defendants' favor for the Second Amendment Claim as to the Individual Defendants; (3) summary judgment be granted in Defendants' favor for the Fourth Amendment Claim as to All Defendants; (4) summary judgment be granted in Defendants' favor for the Fourteenth Amendment Claim as to All Defendants; (5) Plaintiff established the County's Monell liability; and, (6) all four factors weigh in favor of granting Plaintiff a permanent injunction against enforcement of the challenged Policy; and because the Court finds no clear error as to those recommendations, the Court adopts said recommendations in their entirety. (See R&R at 15-16, 22-31.)

were fully considered, and rejected, by'" Judge Locke. <u>Out of the</u> <u>Blue Wholesale, LLC v. Pac. Am. Fish Co., Inc.</u>, No. 19-CV-0254, 2020 WL 7488072, at *2 (E.D.N.Y. Dec. 21, 2020) (quoting <u>Rizzi v.</u> <u>Hilton Domestic Operating Co., Inc.</u>, No. 19-CV-1127, 2020 WL 6243713, at *2 (E.D.N.Y. Oct. 23, 2020) (collecting cases)). Indeed, Defendants' regurgitation of its original arguments is apparent when comparing its underlying Support Memo to its Objections. (<u>Compare</u> Defs.' Support Memo at 19-21 (arguing "[l]icensing officers are vested with broad discretion in determining whether to revoke a permit") and Defs.' Suppl. Memo at 3 (citing <u>Kamenshchik</u> and claiming "[s]ome of the discretion afforded to licensing officers survives <u>Bruen</u>," and citing <u>Antonyuk</u> and asserting "the Second Circuit has held that the 'cohabitant requirement' comports with the Second Amendment, albeit on the basis that association with an unsuitable cohabitant may suggest that the prospective licensee is themselves unfit . . . ."), <u>with</u> Defs.' Objs. at 3 (same).) Thus, the Court reviews Judge Locke's Report for clear error.

B. <u>Defendants' Objections</u>

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Second Amendment is incorporated against the states through the Fourteenth Amendment. <u>See</u> <u>N.Y. State Rifle & Pistol</u>

15

Ass'n, Inc. v. Cuomo, 804 F.3d 242, 254 (2d Cir. 2015) (citing McDonald v. City of Chicago, 561 U.S. 742, 750 (2010)). However, the rights of individuals to "keep and bear arms" is "not unlimited." Maloney v. Singas, 106 F. Supp. 3d 300, 308 (E.D.N.Y. 2015) (citing District of Columbia v. Heller, 554 U.S. 570, 595 (2008) ("[W]e do not read the Second Amendment to protect the right of citizens to carry arms for any sort of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for any purpose.")). The limits to and scope of Second Amendment analysis was recently further defined in the seminal Supreme Court case, New York State Rifle & Pistol Association, Inc. v. Bruen, 597 U.S. 1 (2022) (hereinafter, "Bruen"), in which the Supreme Court set out a new test that is "'rooted in the Second Amendment's text, as informed by history.'" Antonyuk, 120 F.4th at 964 (quoting Bruen, 597 U.S. at 19).

> Thus, a court must now consider whether "the Second Amendment's plain text covers an individual's conduct." If so, "the Constitution presumptively protects that conduct." To overcome that presumption, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." Stated differently, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." Bruen therefore sets out a two-step framework, with the first step based on text and the second step based on history.

16

See <u>id.</u> (internal citations omitted) (quoting <u>Bruen</u>, 597 U.S. at 19, 24); <u>see also</u> <u>United States v. Gavalo</u>, No. 24-CR-0080, 2024 WL 4118468, at *2 (E.D.N.Y. Sept. 9, 2024) (quoting <u>Bruen</u>, 597 U.S. at 19, 24).

> i. <u>Objection 1: Purportedly, Judge Locke Too Narrowly Defined the Scope of a Licensing Officer's Discretion</u>

As its first Objection, Defendants assert the Magistrate Judge erred by recommending summary judgment in Plaintiff's favor as to his Second Amendment Claim against the County, instead of granting summary judgment in favor of All Defendants, because Judge Locke "too narrowly defined the scope of a licensing officer's discretion to consider the circumstances of a cohabitant" when he rejected Defendants' argument based upon <u>Kamenshchik</u>. (Defs.' Objs. at 3.) This Court disagrees.

Judge Locke has properly read and applied <u>Kamenshchik</u>. In that case, the court acknowledged that, even though licensing officers are afforded a small amount of discretion, "requiring drug testing is more than a [l]icensing [o]fficer exercising a modicum of discretion." <u>Kamenshchik</u>, 216 N.Y.S.3d at 836. The <u>Kamenshchik</u> Court then explained, "[i]f urinalysis is beyond the [l]icensing [o]fficer's discretion, then it can only be upheld, if there is, in <u>Bruen's</u> parlance, a historical analogue." <u>Id.</u> Because there was no such historical analogue, the court concluded

forcing pistol permit applicants to submit to urinalysis requires applicants to give up their Fourth Amendment rights to be able to exercise their Second Amendment rights.  Id.  Thus, Judge Locke's conclusion Kamenshchik stands for the proposition that "discretion afforded to a pistol licensing officer does not save pistol licensing requirements from Second Amendment analysis" is exactly right.  (R&R at 20.)  The Kamenshchik Court found urinalysis went beyond the licensing officer's discretion, and then applying the Second Amendment analysis under Bruen, determined a urinalysis requirement was a constitutional violation.  See Kamenshchik, 216 N.Y.S.3d at 836.  Judge Locke did the same here; he acknowledged an amount of discretion still exists for licensing officers, but Bruen must still be applied, and, in applying Bruen, determined there is no historical tradition supporting prohibiting an applicant from obtaining a pistol because his cohabitant cannot possess a firearm.  (See R&R at 20-21.)

Thus, there is no clear error to be found.  Hence, this objection is OVERRULED.

### ii. Objection 2: Purportedly, Judge Locke Incorrectly Read the *Antonyuk* Case

As its second Objection, Plaintiff asserts the Magistrate Judge erred by recommending the Court grant summary judgment in Plaintiff's favor as to his Second Amendment Claim against the County, because Judge Locke misread the Antonyuk case,

18

which "does not require licensing agencies to ignore all conceivable negative aspects of a cohabitant's history and character." (Defs.' Objs. at 3.)  No such error is had.

Judge Locke has properly read and applied the Antonyuk case.  In that case, the Second Circuit vacated the district court's preliminary injunction against enforcing a New York statute requiring pistol license applicants to identify any cohabitants, including whether minors reside in their house.  See Antonyuk, 120 F.4th at 1000-02.  There, the Second Circuit reviewed historical tradition, and determined a character-reference requirement was in line with the historical tradition of firearm regulation.  Id. at 1000.  The Circuit Court reasoned the "identity and characteristics of an applicant's cohabitants" can be "relevant to the dangerousness of the applicant," providing the example of an applicant living with young children, who is unwilling or unable to secure firearms from the access and reach of the children, which could reasonably lead a licensing officer to conclude that applicant could not be entrusted with a weapon in a manner that does not endanger himself or others.  Id. at 1001 (emphasis added).  Judge Locke also recognizes this in his Report. (See R&R at 21.)

Thus, the Court is unpersuaded by Defendants' objection asserting Antonyuk "does not require licensing agencies to ignore all conceivable negative aspects of a cohabitant's history and

character." (Defs.' Objs. at 3.) Judge Locke does not deny this in his Report. Rather, he acknowledges the <u>Antonyuk</u> Court found historical tradition for considering the identity of an applicant's cohabitants when determining whether <u>the applicant can be entrusted with a weapon without endangering himself or others</u>. (<u>See</u> R&R at 21.) However, Judge Locke is correct in stating, the Second Circuit "did not conclude that historical tradition supports prohibiting an applicant from obtaining a pistol license merely because his cohabitant cannot possess firearms, <u>without any reference to what that cohabitant may indicate to a licensing officer about the character of the applicant himself</u>." (<u>Id.</u> (emphasis added).) Again, Judge Locke's reading of case law – in this instance, <u>Antonyuk</u> – is exactly on point; there is more nuance to the analysis than Defendant would have this Court believe.

Accordingly, there is no clear error present; therefore, this objection is OVERRULED.

Having considered Defendants' Objections to Judge Locke's application of the <u>Kamenshchik</u> and <u>Antonyuk</u> cases, this Court finds no clear error in Judge Locke's determination that Defendants have not met their burden under <u>Bruen</u>, and that the County's Policy violates the Second Amendment. In the absence of clear error, the Defendants' Objections are OVERRULED; this Court adopts Judge Locke's recommendation and grants summary judgment in

Plaintiff's favor on Plaintiff's Second Amendment Claim, as to the County.

III. <u>Subsequent Actions and Future Proceedings</u>

Judge Locke also recommended this Court conduct a hearing to address the claim of damages and "to determine the appropriate language of a permanent injunction against enforcement of the challenged [P]olicy." (R&R at 23, 31.) No party has objected to this portion of Judge Locke's Report; nor does the Court find this recommendation to be clear error. Therefore, this recommendation is hereby adopted. (<u>See</u> <u>supra</u> notes 4 & 6.)

Accordingly, after conferring in good faith, Plaintiff and the County are to file a joint letter advising the Court of three proposed dates for a pre-trial conference to discuss the parties' positions on damages and permanent injunction language, per the below instructions.

<u>CONCLUSION</u>

Accordingly, for the stated reasons, IT IS **HEREBY ORDERED**:

I. Defendants' Objections (ECF No. 61) to the R&R are OVERRULED.

II. The R&R (ECF No. 60) is ADOPTED in its entirety, with:

A. Defendants' Cross-Motion for Summary Judgment (ECF No. 46) being:

1. GRANTED as to the First Amendment Claim against All Defendants;

2. GRANTED as to the Second Amendment Claim against the Individual Defendants;

3. GRANTED as to the Fourth Amendment Claim against All Defendants;

4. GRANTED as to the Fourteenth Amendment Claim against All Defendants; and,

5. DENIED as to the Second Amendment Claim against the County; and,

B. Plaintiff's Cross-Motion for Summary Judgment (ECF Nos. 47, 48) being:

1. GRANTED as to its Second Amendment Claim against the County; and,

2. DENIED as to the remaining claims and Defendants.

III. The Clerk of the Court is directed to enter judgment:

1. In favor of Plaintiff as to its Second Amendment Claim against the County;

2. In favor of All Defendants as to the First Amendment Claim;

3. In favor of the Individual Defendants as to the Second Amendment Claim;

4. In favor of All Defendants as to the Fourth Amendment Claim; and,

5. In favor of All Defendants as to the Fourteenth Amendment Claim.

**IT IS FURTHER ORDERED** that the Parties are to file a joint letter no later than thirty days after the date of this Memorandum & Order, with three proposed dates for a pre-trial conference to discuss (1) scheduling a damages hearing, and (2) proposed language for a permanent injunction to enjoin the unconstitutional Policy; alternatively, the parties may request the issues of damages and/or issues regarding the wording of the proposed permanent injunction be referred to mediation (either via private or court mediation or by referral to Judge Locke). Regardless, the Parties are expected to meet and confer in good faith regarding their positions on damages and injunctive relief prior to either the pre-trial conference or mediation.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: March 31, 2025
        Central Islip, New York